**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **SAM and TONY M., by Next Friend Gregory C. Elliott; CAESAR S., by Next Friend Kathleen J. Collins; DAVID T., by Next Friend Mary Melvin; BRIANA, ALEXIS, CLARE, and DEANNA H., by Next Friend Gregory C. Elliott; and DANNY and MICHAEL B., by Next Friend Gregory C. Elliott; for themselves and those similarly situated,** | |
| **Plaintiffs,** | 07 241L |
| **v.** | **Civil Action No. ________** |
| **DONALD L. CARCIERI, in his official capacity as Governor of the State of Rhode Island; JANE A. HAYWARD, in her official capacity as Secretary of the Executive Office of Health & Human Services; and PATRICIA MARTINEZ, in her official capacity as Director of the Department of Children, Youth and Families,** | |
| **Defendants.** | |

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

Plaintiffs, by and through their attorneys of record, respectfully move this Court for an Order certifying a class in this action and declaring that this action may be maintained as a class action pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. Plaintiffs request oral argument in the amount of 15 minutes. In support of this motion, Plaintiffs state as follows:

1. The proposed class is defined as: "all children who are or will be in the legal custody of the Rhode Island Department of Children, Youth, and Families due to a report or suspicion of abuse or neglect"; and

2. The proposed class and its named representatives comply with the requirements contained in Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, as set forth more fully in Plaintiff's Brief in Support of Motion for Class Certification and Appointment of Class Counsel, which is incorporated herein.

WHEREFORE, Plaintiffs respectfully request that an Order be issued certifying this case as a class action, approving the named Plaintiffs as representative Plaintiff Children, and appointing class counsel as further requested in the accompanying brief.

DATED: June 28, 2007

Respectfully Submitted:

JAMETTA O. ALSTON (Bar No. 3909)
CHILD ADVOCATE OF
THE STATE OF RHODE ISLAND
272 West Exchange Street, Suite 301
Providence, RI 02903
Phone: (401) 222-1690

Facsimile: (401) 222-6652
Email: jalston@doa.state.ri.us

JOHN W. DINEEN (Bar No. 2346)
305 South Main Street
Providence, RI 02903
Phone: (401) 223-2397
Facsimile: (401) 223-2399
Email: jwdineen1@yahoo.com

MARCIA ROBINSON LOWRY (Bar No. 1187053 (NY); *pro hac vice* application pending)
SUSAN LAMBIASE (Bar No. 2099489 (NY); *pro hac vice* application pending)
CHILDREN'S RIGHTS
330 Seventh Avenue, Fourth Floor
New York, NY 10001
Phone: (212) 683-2210
Facsimile: (212) 683-4015
Email: mlowry@childrensrights.org

VERNON M. WINTERS (Bar No. 130128 (CA); *pro hac vice* application pending)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA
Phone: (650) 802-3005
Facsimile: (650) 802-3100
Email: vernon.winters@weil.com

**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **SAM and TONY M., by Next Friend Gregory C. Elliott; CAESAR S., by Next Friend Kathleen J. Collins; DAVID T., by Next Friend Mary Melvin; BRIANA, ALEXIS, CLARE, and DEANNA H., by Next Friend Gregory C. Elliott; and DANNY and MICHAEL B., by Next Friend Gregory C. Elliott; for themselves and those similarly situated,** | |
| **Plaintiffs,** | CA 07 241L |
| | **Class Action** |
| **v.** | |
| | **Civil Action No. __________** |
| **DONALD L. CARCIERI, in his official capacity as Governor of the State of Rhode Island; JANE A. HAYWARD, in her official capacity as Secretary of the Executive Office of Health & Human Services; and PATRICIA MARTINEZ, in her official capacity as Director of the Department of Children, Youth and Families,** | |
| **Defendants.** | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

## I. Preliminary Statement

In this action, Plaintiffs seek injunctive relief on behalf of a class of abused and neglected children in the foster care custody of the Rhode Island Department of Children, Youth and Families (DCYF). Because of DCYF's chronic and consistent failure to fulfill its constitutional and statutory duties to protect the children in its charge, Plaintiff Children's rights are being violated and will continue to be violated until there is systemic reform of the child welfare

system. Plaintiffs now respectfully submit this Memorandum in Support of Plaintiffs' Motion for Class Certification and Appointment of Class Counsel.

The Plaintiffs in this action are children who are or will be in the foster care custody of DCYF due to allegations of abuse or neglect. Plaintiffs seek class-wide declaratory and injunctive relief to remedy the ongoing failure of Defendants—the Governor of Rhode Island, the Secretary of the Rhode Island Executive Office of Health and Human Services (HHS), and the Director of DCYF, sued in their official capacities—to care for, protect, and provide child-welfare services to Plaintiff Children as required by the United States Constitution and federal law.

Pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, Plaintiffs seek an order certifying this case as a class action, with the class defined as "all children who are or will be in the legal custody of the Rhode Island Department of Children, Youth and Families due to a report or suspicion of abuse or neglect" ("Plaintiff Children" or "the Class"). As current and future children in foster care, Plaintiff Children are entirely dependent upon Defendants, who are required by law to provide them with appropriate care, protection, and services. Although the child-welfare system is intended to protect vulnerable children, children in foster care custody of DCYF are instead subjected to further harm, and the imminent risk of additional harm, as a consequence of the acts and omissions of Defendants.

As set forth below, this action satisfies all the requirements for class certification. Accordingly, this Court should issue an order certifying this case as a class action, with the class defined as "all children who are or will be in the legal custody of the Rhode Island Department of Children, Youth and Families due to a report or suspicion of abuse or neglect," and appointing undersigned counsel to represent them as class counsel.

