**United States District Court**
**for the**
**District of Rhode Island**

| | | |
|---|---|---|
| **SAM and TONY M., by Next Friend Gregory C. Elliott; CAESAR S., by Next Friend Kathleen J. Collins; DAVID T., by Next Friend Mary Melvin; BRIANA, ALEXIS, CLARE, and DEANNA H., by Next Friend Gregory C. Elliott; and DANNY and MICHAEL B., by Next Friend Gregory C. Elliott; for themselves and those similarly situated,** | ) | |
| **Plaintiffs,** | ) | **Class Action** |
| **v.** | ) | **Civil Action No.** CA 07 241L |
| **DONALD L. CARCIERI, in his official capacity as Governor of the State of Rhode Island; JANE A. HAYWARD, in her official capacity as Secretary of the Executive Office of Health & Human Services; and PATRICIA MARTINEZ, in her official capacity as Director of the Department of Children, Youth and Families,** | ) | |
| **Defendants.** | | |

**Declaration of Jametta O. Alston in Support of Plaintiffs' Motion for Class Certification and Appointment of Class Counsel**

I, JAMETTA O. ALSTON, do hereby declare under penalty of perjury that the foregoing is true and correct:

1. I am a member in good standing of the Rhode Island State Bar and I am admitted to practice in this Court. Along with co-counsel Rhode Island attorney John Dineen, I represent Plaintiffs in this matter. Counsel at Children's Rights and the law firm of Weil, Gotshal & Manges LLP have *pro hac vice* applications pending and, if granted, will also serve as co-counsel in this matter. I submit this affidavit in support of Plaintiffs' Motion for Class Certification and Appointment of Class Counsel.

2. I am the Child Advocate of Rhode Island. The Rhode Island Office of the Child Advocate is an independent state agency charged with protecting and vindicating the rights of children in Rhode Island state custody. *See* R.I. Gen. Laws §§ 42-73-1 *et seq*. (2006). Included in the Child Advocate's statutory mandate is the periodic review of the policies and procedures of the Department for Children, Youth and Families (DCYF or "the Department") and the investigation of circumstances relating to the death of any child who has received services from DCYF. § 42-73-7(2). The Child Advocate is required to "[t]ake all possible action including, but not limited to . . . formal legal action, to secure and ensure the legal, civil, and special rights of children" in foster care custody. § 42-73-7(6). In addition, the Child Advocate may take legal action on behalf of an identifiable class of children when system-wide change is necessary to redress harm done to those children.

3. As part of my duties and responsibilities, I have worked to ensure the safety and welfare of children entrusted to the care of DCYF. More than twenty years ago, my Office filed a lawsuit to secure the rights of children in foster care custody. *See Office of Child Advocate v. Lindgren*, C.A. 1:86-cv-00723-L (D.R.I. 1986). Based on the conditions facing foster children as

they existed in 1986, the complaint charged the Director of the Department of Children and Their Families (predecessor to DCYF) with institutionalizing the practice of placing children in "night-to-night" placements. I closely monitor the three consent decrees that were the result of the 1986 "night-to-night" complaint and my Office has evaluated DCYF's compliance with its obligations under the decrees over the last twenty-one years. Despite the decrees, children in DCYF's foster care custody continue to suffer the specific problem of night-to-night placements, as well as other issues affecting their health and well-being. The Department's systemic problems are worsening and the list of such problems is growing.

4. My office convened the Panel that investigated the death of three-year-old T. J. Wright who died in 2004 while placed in an unlicensed foster home in DCYF custody. Following the investigation, my office made recommendations to the Department to improve the safety and welfare of children in its care. To date, DCYF has implemented only seven of the fifteen recommendations the Panel made in 2005.

5. Serious weaknesses in the system persist, harming thousands of vulnerable children and youth while in the Department's care. The Complaint in the present action details the harms that foster children in DCYF custody currently suffer and will continue to suffer until the child welfare system is reformed.

6. In my capacity as Rhode Island Child Advocate, I have determined that litigation is necessary to address the systemic failures of the Department and have assembled a legal team to advance this effort.

7. Children's Rights is a national nonprofit advocacy organization devoted to helping reform child welfare systems on behalf of abused and neglected children. Working throughout the United States, Children's Rights has represented classes of children throughout

the country who have brought litigation seeking declaratory and injunctive relief in the form of systemic, institutional reform. (Lowry Aff. ¶¶ 2, 8) The organization's attorneys possess decades of litigation experience in class actions across the country, seeking injunctive and declaratory relief on behalf of children in foster care. (Lowry Aff. ¶¶ 7-8) Specifically, the organization's executive director has spent the last thirty years conducting and supervising exactly this type of litigation. (Lowry Aff. ¶ 7)

8. Weil, Gotshal & Manges LLP is one of the leading private law firms in the United States and brings extraordinary experience and resources to this case.

9. Rhode Island attorney John Dineen has substantial experience litigating civil rights matters in federal courts. Mr. Dineen has previously litigated constitutional claims on behalf of foster children in Rhode Island, serving as co-counsel in *Office of Child Advocate v. Lindgren*.

10. The combined experience, knowledge, resources, and dedication of this legal team amply satisfy the adequacy requirement for representation of the Plaintiff children in this case.

11. The Office of the Child Advocate, with the support of Children's Rights, Weil, Gotshal & Manges LLP, and John Dineen, has conducted an in-depth investigation of the Rhode Island child welfare system's operation and its treatment of children, and has thoroughly researched all relevant law.

12. The Office of the Child Advocate, with the support of its co-counsel team, is fully capable of litigating this matter on behalf of all children in DCYF foster care custody, including monitoring the implementation of the terms of any consent decree or court order until all of the problems outlined in the Complaint are resolved.

Dated: June 28, 2007

[signature]
Jametta O. Alston