**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **SAM and TONY M., by Next Friend Gregory c. Elliot; CEASER S., by Next Friend Kathleen J. Collins; DAVID T., by Next Friend Mary Melvin; BRIANA, ALEXIS, CLARE and DEANNE H., by Next Friend Gregory C. Elliott; and DANNY and MICHAEL B. , by Next Friend Gregory C. Elliott; for themselves and those similarly situated** | **:** | |
| **v.** | **:** | **C.A. 07-241L** |
| **DONALD L. CARCIERI, in his official capacity as Governor of the State of Rhode Island; JANE HAYWARD, in her official capacity as Secretary of the Executive Office of Health & Human Services; and PATRICIA MARTINEZ, in her official capacity as Director of the Department of Children, Youth and Families** | **:** | |

**DEFENDANTS' OBJECTION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF COUNSEL**

Now come Defendants and object to Plaintiffs motion for class certification and appointment of counsel under Federal Rule of Civil Procedure 23. The Plaintiffs fail to demonstrate that they have satisfied the Rule's required elements of commonality, typicality and adequacy. Plaintiffs have failed to sustain their burden under F.R.C.P. 23 and their motion to certify a class and appoint counsel must be denied.

Respectfully submitted

DEFENDANTS
By their Attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

/s/ James R. Lee

JAMES R. LEE (4305)
Assistant Attorney General
R.I. Department of the Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400 ext. 2314
Fax: (401) 222-2995
jlee@riag.ri.gov

/s/ Brenda D. Baum

BRENDA D. BAUM (5184)
Assistant Attorney General
R.I. Department of the Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400 ext. 2294
Fax: (401) 222-3016
bbaum@riag.ri.gov

On Behalf of PATRICIA MARTINEZ,
in her Official Capacity as Director of the
Department of Children, Youth and Families

/s/ Kevin Aucoin

KEVIN AUCOIN (3019)
Executive Counsel
R.I. Department of Children, Youth &
Families
101 Friendship Street
Providence, RI 02903
Tel: (401) 528-3579
Fax: (401) 525-3566
Kevin.Aucoin@dcyf.ri.gov

On behalf of JANE HAYWARD,
in her Official Capacity as Secretary of the Executive Office of Health & Human Services,

/s/ Jane Morgan

JANE MORGAN (4024)
Assistant Director of Legal Services
R.I. Department of Elderly Affairs
Benjamin Rush Building
35 Howard Avenue
Cranston, RI 02920
Tel: (401) 462-0524
Fax: (401) 462-0503
jmorgan@dea.state.ri.us

**CERTIFICATION**

I hereby certify that I have electronically mailed the foregoing document on this 1st day of October, 2007 to the attorney(s) of record listed below:

**John William Dineen, Esq.**
jwdineen1@yahoo.com

**Jametta O. Alston, Esq.**
jalston@gw.doa.state.ri.us

**Susan Lambiase**
slambiase@childrensrights.org

**Vernon Winters**
vern.winters@weil.com

/s/ Brenda D. Baum

**CERTIFICATION**

I hereby certify that I have mailed, the foregoing document on this 1st day of October 2007 to the attorney(s) of record listed below:

Marcia Robinson Lowry, Esq.
Childrens' Rights
330 7th Avenue
4th Floor
New York, NY 10001

/s/ Brenda D. Baum

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **SAM and TONY M., by Next Friend Gregory c. Elliot; CEASER S., by Next Friend Kathleen J. Collins; DAVID T., by Next Friend Mary Melvin; BRIANA, ALEXIS, CLARE and DEANNE H., by Next Friend Gregory C. Elliott; and DANNY and MICHAEL B. , by Next Friend Gregory C. Elliott; for themselves and those similarly situated** | : | |
| **v.** | : | **C.A. 07-241L** |
| **DONALD L. CARCIERI, in his official capacity as Governor of the State of Rhode Island; JANE HAYWARD, in her official capacity as Secretary of the Executive Office of Health & Human Services; and PATRICIA MARTINEZ, in her official capacity as Director of the Department of Children, Youth and Families** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO CLASS CERTIFICATION**

## I. INTRODUCTION

Plaintiffs filed this action pursuant to 42 U.S.C. §1983 seeking redress for alleged acts or omissions by the Department of Children, Youth and Families (hereinafter "DCYF") which they allege violated: (1) due process rights, (2) rights guaranteed under the First, Ninth and Fourteenth Amendments to the United States Constitution and (3) rights they claim are guaranteed for them by the Adoption Assistance and Child Welfare Act of 1980. In the matter presently before the Court, Plaintiffs seek: class certification pursuant to F.R.C.P. 23, to have Plaintiffs named as class representatives and Appointment of Counsel.

In their Amended Complaint, Plaintiffs define their proposed class as "all children who are or will be in the legal custody of the Rhode Island Department of Children, Youth and Families due to a report or suspicion of abuse or neglect". Amended Complaint ¶11. The Plaintiffs claim that they are "similarly situated" to approximately 3,000[1] children who are in the legal custody of DCYF for foster care services due to reported or substantiated allegations of abuse or neglect. Amended Complaint ¶11. The Plaintiffs claim that they, as well as the class they propose to represent, are "at risk of harm by the systemic and legal deficiencies of Rhode Island's child welfare system." Amended Complaint ¶12.

This Honorable Court should deny Plaintiffs' motion to certify the proposed class. The Plaintiffs fail to demonstrate that they have satisfied Rule 23's required elements of commonality, typicality and adequacy. Plaintiffs have failed to sustain their burden under F.R.C.P. 23 and their motion to certify a class and appoint counsel must be denied.

## II. ARGUMENT

### A. Requirements of Rule 23

Fed. R. Civ. P. Rule 23 requires that plaintiffs who seek the certification of a class must, at a minimum, establish that:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

[1] Plaintiffs represent this number as of January 2007.

It is the plaintiffs' burden to establish each element of Rule 23(a). ***Forman v. Data Transfer, Inc.***, 164 F.R.D. 400, 402 (E.D. Pa. 1995); ***Strykers Bay Neighborhood Council, Inc. v. City of New York***, 695 F. Supp. 1531, 1537 (S.D.N.Y. 1988). The Court conducts a "rigorous analysis" to determine whether Plaintiffs have satisfied the prerequisites set forth in Rule 23(a). ***J.B. ex. Rel. Hart v. Valdez***, 186 F.3d 1280, 1287-1288 (10th Cir. 1999). "To obtain class action certification, plaintiffs must establish that all four requisites of Rule 23(a) and at least one part of Rule 23(b) are met." ***Foreman v. Heineman***, 240 F.R.D. 456, 491 (D.Neb. 2007). Plaintiffs in this case are proceeding under Rule 23(b)(2) which requires plaintiffs to demonstrate that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

For purposes of the Motion for Class Certification, the Court should accept the allegations[2] contained in the Amended Complaint as true. ***J.B. ex. Rel. Hart v. Valdez***, 186 F.3d at 1284, 1290 fn7. The Court, however, "'need not blindly rely on conclusory allegations which parrot Rule 23 requirements [and] may … consider the legal and factual issues presented by the plaintiff's complaints.'" ***J.B.***, Id. at 1290 fn.7. This Court may also take judicial notice of the Family Court's actions, orders and decrees that have been provided under seal in support of Defendants' Motion to Dismiss for each plaintiff child, that have been provided under seal in support of Defendants' Motion to Dismiss.

---

[2] Defendants dispute numerous of the characterizations and alleged facts set forth for each of the named plaintiffs in the Amended Complaint. Moreover, Plaintiffs fail to include in the Amended Complaint or in any other pleading that they have filed the role and authority of the Rhode Island Family Court regarding the placements, reunification plans, case reviews, etc. for each of the named Plaintiffs.