## II. Background Facts and Legal Issues

### A. Defendants Must Provide Safety, Well-Being, and Permanency to Plaintiff Children

The State of Rhode Island has approximately 3,000 children in DCYF foster care custody. As the legal custodians of these children, Defendants are required by the United States Constitution and federal law to protect their safety and well-being and to return them home as quickly as possible or, when that is not possible, to timely find permanent homes for them. Defendants' specific obligations to Plaintiff Children under the Constitution are based in the First, Ninth, and Fourteenth Amendments. *See, e.g., Hodgson v. Minnesota*, 497 U.S. 417, 447–48 (1990) (noting that Ninth and Fourteenth Amendments protect family integrity); *Roberts v. United States Jaycees*, 468 U.S. 609, 617–20 (1984) (reiterating Court's long-standing recognition that Bill of Rights protects family relationships against unjustified interference by the state); *Youngberg v. Romeo*, 457 U.S. 307, 315–16 (1982) (holding that Due Process Clause of Fourteenth Amendment guaranteed mentally retarded Plaintiff's rights to safe conditions of confinement and freedom from bodily restraint when involuntarily committed);[1] *Santosky v. Kramer*, 455 U.S. 745, 753 (1982) (recognizing right to family integrity); *Stanley v. Illinois*, 405 U.S. 645, 651 (1972) (recognizing right to family integrity grounded in part on Ninth Amendment concept of zone of privacy). Defendants' statutory obligations arise from the Adoption Assistance and Child Welfare Act of 1980, as amended by the Adoption and Safe

[1] *Youngberg* has been applied to children in foster care in numerous cases. *See, e.g., Hernandez v. Texas Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 881–82 (5th Cir. 2004); *Norfleet v. Arkansas Dep't of Human Servs.*, 989 F.2d 289, 293 (8th Cir. 1993); *Yvonne L. v. New Mexico Dep't of Human Servs.*, 959 F.2d 883, 892–93 (10th Cir. 1992); *Olivia Y. v. Barbour*, 351 F. Supp. 2d 543, 555–56 (S.D. Miss. 2004); *K.H. v. Morgan*, 914 F.2d 846, 851 (7th Cir. 1990); *Danielle v. Johnson*, 284 F. Supp. 2d 1368, 1373–73 (S.D. Fla. 2003); *Brian A. v. Sundquist*, 149 F. Supp. 2d 941, 953 (M.D. Tenn. 2000); *Charlie & Nadine H. v. Whitman*, 83 F. Supp. 2d 476, 507 (D.N.J. 2000); *Taylor v. Ledbetter*, 818 F.2d 791, 795 (11th Cir. 1987); *Marisol A. v. Giuliani*, 929 F. Supp. 662, 675–77 (S.D.N.Y. 1996); *Eric L. v. Bird*, 848 F. Supp. 303, 307 (D.N.H. 1994); *LaShawn A. v. Dixon*, 762 F. Supp. 959, 993, 996 (D.D.C. 1991).

Families Act of 1997, and regulations promulgated thereunder (the "Adoption Assistance Act"). 42 U.S.C. §§ 620 *et seq.*, 670 *et seq.* Plaintiff Children also seek to enforce their federal procedural due process rights to the benefits of certain entitlements conferred by the Adoption Assistance Act and certain Rhode Island statutes, as well as their federal common-law rights.

### B. Defendants Have Violated and Continue to Violate Named Plaintiffs' Federal Rights

Defendants' conduct with respect to each Named Plaintiff reflects and illustrates Defendants' routine, systematic violation of some or all of the federal constitutional and statutory rights of Rhode Island's foster children. For example:

- **Sam and Tony M.:** During the eight years since DCYF first removed Sam, 13, and Tony, 9, from their abusive parents, they have suffered physical and sexual abuse, endured multiple unstable and inappropriate placements, and been denied critical medical and mental health services. DCYF has repeatedly attempted to reunify Sam and Tony with their parents, even though each attempt has resulted in additional maltreatment. DCYF has ignored evidence that Sam and Tony have been sexually abused, refusing to evaluate them or provide treatment to help them cope with the trauma of this abuse. DCYF has kept both Sam and Tony in institutions when unnecessary to meet their needs, simply because DCYF had nowhere else to place them. At times, DCYF has separated the brothers, but has failed to arrange regular visits between them. Sam and Tony suffered further trauma when their cousin died in DCYF custody. At only nine years of age, Tony is now in his twelfth placement and has not lived in a home since 2004. Sam is in his tenth placement. DCYF has taken no steps to find permanent families for these boys. Sam and Tony remain separated and institutionalized, irreparably harmed by the untreated physical, sexual, and psychological trauma that Defendants' actions and inactions have caused them.

- **Caesar S.:** Caesar, five, was only 15 months old when he was removed from his substance-abusing parents due to neglect. He has been in DCYF custody for most of his life. Instead of working to find a permanent home for Caesar, DCYF has cycled him through eight placements, many of them unlicensed and inappropriate, where he has suffered physical and sexual abuse. DCYF has placed Caesar with relatives who had previously found to have abused or neglected children, who physically abused him, and who used and sold controlled substances. DCYF left Caesar in one placement for 11 months even though he had told a caseworker that he was being physically abused in that home. Although Caesar began to suffer serious behavioral problems during this time, DCYF has allowed Caesar's mental

health to deteriorate significantly instead of providing appropriate treatment for the trauma he has suffered. Since September 2005, Caesar has lived in an unlicensed, inappropriate, impermanent placement where he receives inadequate services. For years, DCYF planned to reunify Caesar with his parents, even though they showed only minimal interest in their son, did not complete substance abuse treatment, parenting classes, and psychiatric evaluations, and failed to show up for visits with Caesar and for their own court dates. DCYF never worked to find another permanent home for Caesar and only freed him for adoption this month, June 2007.

- **David T.:** David has been in DCYF custody for 11 of his 13 years. During that time, DCYF has shuffled him through 14 placements, almost all shelters or other institutions. David has suffered sexual abuse while in DCYF custody and has been injured due to neglect. The last time David lived in a home was when, at the age of 4, he was in an adoptive placement that fell through, resulting in acute feelings of loss and trauma. Instead of providing treatment to help David cope with these feelings, DCYF put him in one shelter after another for three months. David's mental health began to deteriorate during this time and has continued to worsen since, yet DCYF has consistently failed to provide appropriate mental-health treatment for David. DCYF has denied David any form of permanency planning and simply allowed him to languish in one harmful institutional placement after another. At one point, David spent months in a psychiatric hospital because DCYF did not have a bed for him in a more appropriate setting. In another institution, David was restrained 105 times in a four-month period. His education has been fragmented and his service needs have not been met. David was visited by a DCYF caseworker only ten times between 2001 and 2003, only once in 2004, and only once in 2005. Now deemed by DCYF to be "too damaged for placement," David lives in an institution in Massachusetts. DCYF has no plan for David's future.