The plaintiffs in this case seek broad declaratory and injunctive relief – essentially asking this Court to assume the Rhode Island Family Court's role in every case of abuse or neglect existing or to be filed in the State of Rhode Island and to oversee and manage DCYF's administration of its child welfare program. Federal courts have been warned to be cautious of such requests.

> A federal court may not lightly assume this power. ' Where, as here, the exercise of authority by state officials is attacked, federal courts must be constantly mindful of the special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law.' " ***Elizabeth M. [v. Montenez]***, 458 F.3d 779, 783-84 (8th Cir.2006)(quoting ***Rizzo v. Goode,*** 423 U.S. 362, 378, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976)). " Federal courts operate according to institutional rules and procedures that are poorly suited to the management of state agencies." ***Angela R. v. Clinton,*** 999 F.2d 320, 326 (8th Cir.1993). " [T]his concern is heightened in the class action context because of the likelihood that an order granting class certification ' may force a defendant to settle rather than incur the costs of defending a class action and run the risk of potentially ruinous liability.' " ***Elizabeth M.,*** 458 F.3d 779, 783-84 (8th Cir.2006)(quoting Advisory Committee Notes to 1998 Amendments adopting Rule 23(f)).

***Foreman***, 240 F.R.D. at 491. This Court must conduct a "'rigorous analysis' to ensure that the prerequisites of Rule 23 are satisfied." ***Foreman***, 240 F.R.D. at 491(*citing* ***Elizabeth M.,*** 458 F.3d at 779, 783-784)). "Although the court does not at this stage examine and determine the merits of the plaintiffs' case, it may properly conduct a preliminary inquiry of the evidence relating to plaintiffs' allegations of systemic deficiencies in the foster care system and the alleged resulting harm suffered by the class, as well as the manner in which that evidence fits into the legal framework governing the claims pleaded." ***Id***. at 491-492 "A plaintiffs' failure to identify the specific policies under attack and the nature of their federal statutory claims in a massive class action neither promotes the efficiency and economy underlying class actions nor pays sufficient

"heed to the [principles of] federalism and separation of powers." *Id*. (citing, *Elizabeth M.*, 458 F.3d 779, 787-88 (8th Cir.2006)).

**B. The Class Definition**

Plaintiffs define their class as "all children who are or will be in the legal custody of the Rhode Island Department of Children, Youth and Families due to a report or suspicion of abuse or neglect." Amended Complaint ¶11.

"Before delving into a Rule 23 analysis, the Court must first consider whether a precisely defined class exists and whether the named plaintiffs are members of the proposed class." *Edwards v. McCormick*, 196 F.R.D. 487, 490-491. "While class definitions are obviously individualized to the given case, important elements of defining a class include: (1) specifying a particular group at a particular time frame and location who were harmed in a particular way; and (2) defining the class such that a court can ascertain its membership in some objective manner. *Crosby v. Social Sec. Admin.*, 796 F.2d 576, 580 (1st Cir.1986) (holding that a class could not be certified because the definition "ma[de] class members impossible to identify prior to individualized fact-finding and litigation" and thereby failing "to satisfy one of the basic requirements under Rule23")." *Id*. Plaintiffs argue to this Court that when seeking certification under Rule 23(b)(2) their obligation to identify the class members is more relaxed. *Plaintiff's Memorandum of Law in Support of their Motion for Class Certification at Page 12*. The requirements are not so relaxed, however, that the Plaintiffs can avoid providing the Court with a clearly defined class since the plaintiffs ask this Court for injunctive relief, and if the Court orders such relief it will have to determine, at any given time, whether an individual is a member of the class. The Defendants submit that Plaintiffs failed to

provide this Court with a clearly defined class.

**i. The Plaintiffs Proposed Class Definition is Inconsistent With Its Stated Purpose.**

The Plaintiffs proposed class definition is inconsistent with its stated purpose. In their request for certification to this Court, Plaintiffs do not limit their proposed class to only those children in the legal custody of DCYF due to a report or suspicion of abuse or neglect ***and*** are in foster care. Plaintiffs do not include a reference to "foster care", "foster children" or "foster care system" in their proposed class definition; however, DCYF's foster care system and its administration by the Defendants is the program that Plaintiffs claim violated their civil rights. Although not included in its proposed class definition, it is clear from the numerous representations in their pleadings (Amended Complaint, Memorandum of Law in Support of Motion for Class Certification and Appointment of Counsel and Plaintiffs' Response and Memorandum of Law in Opposition to Defendants' Motion to Extend Time to File Its Response to Class Certification (Document 22)) that Plaintiff are only referring to children in DCYF's legal custody who are or will be placed in foster care. By way of example:

In Plaintiffs' Memorandum of Law in Support of their Motion for Class Certification and Appointment of Counsel they state:

- "The Plaintiffs in this action are children who are or will be in *foster care custody* of DCYF due to allegations of abuse or neglect. Plaintiffs seek class-wide declaratory and injunctive relief to remedy the ongoing failure of Defendants – the governor of Rhode Island, the secretary of the Rhode Island Executive Office of Health and Human Services (HHS), and the Director of DCYF, sued in their official capacities – to care for, protect, and provide child-welfare services to Plaintiff Children as required by the united States Constitution and federal law." Emphasis Added. Page 2.

- "As current and future children ***in foster care***, Plaintiff Children are entirely dependent upon Defendants, who are required by law to provide them with the appropriate care, protection, and services. Although the child-welfare system is intended to protect vulnerable children, ***children in foster care custody of DCYF*** are instead subjected to harm, and the imminent risk of additional harm, as a consequence of the acts and omissions of Defendants." Emphasis Added. Page 2.
- "The State of Rhode Island has approximately 3,000 children in ***DCYF foster care custody***. As the legal custodians of these children, Defendants are required by the United States Constitution and federal law to protect the safety and well-being and to ***return them home*** as quickly as possible or, when that is not possible, ***to timely find permanent homes*** for them." Emphasis Added. Page 3.
- "Defendants' conduct with respect to each Named Plaintiff reflects and illustrates Defendants' routine, systemic violation of some or all of the federal constitutional and statutory rights of ***Rhode Island's foster children***." Emphasis Added. Page 4.

- "As demonstrated in the Complaint, the constitutional deprivations and statutory violations that each Named Plaintiff has suffered and continues to suffer are typical of the harms being inflicted upon thousands of children in ***Rhode Island's foster care custody***. Emphasis Added. Page 7.

- The Plaintiffs set forth thirteen (13) alleged deficiencies in DCYF's foster care system that they alleged violated their Constitutional rights. Pages 7-9. The titles of the 13 areas of alleged deficiencies are:

  - "Plaintiff Children are abused and neglected while in foster care"

  - Defendants rely on expensive and inappropriate shelters and other institutions for Plaintiff Children rather than developing a sufficient number and variety of safe foster homes"

  - "Defendants place Plaintiff Children far from their homes"

  - "Defendants frequently move Plaintiff Children form one placement to another"

  - "Defendants separate Plaintiff Children from their siblings"

  - "Defendants fail to assess Plaintiff Children's needs and fail to plan or deliver services to meet those needs"

  - "Defendants fail to reunify Plaintiff Children with their parents in a timely, planned, and safe manner, when reunification is appropriate"

  - "Defendants pursue reunification when it is not an appropriate goal"

  - "Defendants fail to meet Plaintiff Children's health care needs"

  - "Defendants assign excessive caseloads to social caseworkers, making it impossible for caseworkers to visit Plaintiff Children"

  - "Defendants forfeit available federal funds"

  - "Defendants' excessive reliance on expensive institutional placement harms children and wastes scarce financial resources"

  - "Defendants do not provide adequate reimbursement to foster parents".