- **Briana, Alexis, Clare, and Deanna H.:** Sisters Briana, six, Alexis, five, Clare, one, and Deanna, eight months, have spent most of their young lives in DCYF foster care custody. Even before DCYF took any of these girls into custody, their mother had already lost her parental rights to five other children and their father had lost his rights to three children. Nevertheless, despite their parent's long history of child maltreatment, when DCYF took Briana and Alexis into foster care custody in 2003, it assigned them the goal of reunification. Less than a year later, DCYF reunified Briana and Alexis with their father, despite evidence that he was not ready to care for his daughters. At the time, their mother was incarcerated. DCYF took Briana and Alexis into custody again 12 months later because their father was smoking crack in their presence. DCYF ignored evidence that they had been sexually abused by another adult in the home. When Clare was born, a month after Briana and Alexis returned to foster care, DCYF immediately took Clare into custody and placed her in an overcrowded, unlicensed relative home, where there was an older child who posed a danger to others. Soon after, DCYF transferred Briana and Alexis to this home, removing them from a relative's home, where they were thriving. Their parents repeatedly failed to show up for

visits and court dates, but DCYF did not change its plan to reunify Briana, Alexis, and Clare with their parents. When Deanna was born in October 2006, DCYF immediately placed her in a foster home but assigned her the goal of reunification. In February 2007, the father had his parental rights to all the girls except Deanna terminated. Since then, DCYF has been trying to persuade the mother to relinquish her own rights to the three older sisters while still allowing her to visit the girls. DCYF remains committed to the goal of reunification for Deanna, despite her parents' repeated arrests and their failure to address the problems that led them to lose their children. Today, Briana, Alexis and Clare remain in the same impermanent placement with a relative who is uninterested in adopting them. Deanna remains with a different foster family. DCYF has only referred two of the older girls for adoption.

- **Danny and Michael B.:** DCYF took brothers Danny, six, and Michael, five, into foster care custody over three years ago, after watching the boys' mother neglect them over a period of 15 months. Since then, DCYF has separated the boys and put them in a series of temporary, inappropriate placements. After DCYF placed Danny in the home of a foster parent with a long history of abuse complaints, Danny suffered sexual abuse. DCYF has failed to provide timely mental health services to either brother, despite evidence that their psychological conditions are precarious and worsening. For the first 15 months that Danny and Michael were in DCYF custody, their permanency goal remained reunification, while their mother tested positive for drugs, was arrested twice, attempted suicide, became homeless, and made no progress on addressing the problems that led to the boys' removal. A month after his sexual abuse, DCYF briefly reunited Danny with Michael but the brothers began to exhibit sexualized behavior and were again separated. Danny was then placed in a group home, where he remains today, institutionalized at the age of six because of acute mental-health issues that DCYF failed to address appropriately when they first became apparent. Michael is languishing with an elderly relative who cannot permanently care for him. Because of DCYF's failure to provide any appropriate permanency planning for either Danny or Michael, neither boy has any current prospect of growing up in a loving, permanent home.

Each Named Plaintiff has suffered and continues to suffer harm as the result of multiple constitutional deprivations and statutory violations effected by a poorly managed and underfunded child-welfare system. Collectively, Named Plaintiffs' experiences illustrate and represent the profound, systemic failings of Rhode Island's child-welfare system and the ongoing harms that Plaintiff Children suffer while in Defendants' care.

## C. Defendants Have Systematically Violated and Continue to Violate Plaintiff Children's Rights, Causing Them Harm

As demonstrated in the Complaint, the constitutional deprivations and statutory violations that each Named Plaintiff has suffered and continues to suffer are typical of the harms being inflicted upon thousands of children in Rhode Island's foster care custody. As stated more fully in the Complaint:

- **Plaintiff Children are abused and neglected while in foster care:** Since 2000 children in foster care in Rhode Island have suffered abuse and neglect at a rate that has remained the worst or nearly the worst in the nation. For five of the six years between Federal Fiscal Years 2000 and 2005, the rate of abuse or neglect in care was the highest in the nation and for the sixth year it was the second highest. Abuse and neglect of children in foster care in Rhode Island has been so pervasive that children in Rhode Island are more likely to suffer abuse or neglect if they are in foster care than if they are not. (Compl. ¶¶ 5, 129-33.)

- **Defendants rely on expensive and inappropriate shelters and other institutions for Plaintiff Children rather than developing a sufficient number and variety of safe foster homes:** There is a chronic shortage of foster homes in Rhode Island due to Defendants' failure to recruit, train, license, and adequately reimburse foster parents. Defendants instead make excessive use of shelters and other institutions for Plaintiff Children who, according to federal law and reasonable professional judgment, should be placed in the least restrictive, most family-like setting that is consistent with their needs. Defendants leave Plaintiff Children in inappropriate and harmful institutional placements for protracted periods of time, during which Plaintiff Children's health and well-being deteriorate. (Compl. ¶¶ 5, 134-41.)

- **Defendants place Plaintiff Children far from their homes:** Contrary to federal law and reasonable professional judgment, Defendants regularly place Plaintiff Children in settings that are far from their homes. As a result, Plaintiff Children's ties to their families, friends, communities, and schools are strained or severed. Distant placements also mean less frequent contact with caseworkers, who must visit children regularly to ensure that they are safe and that their needs are being met. (Compl. ¶¶ 142-44.)

- **Defendants frequently move Plaintiff Children from one placement to another:** Defendants decide where to place Plaintiff Children on the basis of bed availability rather than on the basis of individual children's needs, and Defendants fail to assess Plaintiff Children's needs and to deliver services to meet their needs. As a result, Plaintiff Children's placements frequently disrupt and Defendants then move them to other, often equally inappropriate placements. The

disruptiveness of each placement move causes Plaintiff Children's well-being to deteriorate. (Compl. ¶¶ 5, 145-50.)

- **Defendants separate Plaintiff Children from their siblings:** Contrary to law and reasonable professional judgment, Defendants separate Plaintiff Children from their siblings rather than placing them together. Defendants also fail to ensure that Plaintiff Children visit the siblings from whom they have been separated. Separation from siblings is particularly traumatic and damaging to Plaintiff Children. (Compl. ¶¶ 151-54.)

- **Defendants fail to assess Plaintiff Children's needs and fail to plan or deliver services to meet those needs:** Federal and state law and reasonable professional judgment require that all children in foster care have written, regularly updated case plans based on individual assessments of their needs. Defendants' failure to comply with these requirements means that Defendants fail to identify Plaintiff Children's current needs and fail to plan or deliver services to meet those needs, at great cost to Plaintiff Children's well-being. (Compl. ¶¶ 5, 155-59.)

- **Defendants fail to reunify Plaintiff Children with their parents in a timely, planned, and safe manner, when reunification is appropriate:** Defendants' failure to identify and provide services to meet the needs of Plaintiff Children and their families results in needless, harmful delay in reunification of those Plaintiff Children for whom reunification is an appropriate goal. Once Plaintiff Children are reunified, Defendants' fail to deliver the supportive services on which successful reunification depends. The predictable result is that reunification efforts fail and Plaintiff Children are returned to foster care. (Compl. ¶¶ 160-65.)