- "Defendants' systemic failure to fulfill their constitutional and statutory obligations to the children in their *foster care custody* gives rise to common questions of law and fact within the meaning of Rule 23(a)(2)." Emphasis Added. Page 15.

- "Plaintiffs allege that systemic deficiencies in *Defendants' foster care system*…" Emphasis Added. Pages 15-16.

- "Relief for the few named here will accord relief to all abused and neglected *in Rhode Island's foster care system*." Emphasis Added. Page 20.

- "Plaintiffs' Prayer for Relief specifically requests final declaratory and injunctive relief to enjoin ongoing, systemic violations of the rights *of all children in the foster care custody* of DCYF, and to ensure that *these children* receive the protection, care and

treatment, and services due to them as a matter of law." Emphasis Added. Page 22.

- Additionally, certification under Rule 23(b)(2) is warranted because ***the very nature of foster care*** makes it exceedingly difficult for individual plaintiffs to vindicate their own claims, let alone to obtain relief that would remedy the harms suffered by ***foster children*** generally as a result of Defendants' conduct. The ***transitory nature of foster care*** is such that individual claims often become moot as ***children return home***, are adopted, or "aged out" of the system." Emphasis Added. Page 23.

Additionally, the remedies Plaintiffs ask this Court to order virtually all pertain to children in DCYF's foster system. Lastly, in Document 22 Plaintiffs' describe their "to-be certified class of approximately 3,000 abused and neglected children for whom Defendants have assumed legal responsibility by taking them into custody and placing them in state-controlled foster care." *See Plaintiffs' Response and Memorandum of Law in Opposition to Defendants' Motion to Extend Time to File its Response to Plaintiffs' Motion to Certify a Class and Appointment of Counsel" at page 1.* This is probably the most consistent class definition with regards to Plaintiffs' stated purpose. It is not, however, the one that Plaintiffs request this Court to certify.

One can only speculate that Plaintiffs' description of its proposed class does not include a reference to "foster care" in an attempt to avoid the difficulties similar plaintiffs and *Children's Rights* encountered before the United States District Court for the District of Nebraska. In ***Foreman***, the Plaintiffs' proposed class was "All foster children who are or will be in the legal custody of [the Nebraska Department of Health and Human Services], including those alleged or adjudicated to be abused, neglected or abandoned by their parent, guardian or custodian, and those alleged or adjudicated to be wayward, uncontrollable or habitually truant." 240 F.R.D. at 492. The ***Foreman*** Court found that

there was significant ambiguity in this definition. ***Id***. at 493-496. The ***Foreman*** plaintiffs argued that their definition included children in Nebraska's HHS[3] legal custody with "in-home" placements. ***Id***. at 493. However, the ***Foreman*** Court disagreed with the plaintiffs' reasoning and held that the terms "foster child" and "foster care placement" presumed placement out of the child's home.[4]

Although the Rhode Island Plaintiffs seek to avoid raising this legal problem, they still bear the burden of providing this Court with a clear and unambiguous definition of the proposed class. Without a clear and unambiguous definition it would be impossible for this Court to conduct a "rigorous analysis" to determine whether Plaintiffs have satisfied the prerequisites set forth in Rule 23(a) that is required. As this Plaintiff has failed to meet even this threshold requirement, the Defendants pray that their Motion to Certify a Class be dismissed.

**ii. The Plaintiffs Proposed Class Definition is Ambiguous.**

Plaintiffs' proposed class, "all children who are or will be in the legal custody of the Rhode Island Department of Children, Youth and Families due to a report or

---

[3] Department of Health and Human Services – Nebraska's equivalent of DCYF.

[4] In drawing this legal conclusion, the ***Foreman*** Court acknowledged that "[a] " foster child" is " a child raised by someone who is not its natural or adoptive parent." ***Random House Webster's Unabridged Dictionary*** 756 (2d ed.1997). A " foster child" is " [a] child whose care and upbringing are entrusted to an adult other than the child's natural or adoptive parents." ***Black's Law Dictionary*** 232 (7th ed.1999). The federal regulations for "The Administration on Children, Youth and Families, Foster Care Maintenance Payments, Adoption Assistance, and Child and Family Services" define "foster care" as:

> 24-hour substitute care for children placed away from their parents or guardians and for whom the State agency has placement and care responsibility. This includes, but is not limited to, placements in foster family homes, foster homes of relatives, group homes, emergency shelters, residential facilities, child care institutions, and preadoptive homes.

45 C.F.R. §1355.20(a).
***Foreman, 240 F.R.D.***. at 493-494.

suspicion of abuse or neglect," is ambiguous. Amended Complaint ¶11. It is unclear from the language exactly what groups of children do or may comprise that class. Do Plaintiffs intend to limit the class to those children in DCYF's legal custody who are in foster care? Plaintiffs have created this ambiguity.

The following groups of children could fit into the class Plaintiffs' define at ¶11 of their Amended Complaint:

<u>Emergency Hold</u>

A child who is suspected of being abused or neglected may be removed from his or her parents'/guardians' custody for a period of forty-eight to seventy-two hours without a Family Court order. See R.I. Gen. Laws §§ 40-11-5.

<u>Neglect/Abuse Petition - DCYF Legal Custody – Physical Placement with Parents/Caretaker</u>

DCYF will file child protective petition with the Family Court if they believe that a child has been abused or neglected. (RIGL 40-11-7 (b) and (c)) As a matter of law, DCYF may allow a child to remain in the care of the parent if it determines that the circumstances do not require the removal of the child from the family's home. In such cases, DCYF's petitions the Family Court for an order for the provision of treatment of the family and child. Further, the Family Court may issue an order giving DCYF legal custody of the child but allowing the child to remain in the parent's home. – in those instances where the "circumstances of the child's family or otherwise do not require removal of the child for his or her protection." R.I. Gen. Laws §40-11-7(b).

DCYF Temporary Legal Custody – Physical Placement Out of Home (Foster Home/ Residential Setting)

DCYF will file an *ex parte* petition with the Family Court if they believe that a child has been abused or neglected and that the continued care of the child in the parent's home is likely to result in further harm to the child. Upon the filing of an *ex parte* petition the Family Court may issue an order giving DCYF legal custody of the child and removing the child from their home . R.I. Gen. Laws § 40-11-7(c). In any case, wherein the Family Court has ordered that a child remain out of the parent's home, the Family Court may authorize placement of a child in the care of a relative or in a program or facility licensed by DCYF and p[lace the child under the supervision and/or temporary custody of DCYF. See R.I. gen. Laws §14-1-27..

Adjudicated As Abused or Neglected – Legal Custody Awarded to DCYF but Placement with Parents/Caretaker

The Family Court must conduct a full hearing on DCYF's petition alleging that a child has been abused or neglected. R.I. Gen. Laws §40-11-7.1. If after a hearing the Family Court finds that a child has been abused or neglected, the Family Court may order that the child be placed in the care, custody or control of the DCYF. (See RIGL 40-11-12 (c)). The Court may also place the custody of child in the care of DCYF upon "…such terms as the court shall determine." (See RIGL 40-11-12 (c)) In such cases, the Court may authorize the return of the child to the care of parent if the Court determines it is consistent with the child's safety. (See RIGL 40-11-12 (c)

Adjudicated As Abused or Neglected – Legal Custody Awarded to DCYF - Placement Out of Home

The Family Court must conduct a full hearing on DCYF's petition alleging that a child has been abused or neglected. R.I. Gen. Laws §40-11-7.1. If after a hearing the

Family Court finds that a child has been abused or neglected, the Family Court may order legal custody to DCYF and order that the child not be placed with their parents or caretaker as their safety is a concern. (See RIGL 40-11-12, 14-1-32 and 14-1-34) The child may be placed in a foster home, a residential setting or, if necessary a hospital setting – such as Bradley or Butler Hospitals under such conditions as determined by the Family Court. See R.I. Gen. Laws §§40-11-12, 14-1-32 and 14-1-34.