- **Defendants pursue reunification when it is not an appropriate goal:** Defendants continue to pursue reunification of Plaintiff Children despite evidence that reunification is inappropriate or cannot succeed. As a result, Plaintiff Children languish for years in foster care instead of being freed for adoption and placed in loving adoptive homes. (Compl. ¶¶ 5, 166-72.)

- **Defendants fail to meet Plaintiff Children's health care needs:** Plaintiff Children suffer needless harm as a result of Defendants' failure to ensure that their often considerable physical, dental, and mental health care needs are met. Defendants' failures in the area of mental health are particularly great. (Compl. ¶¶ 179-86.)

- **Defendants assign excessive caseloads to social caseworkers, making it impossible for caseworkers to visit Plaintiff Children:** Reasonable professional standards for foster care prescribe caseloads of between 12 and 15 children per caseworker. In contrast, Defendants typically assign caseloads in excess of 30 children per caseworker. These caseloads make it impossible for caseworkers to visit Plaintiff Children on a regular basis. Caseworker visits are crucial to ensuring that Plaintiff Children are safe and that their needs are being met. (Compl. ¶¶ 187-201.)

- **Defendants forfeit available federal funds:** Despite statutory requirements to maximize the use of federal funds, Defendants forfeit readily available federal funds. Defendant Carcieri has acknowledged that placing Plaintiff Children in unlicensed placements alone will mean foregoing $1.5 million in federal funds in Fiscal Year 2008, since federal funds are contingent on the use of licensed placements. Defendants' forfeiture of federal funds is one reason why they are unable to ensure the safety and well-being of Plaintiff Children. (Compl. ¶¶ 211-12.)

- **Defendants' excessive reliance on expensive institutional placements harms children and wastes scarce financial resources:** Defendants make excessive use of institutional placements for Plaintiff Children whose needs would better be met in less restrictive, family-like settings. Not only does this practice harm children, it is a waste of scarce financial resources. For children with special needs, therapeutic or specialized foster homes can often provide more appropriate care than institutions at a fraction of the cost. Defendants squander scarce dollars by relying on costly institutional placements for children who do not need them. (Compl. ¶¶ 213-15.)

- **Defendants do not provide adequate reimbursement to foster parents:** Federal and state law and reasonable professional judgment require Defendants to reimburse foster parents for the full cost of caring for Plaintiff Children who are placed in their homes. Nevertheless, Defendants do not adequately reimburse foster parents. As a result, foster parents are less able to meet Plaintiff Children's needs. Defendants' low reimbursement rates also contribute to Defendants' difficulty in recruiting additional foster parents. (Compl. ¶¶ 216-18.)

Plaintiffs have commenced this action to stop these and other systemic legal violations by Defendants and the harms that Defendants directly cause to foster children. These violations do not merely affect the Named Plaintiffs; they affect the entire Class. Plaintiffs seek system-wide declaratory and injunctive relief to end these violations and to ensure that Defendants comply with their constitutional and federal statutory obligations to Plaintiff Children.

## III. Argument

### A. This Action Meets All Requirements for Class Certification

The widespread, pervasive, and systemic nature of the violations at issue in this action makes it critical for the Court to certify this case as a class action. The Federal Rules of Civil

Procedure provide for class certification if the four requirements of Rule 23(a) and one of the requirements of Rule 23(b) are satisfied. Fed. R. Civ. P. 23(a)–(b) (2006); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Rule 23(a)'s four requirements for class certification are:

> (i) the class is so numerous that joinder of all members is impracticable;
>
> (ii) there are questions of law or fact common to the class;
>
> (iii) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (iv) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Where all four requirements of Rule 23(a) are met, certification is proper under Rule 23(b)(2) if, in addition, "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).

Plaintiffs in this case seek certification under Rules 23(a) and 23(b)(2) of a class consisting of "all children who are or will be in the legal custody of the Rhode Island Department of Children, Youth and Families due to a report or suspicion of abuse or neglect." Courts in the First Circuit have routinely certified classes under Rules 23(a) and 23(b)(2) in cases alleging systemic violations of federal constitutional and statutory law. *See, e.g., Griffin v. Burns*, 570 F.2d 1065, 1072–74 (1st Cir. 1978) (affirming certification of class of absentee and shut-in Rhode Island voters claiming that retroactive invalidation of ballots deprived them of constitutional right to vote); *Colon v. Wagner*, 462 F. Supp. 2d 162, 174 (D. Mass. 2006) (certifying class of current and former recipients of emergency shelter benefits alleging that state's termination of benefits violated Due Process Clause); *Risinger ex rel. Risinger v. Concannon*, 201 F.R.D. 16, 19–23 (D. Me. 2001) (certifying class of children alleging that state

failed to provide in-home mental health services for which they were eligible under Early and Periodic Screening, Diagnosis and Treatment provisions of Federal Medicaid Act); *Eric L. v. Bird*, No. 91-376-M, 1993 WL 764420, *1 (D.N.H. Dec. 16, 1993) (unpublished) (certifying class of all children who are subjects of abuse or neglect complaints or petitions, or who are otherwise entitled to services of Division of Children and Youth Services, and who are in foster care or some other out-of-home placement, and who allege violations of rights to reasonable care and safety, to family integrity, and to entitlements under state child protection statute, and certifying subclass of disabled children alleging violation of Equal Protection Clause); *see also Lynch v. Dukakis*, 719 F.2d 504, 506 n.1 (1st Cir. 1983) (recognizing certification of class of "[a]ll children subject to protective intervention by agencies of the Commonwealth of Massachusetts under the foster family home care system" in lawsuit challenging systemic violations of children's rights by Massachusetts' child welfare system; Rule 23(b)(2) not explicitly cited); *Rosie D. v. Romney*, 410 F. Supp. 2d 18, 22 (D. Mass. 2006) (recognizing certification of class of children with serious emotional disturbances who alleged that state failed to provide services required by Medicaid Act; Rule 23(b)(2) not explicitly cited).