Petition Dismissed After Hearing

The Family Court must conduct a full hearing on DCYF's petition alleging that a child has been abused or neglected. R.I. Gen. Laws §40-11-7.1. If after a hearing the Family Court may dismiss DCYF's petition finding that the child has not been abused or neglected. The child who was in DCYF's temporary custody – and may have been allowed to remain with their parents or removed from their home – will be returned to the legal and physical custody of their parents or caretaker.

Initial Determination of Abuse or Neglect and Ultimately Adjudicated as a Dependent Child

The Family Court may temporarily award DCYF legal custody of a child suspected of being abused and neglected in response to the filing of an *ex parte* petition. However, after conducting a full hearing on the petition, the Family Court may adjudicate the child as "dependent"[5] under R.I. Gen. Laws § 14-1-32 and 14-1-34 and place the child in the legal and physical custody of DCYF.

---

[5] R.I. Gen. Laws §14-1-3 defines the term "dependent" as: "… any child who requires the protection and assistance of the court when his or her physical or mental health or welfare is harmed or threatened with harm due to the inability of the parent or guardian, through no fault of the parent or guardian, to provide the child with a minimum degree of care or proper supervision because of:

Interstate Compact

A child may be adjudicated as abused or neglected, in DCYF's legal custody and placed in another state. The child may be placed in a foster home or a residential setting in another state. R.I. Gen. Laws §§ 40-15-1 through 40-15-10. In addition, prior authorization from the Family Court is required before a child is placed in an out of state placement. (See RIGL 14-1-65).

Resident of the Rhode Island Training School

A child may be in the legal custody of DCYF due to a report of suspicion of abuse or neglect and later be ordered to the Rhode Island Training School upon the filing of a wayward and/or delinquent petition and a subsequent finding by the Family Court that the child has been wayward or delinquent. See R.I. Gen. Laws § 14-1-32 and 14-1-36.

It is not clear from Plaintiffs' proposed class definition if they intended to include some or all of these children. Although these different groups of children may fall within the proposed class – they certainly do not all fall within DCYF's foster care system – which is the stated purpose of Plaintiffs' lawsuit.

**C. Numerosity**

Rule 23(a) requires Plaintiffs to demonstrate that the proposed class is so numerous that joinder of all members is impracticable. It is difficult to specifically comment on the issue of numerosity as the precise definition of Plaintiffs' proposed class is unclear.

---

(i) The death or illness of a parent; or (ii) The special medical, educational, or social service needs of the child which the parent is unable to provide."

**D. *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280 (10th Cir. 1999).**

Before addressing the commonality requirement of Rule 23(a) as they apply to the facts of this case, Defendants submit that a review of the Tenth Circuit's decision in *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280 (10th Cir. 1999) is beneficial as it provides an analysis of many similar issues.

In *J.B.*, the sixteen named plaintiffs were mentally or developmentally disabled children who were in the state of New Mexico's legal custody. 186 F.3d 1280, 1282. The Plaintiffs brought suit alleging that the State failed to provide protections and therapeutic services required by the United States Constitution and federal statutes. *Id*. Specifically, Plaintiffs claimed that the State Defendants "violated the rights of each of these siblings under the ADA and Rehabilitation Act because they placed them in overly restrictive settings and failed to provide them with appropriate educational programs. They further claim that defendants violated these children's Fourteenth Amendment right to family integrity by placing them in separate locations. They allege an additional violation to Y.A., D.A., E.A., and F.A.'s rights for failure to facilitate a permanent placement." *Id*. at 1284. The plaintiffs sought declaratory and injunctive relief. *Id*. at 1282. In essence, the Plaintiffs, through their next friends, sought to reform New Mexico's "system for evaluating and treating children with mental and developmental disabilities in the State's custody." *Id*. at 1283. The 10th Circuit acknowledged that "[t]he stories of the named plaintiffs reveal a child welfare system having terrible difficulties providing the children with the kind of care and treatment they deserve." *Id*.

The Plaintiffs requested the Court to certify a class comprised of "[a]ll children who are now or in the future will be (a) in or at risk of State custody and (b) determined

by defendants and/or their agents to have any form of mental and/or developmental disability for which they require some kind of therapeutic services or support." ***Id***. at 1282. Ultimately the District Court denied certifying a class and abstained from hearing the case pursuant to the *Younger* Doctrine. ***Id***. at 1283.

In addressing the motion to certify a class, the Tenth Circuit acknowledged a brief history for each plaintiff, citing their disability, how they came into the State's custody and other relevant facts. ***Id***. at 1284-1285. Thereafter, the Tenth Circuit reviewed the District Court's class certification analysis.

The United States District Court for the District of New Mexico applied Rule 23's requirements to the facts presented and denied Plaintiffs' Motion for Class Certification. The District Court found that Plaintiffs failed to satisfy the commonality and typicality requirements. The Tenth Circuit affirmed the District Court's analysis and denial of the motion to certify a class.

In reviewing the District Court's finding that the Plaintiffs failed to satisfy the commonality requirement, the Tenth Circuit acknowledged the standard for reviewing whether commonality has been satisfied. It explained that:

> "commonality 'requires only a single issue common to the class.' " *K.L. v. Valdez*, 167 F.R.D. 688, 690 (D.N.M.1996) (citing Newberg & Conte, ***supra***, at § 3.12); ***see also*** *In re American Med. Sys., Inc.*, 75 F.3d 1069, 1080 (6th Cir.1996); *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir.1994). Thus, "[t]he commonality requirement is met if plaintiffs' grievances share a common question of law or of fact." ***Marisol A. v. Giuliani***, 126 F.3d 372, 376 (2d Cir.1997); ***see also*** Newberg & Conte, ***supra***, at § 3.10. Further, "[t]hat the claims of individual class members may differ factually should not preclude certification under Rule 23(b)(2) of a claim seeking the application of a common policy." *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir.1988); ***see also*** *Milonas v. Williams*, 691 F.2d 931, 939 (10th Cir.1982). Footnote omitted.

***Id***. at 1288. In establishing commonality, Plaintiffs must demonstrate that there must be

one statutory or constitutional claim common to all named Plaintiffs and putative class members. ***Id***. at 1288 fn.4.

The Tenth Circuit held that "[t]he diverse situations of the named plaintiffs show there is no question of fact common to the class." ***Id***. Specifically, the ***J.B***. Court explained:

> Thus, the ways in which these children come into state custody as well as their particular placements once in custody differ drastically. For example, the state took J.B., R.E., C.E., J.E., and E.E. into custody because of parental abuse or neglect. In contrast, some children in the proposed class entered state custody after conviction of a criminal offense. R.W., a named plaintiff before the district court but who did not appeal from the denial of class certification, illustrates this; he entered state custody as a convicted sex offender. The complaint does not even note why Y.A., D.A., E.A., F.A., V.C., C.C., and J.S. became wards of New Mexico. Similarly, some children have resided primarily in residential treatment centers and boys' schools, while others have stayed with foster families and parents during the course of state custody. Many have moved frequently among the various living arrangements and programs in the state of New Mexico.
>
> Hence, as these examples and the factual background provided above demonstrate, the circumstances of these children vary greatly. Other than all being disabled in some way and having had some sort of contact with New Mexico's child welfare system, no common factual link joins these plaintiffs. We cannot say that the district court abused its discretion in finding no factual commonality in the proposed class.