Moreover, there are numerous cases in other jurisdictions where class certification has been granted in similar lawsuits challenging systemic violations of children's rights under federal law. *See, e.g., Marisol A. v. Giuliani*, 126 F.3d 372, 375 (2d Cir. 1997) (finding no abuse of discretion in district court's certification of class comprising "[a]ll children who are or will be in the custody of the New York City Administration for Children's Services ('ACS'), and those children who, while not in the custody of ACS, are or will be at risk of neglect or abuse and whose status is or should be known to ACS," in lawsuit challenging systemic violations of children's rights by New York City's child welfare system); *Dwayne B. v. Granholm*, No. 06-

13548, slip op. at 1–2 (E.D. Mich. Feb. 15, 2007) (certifying class defined as "all children who are now or will be in the foster care custody of Michigan's Department of Human Services ('DHS') in in-home or out-of-home placements"); *Kenny A. v. Perdue*, 218 F.R.D. 277, 305 (N.D. Ga. 2003) (certifying class defined as "[a]ll children who have been, are, or will be alleged or adjudicated deprived who (1) are or will be in the custody of any of the State Defendants; and (2) have or will have an open case in Fulton County DFCS or DeKalb County DFCS"); *Charlie & Nadine H. v. Whitman*, No. 99-3678, slip op. at 3, 18 (D.N.J. March 7, 2002) (unpublished) (certifying classes defined as "(1) all children who are or will be in the involuntary custody of New Jersey DYFS; and (2) all African-American and Hispanic children who are or will be in the custody of the New Jersey DYFS, and who have been or are subject to the immediate risk of being denied or delayed adoption or foster care placement based on their race, color or national origin"); *Jeanine B. v. Thompson*, 877 F. Supp. 1268, 1288 (E.D. Wisc. 1995) (certifying class comprising "(1) children who are in foster care custody in Milwaukee County and who come into foster care custody in Milwaukee County; and (2) children who are not in foster care custody in Milwaukee County, but about whom the County Department of Human Services has received reports of abuse or neglect, and children who become the object of such reports" in lawsuit challenging systemic violations of children's rights by Milwaukee's child welfare system); *David C. v. Leavitt*, No. 93-C-206 W, 1993 WL 764518, *2 (D. Utah May 7, 1993) (unpublished) (certifying class defined as: "(1) All children who are now or who will be in the custody of DHS and who have been or who will be placed by DHS in a shelter care facility, foster-family home, group home or institutional care; and, (2) All children who are or who will be known to DHS by virtue of a report of abuse or neglect" in lawsuit challenging systemic violations of children's rights by Utah's child welfare system); *LaShawn A. v. Dixon*, 762 F.

Supp. 959, 994 n.28 (D.D.C. 1991) (noting previous certification of class comprising all children in foster care custody of District of Columbia Department of Human Services and all children known to DHS because of reported abuse or neglect, in lawsuit challenging systemic violations of children's rights by District of Columbia's child welfare system), *aff'd in relevant part*, 990 F.2d 1319, 1326 (D.C. Cir. 1993) ("certification was proper in relation to the pendent claims, as well as the federal claims"); *L.J. v. Massinga*, 699 F. Supp. 508, 510 (D. Md. 1988) (noting previous certification of class composed of "all children who are, have been, or will be placed in foster homes by the BCDSS [Baltimore City Dep't of Soc. Serv.] and are or will be placed in the custody of the BCDSS through voluntary placement or court order" in lawsuit challenging practices of BCDSS); *G.L v. Zumwalt*, 564 F. Supp. 1030, 1031 (W.D. Mo. 1983) (noting previous certification of class of children in the custody of the Jackson County Office of the Missouri Division of Family Services in lawsuit alleging systemic violations of children's rights by child welfare system of Jackson, Missouri); *Wilder v. Bernstein*, 499 F. Supp. 980, 994 (S.D.N.Y. 1980) (certifying class defined as "all those New York City children who are black, and who are Protestant, of other non-Catholic or non-Jewish faiths, or are of no religion, and are in need of child-care services outside their home" in case alleging systemic racial and religious discrimination in foster care placements). Indeed, the Third Circuit held in a similar child welfare case that the district court's denial of class certification constituted an abuse of discretion. *Baby Neal v. Casey*, 43 F.3d 54, 56 (3rd Cir. 1994) (reversing denial of class certification for Rule 23(b)(2) class consisting of "all children in Philadelphia who have been abused or neglected and are or should be known to the Philadelphia Department of Human Services" and all children in its custody).

Plaintiffs in this case seek certification of a class defined as "all children who are or will be in the legal custody of the Rhode Island Department of Children, Youth and Families due to a report or suspicion of abuse or neglect." Because this clearly defined putative class meets all the requirements of Rules 23(a) and 23(b)(2), this Court should grant class certification.

### 1. The Class Meets the Numerosity, Commonality, Typicality, and Adequacy Requirements of Rule 23(a)

#### a. The Class Is So Numerous That Joinder Is Impracticable

Plaintiff Children have two distinct bases for satisfying the numerosity requirement: the sheer size of the proposed Class and its fluid composition.

The proposed Class of approximately 3,000 abused and neglected children exceeds the size of many classes certified in the First Circuit, thus easily meeting the numerosity requirement of Rule 23(a) that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see, e.g., Adver. Specialty Nat'l Ass'n v. Fed. Trade Comm'n*, 238 F.2d 108, 119 (1st Cir. 1956) ("In this proceeding petitioners constitute a class of over 300 members, which appears a sufficient number to fall within the accepted legal test of the 'impracticability' of joining them as respondents."); *Griffin v. Burns*, 431 F. Supp. 1361, 1365 (D.R.I. 1977) ("The class of 123 absentee and shut-in voters is sufficiently numerous as to make joinder impracticable."); *Driver v. Helms*, 74 F.R.D. 382, 403 (D.R.I. 1977) (holding that "about 300" putative class members was "a number in itself sufficient to render joinder impracticable"), *rev'd in part on other grounds*, 577 F.2d 147 (1st Cir. 1978), *judgment rev'd sub nom. Stafford v. Briggs*, 444 U.S. 527 (1980).

Joinder is impracticable here not only because of the sheer number of children in the proposed Class but also because that number does not remain steady over time as children enter and exit foster care. Where the number of class members is not fixed but changes over time,

joinder is less practical. *Adver. Specialty Nat'l Ass'n*, 238 F.2d at 119. Precise enumeration of the members of a putative class is unnecessary for the certification of Rule 23(b)(2) classes, whose members "are often incapable of specific enumeration." *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972) (internal quotation omitted). The proposed Class is clearly defined but its membership is inherently fluid, making joinder impracticable here.