***Id***. at 1288-1289.

The Tenth Circuit affirmed the District Court's determination that Plaintiffs failed to demonstrate the existence of a common question of law. The ***J.B***. Circuit Court explained that:

> The [district] court concluded that "there is no one statutory or constitutional claim common to all named Plaintiffs and all putative class members." ***K.L.,*** 167 F.R.D. at 691. Plaintiffs respond that the common claim is "that systemic failures in the defendants' child welfare delivery system deny all members of the class access to legally-mandated services which plaintiffs need because of their disabilities." Appellants' Br. at 25. We refuse to read an allegation of systematic failures as a moniker for

> meeting the class action requirements. Rule 23(a) requires a common question of law or fact. For a common question of law to exist, the putative class must share a discrete legal question of some kind. For example, in ***Wilder v. Bernstein***, a class action child welfare case on which plaintiffs rely, the plaintiffs, black Protestant children, challenged New York's law for providing child welfare services as unconstitutionally discriminatory. ***See*** 499 F.Supp. 980, 982 (S.D.N.Y.1980). All class members claimed the system denied them placements because of their race and religion. ***See id.*** Here, rather than adequately advancing a discrete question of law, plaintiffs merely attempt to broadly conflate a variety of claims to establish commonality via an allegation of "systematic failures." We refuse to hold, as a matter of law, that ***any*** allegation of a systematic violation of various laws automatically meets Rule 23(a)(2). The district court retains discretion to determine commonality because it is "in the best position to determine the facts of the case, to appreciate the consequences of alternative methods of resolving the issues of the case and ... to select the most efficient method for their resolution." ***Boughton***, 65 F.3d at 825. Given the complex facts and legal issues involved in this case, we cannot say the district court abused its discretion when it refused to characterize plaintiffs' claims as a systematic violation.

***Id***. at 1289-1290. The Tenth Circuit acknowledged that its Rule 23 analysis was (?)different from that of the Third Circuit in a similar case. *See* *Baby Neal v. Casey*, 43 F.3d 48, 60-62 (3d Cir.1994). ***Id***.

In support of their claim of commonality, the ***J.B***. Plaintiffs also argued that "at the very least, all putative class members suffer, or will suffer, violations of the Medicaid Act, the ADA, and the Rehabilitation Act." ***Id***. at 1290. The District Court and Tenth Circuit rejected this argument. The ***J.B***. Court held that:

> We have closely reviewed plaintiffs' second amended complaint in an effort to match legal claims with each plaintiff. This proved difficult because the complaint fails to specifically tie the particular allegations with individual children. Instead, it states the factual circumstances of each child and then, in very general terms, alleges violations of the ADA, Rehabilitation Act, Title XIX of the Social Security Act (Medicaid Act), IDEA, and the Fourteenth Amendment. When feasible, and with help from the district court's order of dismissal from which neither party appealed, we have paired the alleged violations under each claim with the recited facts of the individual children in an effort to review the district court's failure to find commonality.

> Our work reveals no common allegation of a Medicaid Act violation for all named plaintiffs. Similarly, only a few of the named plaintiffs asserted claims under the IDEA and the Fourteenth Amendment. As for the ADA and Rehabilitation Act claims, all named plaintiffs appear to have asserted that defendants denied them benefits, services, or adequate care because of their disabilities. Even if this were sufficient to establish a common legal question as to the named plaintiffs, plaintiffs have not shown that it is common to all putative class members under their proposed class definition. Plaintiffs sought to certify a class of *all* children in state custody who "have any form of mental and/or developmental disability for which they require some kind of therapeutic services or support." Appellants' App., Vol. 2, at 226. This broad definition would include not just children whom New Mexico improperly denied assistance, but also children who actually receive all services required under the ADA and Rehabilitation Act. Children receiving appropriate services have no claim under these statutes. Thus, the district court correctly stated that "there is no one statutory or constitutional claim common to all named Plaintiffs and putative class members." ***K.L.***, 167 F.R.D. at 691.

***Id***. at 1289-1290. The Tenth Circuit agreed with the District Court that "given the divergent circumstances, legal claims, and corresponding remedy for each child" the Plaintiff failed to demonstrate a single issue of law or fact common to all class members. Id. at 1290. As the ***J.B***. Plaintiffs failed to meet the commonality requirement of Rule 23(a), the Tenth Circuit found that the District Court properly denied the class certification. ***Id***.

**F. *Foreman v. Heineman*, 240 F.R.D. 456 (D.Neb. 2007)**

Before addressing the commonality and typicality requirements of Rule 23(a) as they apply to the facts of this case, the Defendants submit that a review of the United States District Court for the District of Nebraska's decision in ***Foreman v. Heineman***, 240 F.R.D. 456 (D.Neb. 2007) is also beneficial as it provides an analysis of many similar issues. In ***Foreman***, the Plaintiffs alleged that systemic failures in the state child welfare system resulted in the violation of their constitutional and federal statutory rights. The

***Foreman*** plaintiffs similarly sought to have the court certify a class. The United States District Court for the District of Nebraska Court denied Plaintiffs' motion for class certification finding that the Plaintiffs failed to demonstrate the requisite elements of commonality and typicality.

The ***Foreman*** plaintiffs alleged that the common questions of fact that supported class certification were:

> a. Whether Defendants fail to provide foster children in their custody with safe, stable and appropriate foster care placements, as required by law and reasonable professional standards;
>
> b. Whether Defendants fail to provide foster children in their custody with legally required safety, protection and services necessary to prevent them from deteriorating physically, psychologically, emotionally, or otherwise, while in state custody;
>
> c. Whether Defendants fail to provide appropriate and timely permanency planning and services for children in foster care to assure that they are properly cared for and either safely reunited with their families or freed for adoption and promptly placed in another permanent home, consistent with applicable law and reasonable professional standards; and
>
> d. Whether Defendants fail to provide foster children in their custody with the opportunity to maintain critical family relationships, including through visitation with their siblings.

***Id***. at 502. The Rhode Island Plaintiffs frame their alleged common questions of facts in the same fashion. *See Memorandum in Support of Plaintiffs' Motion for Class Certification and Appointment of Counsel at Pages 16-17.*

The ***Foreman*** Plaintiffs claimed that the common questions of law that supporting class certification were:

> a. Whether Defendants' actions and inactions violate Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution to be safe from harm while in state custody;

b. Whether Defendants' actions and inactions violate Plaintiffs' rights under the Adoption Assistance and Child Welfare Act of 1980, as amended by the Adoption and Safe Families Act of 1997, and relevant federal regulations, to mandated foster care and adoption services and foster care maintenance payments;

c. Whether Defendants' actions and inactions violate Plaintiffs' rights under the Early and Periodic Screening, Diagnosis and Treatment program of the Medicaid Act, and relevant federal regulations;

d. Whether Defendants' actions and inactions violate Plaintiffs' rights to familial association under the First, Ninth and Fourteenth Amendments to the United States Constitution; and

e. Whether Defendants' actions and inactions breach contractual rights enjoyed by Plaintiffs as third-party beneficiaries to Nebraska's State Plan contracts with the federal government pursuant to Titles IV-B and IV-E of the Social Security Act.

*Id*. at 503. The Rhode Island Plaintiffs frame their alleged common questions of facts in the same fashion. *See Memorandum in Support of Plaintiffs' Motion for Class Certification and Appointment of Counsel at Page 17.*

The *Foreman* Court explained that Rule 23(a)'s commonality requirement may be satisfied "'where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated.'" *Foreman*, 240 F.R.D. at 503 (citing *Paxton v. Union National Bank*, 688 F.2d 552, 561 (8th Cir.1982)). It explained that in cases "where the plaintiffs are challenging institutional conditions, policies and practices, and not their application to each individual member of the class, the fact that each member of the class may be affected differently by the policies does not necessarily preclude a finding of commonality." *Id*. Citations omitted.