#### b. There Are Questions of Law or Fact Common to the Class

"The requirement of establishing that there are questions of law or fact common to the class is not a particularly onerous one." *Van West v. Midland Nat'l Life Ins. Co.*, 199 F.R.D. 448, 452 (D.R.I. 2001). The proposed class meets the commonality requirement of Rule 23(a) because the systemic deficiencies in Defendants' child welfare system affect all children who have the misfortune to enter their care. Defendants' systematic failure to fulfill their constitutional and statutory obligations to the children in their foster care custody gives rise to common questions of law and fact within the meaning of Rule 23(a)(2). Indeed, a finding of commonality is especially appropriate in cases where, as here, "plaintiffs request declaratory and injunctive relief against a defendant engaging in a common course of conduct toward them, and there is therefore no need for *individualized* determinations of the propriety of injunctive relief." *Baby Neal*, 43 F.3d at 57 (emphasis in original).

Plaintiffs allege that systemic deficiencies in Defendants' foster care system—including the lack of adequate safeguards to protect Plaintiff Children from abuse or neglect while in DCYF custody; a chronic and severe shortage of appropriate placements with current licenses; dangerously high caseloads for DCYF caseworkers; inappropriate and unsafe placements, including institutional placements; poor planning, decision-making, and services to enable children to move into safe and appropriate permanent homes; inadequate payments to foster care

providers; and fiscal waste—have resulted and continue to result in severe harms to class members and constitute violations of class members' federal constitutional and statutory rights. There are numerous questions of fact common to all members of the Class, including:

a. Whether Defendants fail to provide Plaintiff Children with safe, appropriate, and stable foster care placements, causing significant harm to their health and well-being;

b. Whether Defendants fail to prevent the abuse or neglect of Plaintiff Children while in Defendants' custody, causing significant harm to their health and well-being;

c. Whether Defendants fail to place Plaintiff Children in the least restrictive and most family-like settings suited to their needs, unnecessarily institutionalizing them and causing significant harm to their health and well-being;

d. Whether Defendants fail to provide Plaintiff Children with legally required services necessary to keep them safe and properly cared for, and to prevent them from deteriorating physically, psychologically, or otherwise while in custody, as required by law and reasonable professional judgment, causing significant harm to their health and well-being;

e. Whether Defendants unsafely return Plaintiff Children to caretakers who abuse or neglect them again, causing significant harm to their health and well-being;

f. Whether Defendants unnecessarily move Plaintiff Children from placement to placement, causing significant harm to their health and well-being;

g. Whether Defendants fail to provide Plaintiff Children and their families with appropriate decision-making as well as timely and appropriate services necessary to ensure the safe and successful reunification of children with their families when appropriate, causing significant harm to their health and well-being;

h. Whether Defendants fail to provide Plaintiff Children with timely and appropriate decision-making as well as appropriate procedures and services necessary to ensure that when they cannot be reunited with their families safely, they are promptly freed for adoption and placed in permanent homes, causing significant harm to their health and well-being; and

i. Whether Defendants fail to provide Plaintiff Children with the supports necessary to maintain family relationships where appropriate, including placing siblings together and providing parent and sibling visits, causing significant harm to their health and well-being.

(Compl. ¶ 13.)

Likewise, there are a number of questions of law common to all Class members, including the following:

a. Whether Defendants' actions and inactions violate Plaintiff Children's substantive due process rights to be free from harm while in state custody, guaranteed by the Fourteenth Amendment to the United States Constitution;

b. Whether Defendants' actions and inactions violate Plaintiff Children's rights to family integrity, guaranteed by the First, Ninth, and Fourteenth Amendments to the United States Constitution;

c. Whether Defendants' actions and inactions violate Plaintiff Children's rights to mandated foster care and adoption services, established by the Adoption Assistance and Child Welfare Act of 1980, as amended by the Adoption and Safe Families Act of 1997, and relevant federal regulations,;

d. Whether Defendants' actions and inactions violate class Plaintiff Children's rights to adequate foster care maintenance payments, established by the Adoption Assistance and Child Welfare Act of 1980, as amended by the Adoption and Safe Families Act of 1997, and relevant federal regulations;

e. Whether Defendants' actions and inactions violate Plaintiff Children's third-party beneficiary rights under the Title IV-E plan executed between Rhode Island and the federal government; and

f. Whether Defendants' actions and inactions violate Plaintiff Children's rights to procedural due process, guaranteed by the Fourteenth Amendment to the United States Constitution.

(Compl. ¶ 14.)

This Court has used the formulation of the commonality agreement that Third Circuit articulated in certifying a class nearly identical to the one proposed here. *See Van West v. Midland Nat'l Life Ins. Co.*, 199 F.R.D. 448, 452 (D.R.I. 2001) (citing *Baby Neal*, 43 F.3d at 56).

The plaintiffs in *Baby Neal* were children in foster care in Philadelphia who alleged systemic deficiencies that interfered with the provision of child welfare services required by the Constitution and federal and state law. The *Baby Neal* court found that, "[i]nsofar as the children challenge the scheme for the provision of child welfare services, their claims share a common legal basis." *Baby Neal*, 43 F.3d at 61. Because "the commonality standard requires only that a putative class share either the injury or the immediate threat of being subject to the injury," the plaintiffs in *Baby Neal* had plainly satisfied the commonality requirement. *Baby Neal*, 43 F.3d at 60.

The same result is warranted here. Common questions of fact and law, as described above, run throughout the class members' individual cases. And here, as in *Baby Neal*, Plaintiff Children are "challenging common conditions and practices under a unitary regime," and are "subject to the risk that they [would] suffer from the same deprivations resulting from the [child welfare agency's] alleged violations." *Baby Neal*, 43 F.3d at 60. As the commonality requirement "does not demand that *every* issue to be litigated must be an issue common to the claims of all class members," but only "requires the existence of *some* common issue or issues," that requirement for class certification is clearly satisfied here. *Van West*, 199 F.R.D. at 452 (citing *Baby Neal*, 43 F.3d at 56) (emphasis in original).

#### c. The Claims of the Named Plaintiffs are Typical of the Claims of the Class

The claims of Named Plaintiffs and Plaintiff Children alike arise from the same set of federal rights that are systematically violated by Defendants through their acts and omissions. Named Plaintiffs' claims and defenses are typical of the claims and defenses of all children that DCYF is charged with protecting, and "prosecution of the class representative[s'] case[s] will benefit the entire class." *Van West v. Midland Nat'l Life Ins. Co.*, 199 F.R.D. 448, 452 (D.R.I.

2001). Thus, the requirement of Rule 23(a)(3) that "the claims or defenses of the representative parties are typical of the claims or defenses of the class" is satisfied.