The *Foreman* Court acknowledged the divergence among the federal courts on the issue of whether classes seeking reform of state or local child welfare systems meet

the commonality requirement and as such conducted an extensive review and analysis of several cases addressing the issue. ***Id***. at 503-504. The ***Foreman*** Court recognized the Third Circuit's certification of a class action in ***Baby Neal for and by Kantare v. Casey***, 43 F.3d 48 (3rd Cir. 1994), a case where the court certified a class alleging systemic deficiencies in the Pennsylvania child welfare system. ***Id***. at 504. The ***Foreman*** Court recognized the Tenth Circuit's decision in ***J.B. ex rel. Hart v. Valdez***, 186 F.3d 1280 (10th Cir. 1999), as described previously in this memorandum, the Court denied plaintiffs motion to certify a class alleging systemic deficiencies in the New Mexico child welfare system as the Rule 23(a) commonality requirement was not satisfied. The ***Foreman*** Court also recognized ***Marisol A. v. Guiliani***, 126 F.3d 372 (2nd Cir. 1997), a case where the Second Circuit "affirmed certification of a class similar to that requested in this action, but it did so with noted reservation and issued specific instructions to the trial court." ***Id***. at 505.

After this thorough review, the ***Foreman*** Court rejected ***Baby Neal*** Court's reasoning that "because injunctive relief is requested, 'the factual differences [among the class members] are largely irrelevant.'" ***Id***. at 506 (*citing* ***Baby Neal***, 43 F.3d at 61).

The ***Foreman*** Court acknowledged that the requirements of certifying a class under Rule 23(b)(2) were less stringent than its counterpart 23(b)(3) since under the former plaintiffs did not have the burden to show that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." ***Id***. at 506. However, even for a class to be certified under Rule 23(b)(2), plaintiffs must demonstrate that a "sufficient cohesiveness" exists among proposed class members. ***Id***. "'At base, the (b)(2) class is distinguished from the (b)(3) class by class

cohesiveness.... Injuries remedied through (b)(2) actions are really group, as opposed to individual injuries." [*In re: St. Jude Medical Center*, 425 F.3d 1116, 1121-22 (8th Cir. 2005)(reversing certification of a 23(b)(2) medical monitoring class where the need for monitoring and treatment depended on individual circumstances and medical histories)". *Id*.

In ruling that the plaintiffs failed to satisfy their burden of proof and demonstrate "commonality" as required by Rule 23(a)(2) as the cohesiveness test of Rule 23(b)(2), the *Foreman* Court explained:

> The plaintiffs have challenged a whole host of actions and the various affects of those actions on a whole host of wards. They challenge all, or nearly all, aspects of Nebraska's child welfare system. There is no benchmark for determining when the State's policies-considered as a whole-or its allocation of funds-considered as a whole-have reached the " reasonable professional judgment" standard for the benefit all members of the class, as opposed to the individually named plaintiffs.
>
> The lack of commonality within the putative class is evidenced by the lack of any suggested and specific request for injunctive relief. Although the plaintiffs argue that discovery is needed before they can determine what specific relief to request, not even a minimal effort has been made to identify what measures the state should implement to address their needs or the needs of the class. The likely reason is the substantial difficulty (and perhaps impossibility) of identifying any specific form of relief that will benefit all members of the highly diverse putative class. Should the court enter an order granting the relief requested in the plaintiffs' amended complaint-that is, an order to obey the law-the injunction is unenforceable. Language in an injunction that essentially requires a party to obey the law is overbroad and unenforceable because those against whom the injunction is issued must " receive fair and precisely drawn notice of what the injunction actually prohibits." *Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.*, 824 F.2d 665, 669 (8th Cir.1987).
>
> As is evidenced by the histories and allegations of the named plaintiffs, they have entered Nebraska's child welfare system for vastly different reasons with highly specific and challenging needs. They all have a court-approved permanency plan; but they challenge whether those plans are appropriate. They are each in " placements;" but they challenge the quality, suitability, and adequacy of supervision in those placements. They

each have a caseworker and have been contacted by the caseworker; they challenge those contacts as insufficient to determine their needs and safety, or support sound placement recommendations and decisions.

What the named plaintiffs ultimately seek is a court order requiring the investment of funds and the implementation of State policies that will lead to the exercise of " reasonable professional judgment" in developing permanency plans, making placements, supervising children within its custody, and finding them homes. See filing 64 (Amended Complaint), ¶¶ 38(a), 38(c), 57, 68, 76, 81, 89, 98, 106, 107, 108, 130, 133, 137, 147, 154, 155, 174, 178, 183, 190, 192. Were the court to enter an injunction requiring the defendants to implement policies directed at exercising " reasonable professional judgment" on behalf of each child, any later attempt of any child seeking to enforce the judgment, or to find the State in contempt, would require this court to review that child's unique circumstances. In such circumstances, there is nothing to be gained by permitting class certification because, due to lack of cohesiveness within the class, " significant individual issues [will] arise consistently." ***In re St. Jude Medical,*** 425 F.3d at 1122.

The individualized nature of the harm experienced by children in Nebraska's child welfare system cannot be hidden behind the term " systemic deficiencies." ***J.B.,*** 186 F.3d at 1289. Each child in HHS custody is entitled to the State's reasonable professional judgment in placement planning and allocating State monetary and human resources to meet that goal, and therefore, on an abstract level, the class is cohesively bound by common issues of law and fact. However, an injunctive and declaratory remedy cannot globally ensure that reasonable professional judgment is followed on behalf of not only the named plaintiffs, but unnamed and future members of the class with differing individual needs and concerns. Indeed, assuming this court granted injunctive relief as requested by the named plaintiffs, it is certainly foreseeable that the State may comply with the terms of that injunction, by spending more or re-allocating resources to meet the needs of the named plaintiffs and/or other members of the class, and yet still fail to provide the level of supervision and placement planning owed to a specific individual child.

The circumstances of each child in HHS custody remain a paramount consideration. The members of the putative class are highly diverse in terms of needs to be met and services to be provided by HHS. The plaintiffs' allegation of " systemic" violations does not create a common issue of fact within this purported class. When the resolution of a " common" legal issue is dependent on factual determinations that will be different for each putative class plaintiff, a common issue of law does not exist for the purposes of Rule 23(a)(2). ***Elizabeth M.***, 458 F.3d 779, 786-87 (8th Cir.2006); ***Reinholdson***, 2002 WL 31026580 at *8. See also ***Laurie***

> *Q. v. Contra Costa County*, 304 F.Supp.2d 1185, 1198-99 (N.D.Cal.2004)(noting continued certification was doubtful where the court warned at the outset that decertification was likely " if the adequacy of maintenance payments breaks down into particularized individual inquiries," and the plaintiffs were now arguing the plaintiffs' needs must be assessed individually).

***Id***. at 507-508. The ***Foreman*** Court could have concluded its analysis and denied class certification as the failure to meet even one element of Rule 23(a) is fatal but; it also analyzed wither the typicality and representation elements had been satisfied.

The ***Foreman*** Court found that plaintiffs also failed to meet the typicality requirement of Rule 23 as they did not demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." In so ruling the District Court explained that:

> The plaintiffs have the burden of proving the other members of the proposed class possess claims similar to theirs. ***Alpern,*** 84 F.3d at 1540. As individuals, the named plaintiffs are not similar to one another. Even acting collectively for policy change, the named plaintiffs have failed to prove they " have the same or similar grievances" of other members of the putative class such that their claims for relief are typical of the class as a whole. See e.g. ***Elizabeth M.,*** 458 F.3d 779, 786-87 (8th Cir.2006)(holding Rule 23(a) requirements were not met where the complaint alleged defendants violated class members' constitutional and statutory rights by failing " to provide appropriate essential services necessary for the treatment, habilitation, rehabilitation, and amelioration of the Plaintiffs' mental illnesses and/or developmental disabilities," and " pleaded a laundry list of desired policy changes, alleged that their injuries are caused by the absence of these policies, and asserted that Rule 23's requirements are satisfied because all class members live in facilities where the desired policies are absent." ).