That Defendants may have harmed Plaintiff Children in different ways and to varying degrees does not negate Named Plaintiffs' typicality. The typicality inquiry does not require probing the particular circumstances of each class member. *Griffin v. Burns*, 570 F.2d 1065, 1074 (1st Cir. 1978) ("Actions under Rule 23(b)(2) may be more rough-hewn than those in which the court is asked to award damages"). The critical factor is that the Named Plaintiffs' claims arise "from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . are based on the same legal theory." *Rosen v. Textron, Inc.*, 369 F. Supp. 2d 204, 208 (D.R.I. 2005). Moreover, typicality does not require that the interests and claims of all Named Plaintiffs and class members be identical in a civil rights class action such as this. *United States v. Rhode Island Dep't of Employment Sec.*, 619 F. Supp. 509, 513 (D.R.I. 1985) ("where the class members have suffered discrimination as a result of a uniform, centrally administered policy, the requirements of commonality and typicality are adequately met even without complete identity of damage sustained") (internal quotations and citations omitted).

Named Plaintiff's claims are also typical because they are based on the same legal theory: deprivation of the same federal rights. *Rosen*, 369 F. Supp. 2d at 208 ("similarity of legal theory may satisfy the typicality requirement even in the face of factual distinctions"). Named Plaintiffs, for example, allege violations of their substantive and procedural due process rights to be free from harm while in state custody and federal statutory rights under the Adoption Assistance Act, the same legal theories that underlie Plaintiff Children's corresponding claims. Similarly, Named Plaintiffs challenge the same system-wide policies and practices that give rise

to the legal claims of the Class. In short, Named Plaintiffs satisfy the typicality requirement of Rule 23(a)(3).

#### d. Named Plaintiffs Will Adequately Represent the Members of the Proposed Class

The Named Plaintiffs "will fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4), because their request for broad systematic reforms "will not conflict with the interests of any of the class members," *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985), and because they are represented by highly qualified and experienced counsel who are able to conduct this litigation vigorously. *Accord Rosen v. Textron, Inc.*, 369 F. Supp. 2d 204, 216 (D.R.I. 2005). Named Plaintiffs seek broad declaratory and injunctive relief ordering Defendants to effect systemic reforms that will provide the entire Class with the protection, care, treatment, and services to which each child is legally entitled. Because the relief sought by Named Plaintiffs coincides with the relief sought for the Class as a whole, "this circumstance accords a congruence of interest between the class and individual claims, and the named representative[s'] self interest is advanced by a vigorous pursuit of the class claims." *DeGrace v. Rumsfeld*, 614 F.2d 796, 809 (1st Cir. 1980). Relief for the few named here will accord relief to all abused and neglected children in Rhode Island's foster care system.

Further, Plaintiffs have retained experienced and competent counsel who will more than "fairly and adequately protect the interests of the class," as required by Rule 23(a)(4). Plaintiffs are represented by the Rhode Island Office of the Child Advocate; the nonprofit organization Children's Rights; the law firm Weil, Gotshal & Manges LLP; and Rhode Island attorney John Dineen. The Rhode Island Office of the Child Advocate is an independent state agency charged with protecting and vindicating the rights of children in state custody. (Alston Decl. ¶ 2 (citing R.I. Gen. Laws §§ 42-73-1 *et seq.* (2006)).) Included in the Office of the Child Advocate's

statutory mandate is the periodic review of DCYF's policies and procedures and the investigation of circumstances relating to the death of any child who has received DCYF services. (Alston Decl. ¶ 2 (citing R.I. Gen. Laws § 42-73-7(2)).) The Office of the Child Advocate is *required* to "[t]ake all possible action including, but not limited to . . . formal legal action, to secure and ensure the legal, civil, and special rights of children" in DCYF foster care custody. (Alston Decl. ¶ 2 (citing R.I. Gen. Laws § 42-73-7(6)).)

Children's Rights' attorneys have served as class counsel on much of the major child-welfare litigation in the United States. (Alston Decl. ¶ 7; Lowry Decl. ¶¶ 7–8.) The attorneys at Children's Rights have many years of experience litigating similar class actions across the country, asserting constitutional and statutory claims on behalf of children in foster care to obtain system-wide injunctive and declaratory relief. (Alston Decl. ¶ 7; Lowry Decl. ¶¶ 7–8.) Weil, Gotshal & Manges LLP is one of the leading private law firms in the country. (Alston Decl. ¶ 8; Lowry Decl. ¶ 5.) Weil's attorneys bring a wealth of experience in all areas of complex civil litigation. (Alston Decl. ¶ 8; Lowry Decl. ¶ 5.) And Rhode Island attorney John Dineen has previously litigated constitutional claims on behalf of foster children in Rhode Island, serving as co-counsel since 2001 in *Office of Child Advocate v. Lindgren*, No. 1:86-cv-00723-L (D.R.I. 1986), challenging DCYF's practice of placing children in its custody in night-to-night placements. (Alston Decl. ¶ 9; Lowry Decl. ¶ 6.)

Prior to filing this action, Plaintiffs' counsel conducted an in-depth investigation of all aspects of the Rhode Island child welfare system's operation and its treatment of children. (Alston Decl. ¶ 11; Lowry Decl. ¶ 10.) Counsel spent hundreds of hours meeting with sources and stakeholders and compiling and analyzing data. (Alston Decl. ¶ 11; Lowry Decl. ¶ 10.)

Counsel thoroughly researched all of Plaintiff Children's legal claims. (Alston Decl. ¶ 11; Lowry Decl. ¶ 10.)

Counsel's combined experience, knowledge, resources, and dedication unquestionably satisfy the adequacy requirement for class certification.

**2. Class Certification is Warranted Under Rule 23(b)(2)**

In addition to satisfying the four requirements of Rule 23(a), the proposed Class meets the criteria set out in Rule 23(b)(2), which provides for class certification where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). Plaintiffs seek relief from Defendants' systemic failures, including their failure: to protect children in DCYF's custody from further abuse and neglect while in care; to license an appropriate number and range of safe placements for foster children; to place foster children together with their siblings in appropriate homes and move them as infrequently as possible; to assign manageable caseloads to DCYF caseworkers; to reimburse foster care providers adequately; to reunify children in foster care with their parents in a timely manner, but only when it is safe to do so; to deliver an adequate and appropriate array of educational, medical, dental, and mental health services to children in foster care; and to obtain maximum federal funding for child welfare. These and the other failures set forth in the Complaint generally affect all members of the Class, and the declaratory and injunctive relief sought is intended to have class-wide scope and effect. Plaintiffs' Prayer for Relief specifically requests final declaratory and injunctive relief to enjoin ongoing, systemic violations of the rights of all children in the foster care custody of DCYF, and to ensure that these children receive the protection, care, treatment, and services due to them as a matter of law. Because "defendant's

alleged actions are generally applicable to the class as a whole and injunctive relief would be appropriate if entitlement to relief is established," this is a "classic 23(b)(2) case." *Caranci v. Blue Cross & Blue Shield of Rhode Island*, 194 F.R.D. 27, 40 (D.R.I. 2000).