***Id***. at 509.

Finally, the ***Foreman*** Court held that plaintiffs failed to demonstrate that "the representative parties will fairly and adequately protect the interests of the class." Rule

23(a)(4). The Court determined that: the self-proclaimed "next friends" did not have standing in that capacity; two of the named plaintiffs had reached the age of adulthood under Nebraska law and their claims were moot; and the remaining minor plaintiffs had "conflicts of interests" that precluded the Court from finding that they could adequately represent the class. ***Id*** at 510-514.

The Rhode Island State Defendants have conducted such an extensive review of the ***Foreman*** decision because the Amended Complaint, the alleged deficiencies in the Nebraska child welfare system, the alleged constitutional and statutory violations, and the requested relief are strikingly similar to those before this Court in Rhode Island. The Defendants submit that the ***Foreman*** Court's class certification analysis (as well as its ***Younger*** abstention and Rule 12(b)(6) analyses) is directly on point to this case. The Defendants further submit that applying this legal analysis to the present facts compels a finding that plaintiffs have failed to satisfy Rule 23's requirements and their motion to certify a class should be denied and this Court should not assume the role and duties of the Rhode Island Family Court.

**H. Plaintiffs' Case Citations**

The plaintiffs on pages 10-3 of their *Memorandum in Support of Plaintiffs' Motion for Class Certification and Appointment of Counsel* cite to numerous cases where classes were certified; however "the persuasive value of these opinions is very limited." *Foreman*, 240 F.R.D. at 503 fn.24. "In *Jeanine B. by Blondis v. Thompson*, 877 F.Supp. 1268, 1287 (E.D.Wis.1995), the State defendants requested the formation of subclasses but did not oppose formation of the class itself." *Id*. "The following cases were class action lawsuits, but the opinions do not discuss whether a class should be certified under

Rule 23: *Lynch v. Dukakis,* 719 F.2d 504, 506 n. 1 (1st Cir.1983); *LaShawn A. v. Dixon,* 762 F.Supp. 959, 960 (D.D.C.1991); *B.H. v. Johnson,* 715 F.Supp. 1387, 1389 (N.D.Ill.1989); *L.J. By and Through Darr v. Massinga,* 699 F.Supp. 508, 509 (D.Md.1988); *G.L. By and Through Shull v. Zumwalt,* 564 F.Supp. 1030 (D.C.Mo.1983). *Wilder v. Bernstein,* 499 F.Supp. 980, 992-993 (D.C.N.Y.1980), certified a class of children who were allegedly denied placement because of their race and religion, but *Wilder* predated *General Tel. Co. v. Falcon,* 457 U.S. 147, 155, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), and the continuing value of its analysis is suspect." *Id*. *Rosey D. v. Romney*, 410 F.Supp.2d 18 (D.Mass.2006) was similarly a class action lawsuit but the decision is similarly devoid of any discussion or legal reasoning regarding rule 23 or its requirements. *Eric L. v. Bird*, 1993 WL 764420 (D.N.H.1993) is a conclusory order stating that the requirements of Rule 23 have been satisfied and the acknowledgment of the classes. *Colon v. Wagner*, 462 F.Supp.2d 162 (D.Mass.2006) certified a class of individuals who were issued standardized termination notices. *Charlie & Nadine H. v. Whitman*, No. 99-3678 is an unpublished opinion from New Jersey. In *David C. v. Leavitt*, 1993 WL 764518 (D.Utah 1993) Defendants did not object to the certification of first class and the Court certified the second class without specific analysis of the facts.

**I. Commonality**

Defendants submit that plaintiffs have neither satisfied the commonality requirement of Rule 23(a)(2) nor have demonstrated that there was a "sufficient cohesiveness" under Rule 23(b)(2) to support the certification of a class.

Plaintiffs contend that they have satisfied Rule 23(a)(2)'s "commonality requirement" on the theory that "systemic deficiencies in Defendants' child welfare

system affect all children who have the misfortune to enter their care. Defendants' systemic failure to fulfill their constitutional and statutory obligations to the children in their foster care custody gives rise to common questions of law and fact within the meaning of Rule 23(a)(2)." *Memorandum in Support of Plaintiffs' Motion for Class Certification and Appointment of Counsel* at page 15. On Page 16-17 Plaintiffs set forth questions of fact that they contend are common to all members of the proposed class and at Page 17 they set forth questions of law that they claim are common to all members of the proposed class. In the present case, as in ***Foreman***, these "common questions of fact encompass various specific types of alleged misconduct by the defendants, not all of which have been experienced by each named plaintiff, or any of them." 240 F.R.D. at 502. Similarly, no common question of law exists among the plaintiffs as "each child must be evaluated individually and provided with services in accordance with the evaluation." ***Id***. at 503.

Defendants disagree and beseech this Court to apply the ***Foreman*** Court and ***J.B.*** Court's analysis and legally sound reasoning to the present case. These plaintiff should not be permitted to avoid the requirements of Rule 23(a) and 23(b) with a blanket assertion of "systemic deficiencies". J.B., 186 F.3d at 1289("We refuse to read an allegation of systemic failures as a moniker for meeting the class requirements. Rule 23(a) requires a common question of law or fact. For a common question of law to exist, the putative class must share a discrete legal question of some kind." Plaintiffs in this case cannot demonstrate that common issues of law and fact exist among them. The facts of each plaintiff's case, their alleged injuries and the issues that may present to them are specific to their individualized circumstance. Were this not true Rhode Island would not

need a Family Court that hears each child protective petition in individual hearings. Further, it would not require the individualized appointment of *Guradian ad litems* or *Court Appointed Special Advocate* (CASA) attorneys for each plaintiff. Perhaps most important, Rhode Island would not empower its Child Advocate to review each and every record of each and every child in DCYF care and it would not authorize her to intervene in each case if there were a legally adequate way to do so with the en masse approach that plaintiffs appear to be seeking before this Court.

Moreover, an en masse approach to review the Rhode Island's child welfare system would not address the unique facts and circumstances addressed in the plaintiffs' complaint. The claims of the ten named plaintiffs present very specific and complex set of circumstances and, as such, the outcomes of each case are factually dependent upon predicates of each case. Some of the present plaintiffs allege that that they were put in a temporary emergency placement for an extensive period (Caesar, Amended Complaint ¶ 39), three Plaintiffs allege that they were not placed in the least restrictive environment (Sam and Tony ¶¶ 29, and David T., Amended Complaint ¶¶ 61-62), and one Plaintiff claims that he did not have sufficient caseworker visits (David T., Amended Complaint ¶ 65), failing to provide emotional and corresponding medical support when the adoptive family withdrew (David T., Amended Complaint ¶ 56) and improperly separated siblings (Sam and Tony, Amended Complaint ¶ 29, Danny and Michael, Amended Complaint ¶ 86). It is unclear whether any of the plaintiffs allege inadequate payments to foster parents.

What was acknowledged by the ***Foreman*** Court stands true for the Rhode Island plaintiffs:

> [a]s is evidenced by the histories and allegations of the named plaintiffs, they have entered … [the] child welfare system for vastly different reasons with highly specific and challenging needs. They all have a court-approved permanency plan; but they challenge whether those plans are appropriate. They are each in "placements;" but they challenge the quality, suitability, and adequacy of supervision in those placements. They each have a caseworker and have been contacted by the caseworker; they challenge those contacts as insufficient to determine their needs and safety, or support sound placement recommendations and decisions.