The standards for certification of a class under Rule 23(b)(2) are not demanding. "If the Rule 23(a) prerequisites have been met and injunctive or declaratory relief has been requested, the action usually should be allowed to proceed under subdivision (b)(2)." *Bertozzi v. King Louie Int'l, Inc.*, 420 F. Supp. 1166, 1180–81 (D.R.I. 1976). Explaining that "the conduct complained of is the benchmark for determining whether a subdivision (b)(2) class exists," the First Circuit has found Rule 23(b)(2) to be "uniquely suited to civil rights actions in which members of the class are often incapable of specific enumeration." *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972) (internal quotation omitted); *see also McCuin v. Sec'y of Health & Human Servs.*, 817 F.2d 161, 167 (1987) ("where only declaratory and injunctive relief is sought for a class, plaintiffs are not required to identify the class members once the existence of the class has been demonstrated"). Because Plaintiffs seek only injunctive relief designed to remedy Defendants' violation of the constitutional and statutory rights of an entire class, and to prevent future violations of those rights, certification under Rule 23(b)(2) is proper, if not required.

Additionally, certification under Rule 23(b)(2) is warranted because the very nature of foster care makes it exceedingly difficult for individual plaintiffs to vindicate their own claims, let alone to obtain relief that would remedy the harms suffered by foster children generally as a result of Defendants' conduct. The transitory nature of foster care is such that individual claims often become moot as children return home, are adopted, or "age out" of the system. The First Circuit has long recognized that the "danger that the individual claim might be moot" is itself a factor that weighs in favor of class certification under Rule 23(b)(2). *Dionne v. Bouley*, 757 F.2d

1344, 1356 (1st Cir. 1985) ("There may . . . be situations where a class certification under Rule 23(b)(2) will arguably be unnecessary, but where other considerations may render a denial of certification improper. This could be the case, for example, where there is a danger that the individual claim might be moot.") Taken together, the likelihood of individual children's claims becoming moot, the fact that Defendants' acts and omissions are generally applicable to Plaintiff Children, and the purely injunctive nature of the relief sought, compel class certification under Rule 23(b)(2).

### 3. The Proposed Class Should Be Certified

As demonstrated above, the four requirements of Rule 23(a), as well as the requirements of Rule 23(b)(2), are fully satisfied here. Therefore, pursuant to Rule 23(c)(1), this Court should certify this case as a class action, with the Class defined as: "all children who are or will be in the legal custody of the Rhode Island Department of Children, Youth and Families due to a report or suspicion of abuse or neglect." Fed. R. Civ. P. 23(c)(1) (2006).

## B. Plaintiffs' Counsel Will Fairly and Adequately Represent the Interests of the Class and Should Be Appointed Class Counsel

Plaintiffs' counsel's breadth and depth of civil rights and class action experience, along with their extensive investigation into the facts and law of this case and their ability to commit the necessary time and resources to prosecute this action, eminently qualify them to "fairly and adequately represent the interests of the class" as class counsel.[2] Fed. R. Civ. P. 23(g)(1)(B) (2006). First, counsel have identified and thoroughly investigated all claims in this action.

---

[2] In making this determination, the Court is guided by four statutory considerations: (1) "the work counsel has done in identifying or investigating potential claims in the action"; (2) "counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the present action"; (3) "counsel's knowledge of the applicable law"; and (4) "the resources counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(C) (2006).

(Alston Decl. ¶ 11; Lowry Decl. ¶ 10.) Second, counsel have extensive experience in handling class actions, other complex litigation, and claims of the type asserted here on behalf of large classes of children in foster care who have sought the type of injunctive relief requested here. (Alston Decl. ¶ 7; Lowry Decl. ¶¶ 7–8.) Third, counsel have a comprehensive knowledge of the applicable law, based both on current legal research and on the experience of attorneys from Children's Rights, who have served as class counsel on much of the major child-welfare litigation in this country. (Alston Decl. ¶ 11; Lowry Decl. ¶¶ 7–10.) And, fourth, counsel have committed sufficient resources to prosecute this action in a thorough and expeditious manner, having assembled a strong and well-resourced legal team. (Alston Decl. ¶ 6, 12; Lowry Decl. ¶¶ 3, 10.)

Because Plaintiffs' counsel clearly satisfy the standard for appointment of class counsel contained in Rule 23(g)(1)(B) and (C), this Court should appoint Plaintiffs' counsel as class counsel in this action.

## IV. Conclusion

This action, which seeks injunctive relief on behalf of a class of thousands of Rhode Island children, satisfies all of the requirements for class certification under Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. Accordingly, pursuant to Rule 23, Plaintiffs respectfully request that this Court enter an order certifying this action as a class action for all purposes, with the Class defined as: "all children who are or will be in the legal custody of the Rhode Island Department of Children, Youth and Families due to a report or suspicion of abuse or neglect." Further, Plaintiffs respectfully request an order appointing Plaintiffs' counsel as class counsel pursuant to Rule 23(g).

Dated June ____, 2007

Respectfully Submitted:

JAMETTA O. ALSTON (Bar No. 3909)
CHILD ADVOCATE OF
THE STATE OF RHODE ISLAND
272 West Exchange Street, Suite 301
Providence, RI 02903
Phone: (401) 222-1690
Facsimile: (401) 222-6652
Email: jalston@doa.state.ri.us

JOHN W. DINEEN (Bar No. 2346)
305 South Main Street
Providence, RI 02903
Phone: (401) 223-2397
Facsimile: (401) 223-2399
Email: dineenjw@aol.com

MARCIA ROBINSON LOWRY (Bar No. 1187053 (NY); *pro hac vice* application pending)
SUSAN LAMBIASE (Bar No. 2099489 (NY); *pro hac vice* application pending)
CHILDREN'S RIGHTS
330 Seventh Avenue, Fourth Floor
New York, NY 10001
Phone: (212) 683-2210
Facsimile: (212) 683-4015
Email: mlowry@childrensrights.org

VERNON M. WINTERS (Bar No. 130128 (CA); *pro hac vice* application pending)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA
Phone: (650) 802-3005
Facsimile: (650) 802-3100
Email: vernon.winters@weil.com