240 F.R.D. at 507. There is no general common question of fact and law that are present in this case. Each plaintiff brings with them their own specific complaints and individualized allegations of harm and cannot be "hidden behind the term 'systemic deficiencies'." ***Foreman***, 240 F.R.D. at 508 (citing ***J.B.***, 186 F.3d at 1289)). "The plaintiffs' allegations of 'systemic' violations does not create a common issue of fact within this purported class. When the resolution of a 'common' legal issue is dependent on factual determinations that will be different for each putative class plaintiff, a common issue of law does not exist for the purpose of Rule 23(a)(2)." *Foreman*, 240 F.R.D. at 508.

The Defendants submit that plaintiffs have failed to satisfy the commonality requirement of Rue 23(a)(2) or the cohesive nature required of a class under Rule 23(b)(2). Indeed, the uniqueness of each case, as well as the broad statutory authority of Rhode Island's Family Court demonstrates that "commonality" is not only lacking in the thousands of cases it individually reviews, but to assume it would be to deny the unfortunate children who come before the Family Court the individual review to which they are entitled. As the failure to prove one element of Rule 23(a) is fatal to the certification of a class, Defendants pray that the prays motion is denied.

**J. Typicality**

The "typicality" requirement of Rule 23(a)(3) "is designed to insure that the claims of purported class representative are sufficiently similar to the claims of the class members, as a group, that prosecution of the class representative's case will benefit the entire class." ***Van West v. Midland National Life Insurance Company***, 199 F.R.D. 448, 452 (D.R.I. 2001). A class representative's claim will be deemed typical if "it arises out of the same course of conduct and is based on the same legal theory as the claims of the class as a whole." ***Van West***, 199 F.R.D. at 453. If the class representative must prove something different for other class members than what he would prove for his own claim, however, his claim will not be deemed typical. ***Id***. Plaintiffs cannot meet the typicality requirement of Rule 23(a)(3).

The plaintiffs' proposed class, "all children who are or will be in the legal custody of the Rhode Island Department of Children, Youth and Families due to a report or suspicion of abuse or neglect" is, to say the least diverse. The proposed class includes children ranging in age from newborn to eighteen (18) – and based on the ***In re: Kenneth K.*** case pending before the Rhode Island Supreme Court – possibly twenty-one (21), who entered DCYF's legal custody due to a report or suspicion of abuse or neglect. These children could be in DCYF's legal custody from forty-eight (48) hours to years. The children could be in DCYF's legal custody but residing in their home with their parents or caretaker pursuant to a Family Court order, in a foster home, in a residential facility, placed our of state in a foster home, placed out of state in a residential facility, had been later or simultaneously adjudicated as wayward and delinquent and residing at the Rhode Island Training School, or had been later adjudicated a "dependent child" and residing in

a foster home or with family. Some of these proposed class members achieve the goal of reunification with their parents, or alternatively require on-going protection and out of home placement with family visitation, specialized residential facility, or adoption, just to name a few options.

In summary:

> [t]he plaintiffs have the burden of proving the other members of the proposed class possess claims similar to theirs. ***Alpern***, 84 F.3d at 1540. As individuals, the named plaintiffs are not similar to one another. Even acting collectively for policy change, the named plaintiffs have failed to prove they " have the same or similar grievances" of other members of the putative class such that their claims for relief are typical of the class as a whole. See e.g. ***Elizabeth M.***, 458 F.3d 779, 786-87 (8th Cir.2006)(holding Rule 23(a) requirements were not met where the complaint alleged defendants violated class members' constitutional and statutory rights by failing " to provide appropriate essential services necessary for the treatment, habilitation, rehabilitation, and amelioration of the Plaintiffs' mental illnesses and/or developmental disabilities," and " pleaded a laundry list of desired policy changes, alleged that their injuries are caused by the absence of these policies, and asserted that Rule 23's requirements are satisfied because all class members live in facilities where the desired policies are absent." ).

***Foreman***, 240 F.R.D. at 509.

The Defendants submit that Plaintiffs have failed to demonstrate the typicality requirement of Rule 23(a)(3) and, therefore, their motion to certify a class must be denied.

**K. Adequacy of Representation**

The Defendants submit that the named minor Plaintiffs and their "next friends" will not adequately represent the proposed class and, as such, have failed to satisfy Rule 23(a)(4).

As the ten named plaintiffs in this case are minors, the lawsuit is being pursued through their "next friends". The Defendants submit that the next friends will not adequately represent the interest of the proposed class. The Defendants discussed the shortfalls of the "next friends" in-depth in their Memorandum of Law in Support of their Motion to Dismiss at pp. 82-87. The "next friends" fail to demonstrate that they made an effort to truly understand and know the named plaintiffs they propose to represent. The "next friends" fail to demonstrate that they are truly dedicated to pursing the best interests of the named plaintiffs or the proposed class.

Additionally, Defendants submit that three of the named Plaintiffs would not adequately be able to represent the proposed class as their claims are moot. See Defendants' Memorandum of Law in Support of Motion to Dismiss at pages 10-11, 78-79.

## III. CONCLUSION

Defendants submit that the Plaintiffs fail to sustain their burden of proof under Rule 23(a) and (b). Plaintiffs fail to establish the commonality, typicality and adequacy requirements of Rule 23(a). Moreover, Plaintiffs fail to demonstrate a sufficiently cohesive class as required by Rule 23(b). Wherefore, Defendants submit that Plaintiff' Motion to Certify a Class an Appoint Counsel must be denied.

Respectfully submitted

DEFENDANTS
By their Attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

/s/ James R. Lee

JAMES R. LEE (4305)
Assistant Attorney General
R.I. Department of the Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400 ext. 2314
Fax: (401) 222-2995
jlee@riag.ri.gov

/s/ Brenda D. Baum

BRENDA D. BAUM (5184)
Assistant Attorney General
R.I. Department of the Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400 ext. 2294
Fax: (401) 222-3016
bbaum@riag.ri.gov

On Behalf of PATRICIA MARTINEZ,
in her Official Capacity as Director of the
Department of Children, Youth and Families

/s/ Kevin Aucoin

KEVIN AUCOIN (3019)
Executive Counsel
R.I. Department of Children, Youth &
Families
101 Friendship Street
Providence, RI 02903
Tel: (401) 528-3579
Fax: (401) 525-3566
Kevin.Aucoin@dcyf.ri.gov

On behalf of JANE HAYWARD,
in her Official Capacity as Secretary of the Executive Office of Health & Human Services,

/s/ Jane Morgan

JANE MORGAN (4024)
Assistant Director of Legal Services
R.I. Department of Elderly Affairs
Benjamin Rush Building
35 Howard Avenue
Cranston, RI 02920
Tel: (401) 462-0524
Fax: (401) 462-0503
jmorgan@dea.state.ri.us

**CERTIFICATION**

I hereby certify that I have electronically mailed the foregoing document on this 1st day of September 2007 to the attorney(s) of record listed below:

**John William Dineen, Esq.**
jwdineen1@yahoo.com

**Jametta O. Alston, Esq.**
jalston@gw.doa.state.ri.us

**Susan Lambiase**
slambiase@childrensrights.org

**Vernon Winters**
vern.winters@weil.com

/s/ Brenda D. Baum

**CERTIFICATION**

I hereby certify that I have mailed, the foregoing document on this 1st day of October 2007 to the attorney(s) of record listed below:

Marcia Robinson Lowry, Esq.
Childrens' Rights
330 7th Avenue
4th Floor
New York, NY 10001

/s/ Brenda D. Baum