**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **SAM and TONY M., *et al.*,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Class Action** |
| **v.** | ) | **Civil Action No. 07-241-L-LDA** |
| | ) | |
| **DONALD L. CARCIERI, in his official capacity as Governor of the State of Rhode Island and Providence Plantations, *et al.*,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFF CHILDREN'S REPLY TO DEFENDANTS' OBJECTION TO PLAINTIFF CHILDREN'S MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

I. INTRODUCTION .......... 3

II. REVIEW OF DEFENDANTS' ARGUMENTS .......... 5

III. PLAINTIFFS SATISFY COMMONALITY AND TYPICALITY REQUIREMENTS .......... 7

A. Defendants' Reliance on One Tenth Circuit and One Nebraska Decision Is Misplaced. .......... 7

1. The Tenth Circuit Decision Is Wholly Distinguishable on Its Facts .......... **7**

2. Plaintiff Children's Case is Distinguishable from the Nebraska District Court Decision .......... 10

a. *Carson P*. Relied on Eighth Circuit Case Law Inapplicable Here .......... 10

b. The Class Definition Here Is Distinguishable from the Proposed Class in *Carson P*. .......... 13

B. Plaintiff Children's Proposed Class Satisfies Both the Commonality and Typicality Requirements of the First Circuit. .......... 13

1. First Circuit Law Authorizes Class Actions When Even A Single Legal or Factual Issue Exists, Particularly When Defendants' Unlawful Conduct Constitutes a Pattern Directed at the Class Members. .......... 14

2. Plaintiff Children Satisfy Commonality and Typicality Under the Weight of National Authority .......... 15

IV. DEFENDANTS MISAPPLY THE APPLICABLE LAW AND MISCONSTRUE PLAINTIFF CHILDREN'S CLASS DEFINITION. .......... 16

1. The Proposed Class Definition in this Case Presents No Ascertainability or Manageability Concerns. .......... 16

2. Plaintiff Children's Class is Precisely Defined to Include the Class of Children for Whom Relief is Sought. .......... 18

V. THE NAMED PLAINTIFFS ADEQUATELY REPRESENT THE INTERESTS OF THE CLASS AND DEFENDANTS' OBJECTIONS TO PLAINTIFF CHILDREN'S CHOICE OF NEXT FRIENDS ARE MERITLESS .......... 21

VI. CONCLUSION .......... 26

## I. INTRODUCTION

The Named Plaintiff Children, who commenced this class action through counsel, the Rhode Island Child Advocate, Jametta Alston, and others, and who seek certification of a class, are living in state legal custody due to allegations of abuse or neglect. These children have experienced severe physical abuse, emotional trauma, and prolonged uncertainty and instability as a result of the chronic systemic failings of the Rhode Island child welfare system – the Department of Children, Youth and Families ("DCYF") operated by Defendants. DCYF's systemic failures have directly harmed the Named Plaintiffs and are at risk of harming the putative class. For example:

- In a system that, in five of the last six years, has been *the very worst in the country in the rate at which abused and neglected children are again abused or neglected* while under the "protection" of the state child welfare system, Named Plaintiff Danny B. was brutalized while living in a foster home under the state's legal supervision;

- In a system with so few foster families – *abused and neglected children in state custody are institutionalized at twice the rate as is the norm in the rest of the country*, 14-year-old Named Plaintiff David T. has been institutionalized for the last nine years out of his 11 years in state child welfare custody;

- In a system where *15 percent of abused and neglected children in state custody are returned home and then re-enter state custody due to new abuse or neglect within the year* due to poor agency decision-making or inadequate services, Named Plaintiffs Sam and Tony M., 12 and 9, respectively, were repeatedly

removed from, then returned home to parents who continued to abuse and maltreat them and, eight years after they first came into state custody, the state still has made them available for adoption;

- In a system with *caseloads too high to ensure adequate screening and supervision of children in foster homes*, Named Plaintiff Caesar S., who is only six years old, has suffered physical and sexual abuse in unlicensed and inappropriate placements and has cycled through at least eight placements in his short life;

- In a system that *fails to timely plan for adoption* and *fails to engage in concurrent planning*, one-year-old Named Plaintiff Deanna H., who has never lived with her parents and whose parents have had their rights severed as to at least six of Deanna's siblings or half-siblings, is still planned by DCYF to be returned to her mother.[1]

- The Named Plaintiff children seek declaratory and injunctive relief for themselves and over 3,000 similarly situated children in state legal custody due to allegations of abuse or neglect, whose lives are being further damaged by a state executive branch agency that is failing to fulfill its legal responsibilities.[2]

Defendants, unfortunately, are not alone, as plaintiff children elsewhere in the First Circuit and throughout the United States have had to bring suit against executive

---

[1] As to Deanna's Named Plaintiff siblings Briana, Alexis and Clare, Plaintiffs agree to withdraw them as Named Plaintiffs, as they have been adopted and are no longer members of the proposed class as defined.

[2] This is not the first time that injunctive and declaratory relief has been sought for children who are or will be in DCYF custody. *See Office of Child Advocate v. Lindgren*, No C.A. 86-0723L (D.R.I. filed Nov. 26, 1986).

branch agencies in order to enforce their constitutional and statutory rights to protection, care and services while in state custody. Plaintiff Children here are requesting this Court to certify a class based on a proposed definition directly analogous to definitions that this and other courts have found to meet requirements of Federal Rule of Civil Procedure 23(b)(2) – and not, as Defendants maintain, akin to definitions that failed in two nonbinding distinguishable cases proffered by Defendants. Defendants, in response to this motion, have used arguments that have been rejected elsewhere, most recently by a Michigan district court earlier this year. *See Dwayne B. v. Granholm*, No. 06-13548, slip op. at 7 (E.D. Mich. Feb. 15, 2007) (in granting class certification of a class of children similar to the one at issue here, the court reviewed and found unpersuasive the Nebraska *Carson P.* decision denying class certification).

## II. <u>REVIEW OF DEFENDANTS' ARGUMENTS</u>

Defendants advance four principal arguments in their Objection to Class Certification ("Ob."): (1) that this Court should disregard First Circuit law regarding class certification, and the weight of nationwide authority granting motions to certify similar classes, in favor of a Nebraska district court case and a distinguishable Tenth Circuit case; (2) that class certification is not appropriate unless every Plaintiff, Child named or otherwise, is in the same situation; (3) that the class definition is ambiguous; and (4) that Plaintiff Children are not represented by "appropriate" Next Friends.

*First*, notwithstanding Defendants' tortured application of class certification requirements to Plaintiff Children's proposed class, and the wealth of First Circuit and other authority supporting certification of classes similar to the proposed class, Defendants argue that this Court should disregard the weight of authority in favor of a Nebraska district court case and a distinguishable Tenth Circuit case. Those cases are not the law of the First Circuit, are not consistent with the law of the First Circuit, and

are at odds with the facts of this case and the great weight of authority in cases that involve the kinds of systemic issues, harms, and class definition at issue here.

*Second*, Defendants ignore the fact that the only relief Plaintiff Children request is injunctive and declaratory relief applied to the *executive branch Defendants* to address their systemic violations of Plaintiff Children's rights, and that this form of relief does not, as Defendants assert, require a consideration of "specific complaints and individualized allegations of harm[,]" such that commonality and typicality should be defeated.

*Third*, Defendants argue that the purported ambiguity of Plaintiff Children's proposed class renders the class unascertainable and unmanageable. To support this argument, Defendants take the untenable position that that they do not know when a child is in DCYF's custody due to an allegation of abuse or neglect. But whether a child is in DCYF's custody due to an allegation of abuse or neglect is determined by statutory criteria that Defendants know well. In fact, they use this knowledge to cite numerous examples of instances in which DCYF has custody of a child due to a report or suspicion of abuse or neglect, in an attempt to establish ambiguity between the plain language of the proposed class definition and what Defendants refer to as the "stated purpose" of Plaintiff Children's Motion.

*Fourth*, Defendants, with virtually no explanation, contend that the Next Friends will not adequately represent the putative class. This assertion ignores the weight of authority regarding the sufficiency of next friends, and disregards the reality that the Named Plaintiff Children have few close relationships precisely by virtue of their membership in the putative class of children in Defendants' legal custody.

## III. PLAINTIFFS SATISFY COMMONALITY AND TYPICALITY REQUIREMENTS

### A. Defendants' Reliance on One Tenth Circuit and One Nebraska Decision Is Misplaced

In their objection to class certification for the proposed class, Defendants rely almost exclusively on *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280 (10th Cir. 1999) and *Carson P. ex rel. Foreman v. Heineman*, 240 F.R.D. 456 (D. Neb. 2007) (referred to as "*Foreman*" in Defendants' Objection). This reliance is misplaced, as discussed below.

1. The Tenth Circuit Decision Is Wholly Distinguishable on Its Facts

There are crucial factual differences between *J.B.* and this case that support this Court's wholesale rejection of its application to the case at bar. The *J.B.* plaintiffs brought suit against four separate and discrete state agencies in New Mexico seeking structural reform of the ways in which each of those distinct systems – the Department of Health, the Department of Human Services, the Children Youth and Families Department, and the Board of Education – evaluated and treated children with mental and developmental disabilities in the state's various custodial arrangements. The Tenth Circuit held it was not an abuse of discretion for the district court to have found a lack of commonality. Here, Plaintiff Children are only suing one unitary executive agency of the state, DCYF (the Executive Office of Health and Human Services is merely the umbrella agency over DCYF), for relief from its failure to fulfill its constitutional and federal statutory mandates with respect to them and others like them. And the members of the proposed class only come into DCYF's custody through a custody petition filed by DCYF itself, and only based on a DCYF report or suspicion of abuse or neglect. Thus, the instant action does not seek structural reform of several different agencies all

separately and distinctly responsible in different ways for evaluating and treating the child class members; instead, this action seeks only to make one agency comply with its existing federal mandates.

The distinction between *J.B.* and instant case is even more significant with respect to Defendants' argument that Plaintiff Children's allegations of "systemic deficiencies" are insufficient to support a finding of commonality. *See* Ob. at 32. Even the *J.B.* court recognized there are shades of grey with respect to systemic failures, *J.B.*, 186 F.3d at 1289, and stated a rather unextraordinary principle of law – that a claim of "systemic failures" does not magically create a class, particularly when the action involves a variety of claims against numerous defendant agencies, under various distinct statutes, and with varying procedures and obligations. Seeking structural reform of a number of state agencies, the *J.B.* plaintiffs had in fact alleged violations of the Americans with Disabilities Act, the Rehabilitation Act, the Medicaid Act, the Individuals with Disabilities Education Assistance Act, and the Fourteenth Amendment. With four different federal statutes and the Constitution governing the plaintiffs' claims against various state agencies, the Court of Appeals not surprisingly deferred to the district court. *See J.B.*, 186 F.3d at 1289 (finding no abuse of discretion as the district court is "in the best position to determine the facts of the case, to appreciate the consequences of alternative methods of resolving the issues of the case [and] to select the most efficient method for their resolution").

In contrast to *J.B.*, Plaintiff Children here only allege claims against *one* state agency for violations of their rights arising under the U.S. Constitution and one

amended federal statute. Thus, the "systemic violations" described in *J.B.* were far broader than those alleged against Defendants in this action.

Indeed, the Tenth Circuit's decision in *J.B.* is an anomaly in class action jurisprudence. As Defendants themselves noted, the *J.B.* decision departs from the Rule 23(a) analysis set forth in the Third Circuit's *Baby Neal* decision. *See* Ob. at 22. And as the *J.B.* dissent notes, the two-to-one majority made this departure without any explanation.[3] *See J.B.*, 186 F.3d at 1300 ("I find troubling the majority's unexplained rejection of two cases from our sister circuits that have dealt with this precise issue") (J. Briscoe, dissenting). Most district courts have rejected the *J.B.* court's unique analysis. For example, the Northern District Court of Georgia was presented with this very same *J.B.* argument that Defendants make here, and soundly rejected the argument. *See Kenny A. v. Perdue*, 218 F.R.D. 277, 300 (N.D. Ga. 2003) ("State Defendants argue that [*J.B.*] supports their position [that] the commonality requirement is not met. The Court finds all of these arguments without merit.") (internal citation omitted). The *Kenny A.* court, in applying *Baby Neal*, concluded:

> The factual distinctions between foster children alleged by State Defendants are irrelevant to class certification. Differences in how each child came into state custody are irrelevant because this case deals only with the "common conditions and practices under a unitary regime" that all foster children face once they are already in state custody. *Baby Neal*, 43 F.3d at 60. Differences in individual placements of foster children are also irrelevant because plaintiffs allege a unified course of conduct at the

[3] In a forceful dissent, Judge Briscoe argued that the proposed class met the commonality requirements because "[p]laintiffs do not seek redress for any individual state decisionmaker's determination that services need not be provided to a specific child . . . . Plaintiffs' complaint instead is systemic: They contend the entire gamut of support programs and services for children in state custody is deficient." *J.B.*, 186 F.3d at 1297 (J. Briscoe, dissenting). Even more narrowly, Plaintiff Children here seek systemic reform of Rhode Island's DCYF, *not* redress for individual claims by Named Plaintiffs or other class members.

> system level toward children in all placements. Similarly, it is irrelevant that each foster child does not receive the same services, care, and treatment because plaintiffs challenge systemic deficiencies in the organization and implementation of support programs and services for all foster children in State Defendants' custody. Finally, as in *Baby Neal*, plaintiffs and all putative class members claim entitlement to the same legally mandated rights and services under state and federal law, and all seek the same system-wide declaratory and injunctive relief requiring State Defendants to address and remedy their violations of foster children's common legal rights and to provide legally mandated care, protection, services, and treatment. This is plainly sufficient to satisfy the commonality requirement.

*Kenny A.*, 218 F.R.D. at 300. *See also Lynch v. Dukakis*, *719 F.2d 504*, *506 n.1 (1st Cir. 1983); Marisol A. v. Guilliani*, 126 F.3d 372 (2d Cir. 1997); *Dwayne B.*, Slip op. at 6-7. Thus, *J.B.* is unconvincing and should not be followed here.

2. Plaintiff Children's Case is Distinguishable from the Nebraska District Court Decision

a. *Carson P.* Relied on Eighth Circuit Case Law Inapplicable Here

Defendants spend eight full pages telling this Court why it should disregard First Circuit case law and instead rely on a Nebraska District Court decision, *Carson P*., 240 F.R.D. 456. However, there are enormous differences between *Carson P*. and the case at bar.

Most importantly, the *Carson P*. court relied on a factually unusual Eighth Circuit case, *Elizabeth M. v. Montenez,* 458 F.3d 779 (8th Cir. 2006), in which plaintiffs sought certification of a class that was ill-defined, using a confusing set of legal theories. In *Elizabeth M.*, the Eighth Circuit rejected class certification when the named plaintiffs were two current and 14 former patients of three residential mental health facilities and where the relief sought was to address future conditions within the facilities. *Id.* at 784-85. The Court found that the 14 former residents were not likely to suffer future

injury except as future residents, but not as former residents. *Id.* The presence of 14 former residents in a proposed class for future injunctive relief posed "a substantial risk to the 'efficacy and economy of litigation which is a principal purpose' behind the class action device." *Elizabeth M.*, 458 F.3d at 785. Additionally, the former residents claimed noncustodial constitutional rights to mental health treatment after their discharge, which, since it has never been recognized, the court termed "highly dubious" and having "little in common with the constitutional claims of present residents." *Id*. Plaintiff Children here allege a substantive due process claim to reasonably safe custodial conditions when in state custody, and the Named Plaintiff Children are all currently in state custody.[4]

The *Elizabeth M.* court also addressed the issue of whether a class could be certified with the two remaining named plaintiffs representing a class of present and future residents of the three facilities and alleging distinct "failure to protect" and "inadequate treatment" claims. *Id.* at 786-88. Since "the complaint and class action motion papers did not identify one or more policies or practices common to all three facilities that caused the[] alleged violations," *id.* at 787, and "[i]nstead, plaintiffs pleaded a laundry list of desired policy changes, alleged that their injuries are caused by the absence of these policies, and asserted that Rule 23's requirements are satisfied because all class members live in facilities where the desired policies are absent," *id*., the

[4] *Elizabeth M*. was also highly unusual in that one of the nonresidential named plaintiffs, Caroline C., had been a named plaintiff in a previous class action with similar allegations. Caroline C.'s prior class action case resulted in a consent decree that later expired by its own terms. Caroline C. then tried to reopen the case and was unsuccessful. The *Elizabeth M*. lawsuit, the proverbial try for a "second bite of the apple," followed. The court rejected it. *See Elizabeth M*., 458 F.3d at 783 (citing *Caroline C. v. Johnson*, 174 F.R.D. 452 (D. Neb. 1996)).

court found lack of commonality. In contrast, Plaintiffs here have alleged in detail *both* the challenged policies and practices and the group harms endured as a result of the actions of a unitary agency.

Additionally, the *Carson P.* court conducted an analysis that is a marked departure from the law in this and other Circuits, it applied a "cohesiveness" standard, usually applied to Rule 23(b)(3) damages actions, to a Rule 23(b)(2) action. The Eighth Circuit had previously applied that standard only to Rule 23(b)(2) actions in mass tort/medical monitoring cases which, unlike the present case, require individualized inquiry into class members' specific circumstances. *See In Re St. Jude Medical, Inc.*, 425 F.3d 1116, 1122 (8th Cir. 2005). In *Carson P.*, the district court extended that unique standard further and applied it in a Rule 23(b)(2) non-mass tort/medical monitoring case. *See Carson P.*, 240 F.R.D. at 507-08. (To this day the Eighth Circuit stands alone in applying the cohesiveness doctrine to a Rule 23(b)(2) action.

Additionally, Defendants' reliance on *Carson P.* in support of their commonality and typicality arguments is equally unavailing, since the *Carson P.* court mistakenly applied *J.B.* despite its crucial distinction – that plaintiffs were suing multiple state agencies while the *Carson P.* plaintiffs brought suit only against one state agency. Further, the *Carson P.* court also failed to recognize that the *J.B.* court never provided any rationale for abandoning the precedent of finding commonality based on *challenging common conditions and practices under a unitary regime. See Baby Neal*, 43 F.3d at 60 (emphasis added). As previously noted, most district courts have rejected the *J.B.* court's unique analysis. *See e.g., Kenny A. v. Perdue*, 218 F.R.D. at 300.

Plaintiff Children contend that *Carson P.* was wrongly decided. But, regardless, it applied a cohesiveness standard that is not the law in this Circuit. Therefore, *Carson P.* should not be applied to this case.

b. The Class Definition Here Is Distinguishable from the Proposed Class in *Carson P.*

Defendants' reliance on *Carson P.* to establish the ambiguity of Plaintiff Children's proposed class definition is similarly misplaced, for the simple reason that the proposed class here suffers from none of the concerns over class definition discussed in *Carson P.* Unlike here, the proposed class in *Carson P.* was "[a]ll *foster children* who are or will be in the legal custody of [the Nebraska Department of Health and Human Services], *including those alleged or adjudicated to be abused, neglected or abandoned by their parent, guardian or custodian, and those alleged or adjudicated to be wayward, uncontrollable or habitually truant." Id.* at 490 (emphasis added). The court there found the term "foster children" and, importantly, the clause beginning with "including," to be sufficiently ambiguous in that context (and using Nebraska statutes) to require denial of class certification. *See id.* at 493, 495. In fact, the definition that Plaintiff Children propose here is directly analogous to the proposed definitional solution offered by the *Carson P.* court itself: "All children who…are or will be in *legal custody* of [Nebraska's Department of Health and Human Services]…." *Id.* at 496 (emphasis added).

**B. Plaintiff Children's Proposed Class Satisfies Both the Commonality and Typicality Requirements of the First Circuit**

At no point do Defendants attempt to reconcile the binding case law of this Circuit with either the *J.B.* or *Carson P.* decisions, because they cannot do so. The

case law in this Circuit, as well as the weight of authority outside the First Circuit, support a finding of commonality and typicality for Plaintiff Children's proposed class.

### 1. First Circuit Law Authorizes Class Actions When Even A Single Legal or Factual Issue Exists, Particularly When Defendants' Unlawful Conduct Constitutes a Pattern Directed at the Class Members

In the First Circuit, "a single common legal or factual issue can suffice to satisfy the 23(a)(2) [commonality] requirement." *Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 259 (D. Mass. 2005). "[I]ndividual members of any class rarely have precisely the same characteristics…," *Griffin v. Burns*, 431 F. Supp. 1361, 1365 (D.R.I. 1977), *aff'd* 570 F.2d 1065 (1st Cir. 1978), and "[v]arying fact patterns may underlie individual claims as long as a common pattern of unlawful conduct by the defendant is directed at class members." *Curtis v. Maine*, 159 F.R.D. 339, 341 (D. Me. 1994). Members of Plaintiff Children's proposed class are all subjected to Defendants' common pattern of unlawful conduct – the legally deficient administration of DCYF and the failure to fulfill both constitutional and federal statutory duties owed to abused and neglected children in state custody. This alone is sufficient to meet the commonality standard in this Circuit and renders irrelevant any factual differences on upon which Defendants focus so extensively in their Objection.

Similarly in the First Circuit, a named plaintiff's claims satisfy the typicality requirement if they arise from the same event, practice or course of conduct that gives rise to the claims of other class members and are based on the same legal theory as those of other class members. *See Rosen v. Textron, Inc.*, 369 F. Supp. 2d 204, 208 (D.R.I. 2005). Similarity of legal theories is, in fact, sufficient to satisfy the typicality requirement even in the face of factual distinctions. *See id*. Both the Named

Plaintiff Children's claims and those of the entire class arise from a single source and a unified legal theory: Defendants' legally deficient administration of DCYF and their systemic violation of Plaintiff Children's rights under the United States Constitution and federal statutory law, resulting in harm to abused and neglected children in its custody. That Defendants can describe other factual distinctions among Named Plaintiffs and members of the class is of no moment. *Baby Neal*, 43 F.3d at 60.

2. Plaintiff Children Satisfy Commonality and Typicality Under the Weight of National Authority

Courts both in the First Circuit and elsewhere have repeatedly certified similar classes in cases alleging systemic violations of federal constitutional and statutory law, despite factual distinctions that Defendants assert violate commonality and typicality requirements. *See* Br. at 10-11. *See, e.g.*, *Lynch v. Dukakis*, 719 F.2d 504, 506 n.1 (1st Cir. 1983) (recognizing certification of a class of children on a claim of systemic violation of children's rights by Massachusetts' child welfare system); *Marisol A. v. Guiliani*, 126 F.3d 372 (2d Cir. 1997) (no abuse of discretion in certification of a wide class of children challenging the New York City child welfare system); *Baby Neal v. Casey*, 43 F.3d 48 (3d Cir. 1994) (reversing as abuse of discretion a denial of certification of a class of abused and neglected children alleging systemic deficiencies in the Philadelphia Department of Human Services' treatment of children in its custody).

Indeed, recent cases have sharply criticized the legal analysis of the Tenth Circuit decision, *J.B.*, 186 F.3d 1280, upon which Defendants so heavily rely. *See Kenny A.*, 218 F.R.D. at 301 (explicitly rejecting *J.B.* in favor of the Third Circuit decision *Baby Neal* and agreeing with Judge Briscoe's dissenting opinion in *J.B.* that "the district court . . . denied class certification by citing factual differences that are largely irrelevant to the

class issue and misconstruing the unitary systemic claim on which plaintiffs' proposed class rests"). Similarly, the Eastern District of Michigan, in *Dwayne B.*, slip op. at 6-7, rejected the Nebraska court's *Carson P.* decision, following *J.B.*, in favor of *Baby Neal*, stating that "factual and legal commonality is inherent in cases such as this which present a class challenge to a common course of conduct by a unitary executive agency." *Dwayne B.*, slip op. at 7. There seems to be little question that the weight of authority from both this Circuit and others strongly favors certification of Plaintiff Children's proposed class and rejection of Defendants' argument.

## IV. DEFENDANTS MISAPPLY THE APPLICABLE LAW AND MISCONSTRUE PLAINTIFF CHILDREN'S CLASS DEFINITION

Defendants attempt to create confusion as to Plaintiff Children's class definition where none exists, arguing that the class is unmanageable and ambiguous. But in truth Plaintiff Children's allegations constitute a "classic 23(b)(2) case, where defendant[s'] alleged actions are generally applicable to the class as a whole and injunctive relief would be appropriate if entitlement to relief is established." *Caranci v. Blue Cross & Blue Shield*, 194 F.R.D. 27, 40 (D.R.I. 2000).

### 1. The Proposed Class Definition in this Case Presents No Ascertainability or Manageability Concerns

Defendants fail to present any factual basis for their assertion that Plaintiff Children's proposed class definition is inadequate and the administration of the relief sought would present manageability concerns by requiring this Court to determine the

precise identity of each class member.[5] *See* Ob. at 8-9. Moreover, the standard that Defendants seek to apply is ordinarily reserved for a class proposed under Rule 23(b)(3), which presents special manageability concerns due to the individual focus of the (often monetary) relief sought and requires class notice and an opportunity to opt out.[6]

Plaintiff Children in this action, which seeks only the application of declaratory and injunctive relief to address Defendants' systemic violations of Plaintiff Children's civil rights, appropriately request certification of their class under Rule 23(b)(2). It is well established that Rule 23(b)(2) – which requires neither individual notice to class members nor a right of class members to opt out of the class – is well-suited for class actions that, like this one, seek injunctive and declaratory relief directed at Defendants and are brought on behalf of shifting populations. Courts have found Rule 23(b)(2) certification especially appropriate when classes have a transitory nature like the one proposed in this action.[7] Although many class members remain in Defendants'

---

[5] Defendants claim that the declaratory and injunctive relief sought in this action will somehow require this Court "to assume the role of the Rhode Island Family Court in every case of abuse or neglect existing or to be filed in the State of Rhode Island and to oversee and manage DCYF's administration of its child welfare program," but Defendants provide no factual basis for this far-fetched claim. *See* Ob. at 8. Certainly, the Amended Complaint requests no such relief, just relief directed at the operation of the executive branch agency.

[6] Even were it necessary for the Court to determine the identity of individual class members, the class as defined is nonetheless easily ascertainable and therefore manageable – once a child is placed into Defendants' legal custody due to an allegation of abuse or neglect, legal obligations flow from the state to the child, requiring the state to keep track of each child. *See* R.I. Gen. Laws § 42-72-7(a) ("There shall be established a central registry within the department responsible for the collection, receipt, dissemination, reporting, and maintenance of all files relating to children under this chapter").

[7] *See, e.g.*, *Baby Neal*, 43 F.3d at 60 (describing the "nature of foster placement" as "transitory" and "inherently variable"); *Marisol A.*, 1998 WL 265123, at *7 (describing

custody for long periods of time, and new children enter the class and others leave, that does not make the class either unmanageable or unascertainable at any point in time. And like other First Circuit cases certifying similar classes, a class definition framed by the children's custodial relationship with DCYF is entirely appropriate.

Plaintiff Children's proposed class is therefore more than adequately defined to address the ascertainability standards applicable to Rule 23(b)(2) classes.

2. Plaintiff Children's Class is Precisely Defined to Include the Class of Children for Whom Relief is Sought

Notwithstanding Defendants' factually and legally baseless suggestion that the proposed class presents manageability concerns sufficient to warrant application of class definition standards typically applicable only to Rule 23(b)(3) classes, Plaintiff Children's proposed class – "all children who are or will be in the legal custody of the Rhode Island Department of Children, Youth and Families due to a report or suspicion of abuse or neglect" – is precisely defined and unambiguous. DCYF routinely takes lawful custody of abused and neglected children. The procedures that enable DCYF to obtain custody of abused and neglected children are well-known and clearly established by statute. *See* R.I. Gen. Laws §§ 40-11 *et seq.* ("Abused and Neglected Children"), 40-11-7.1 ("Family Court Proceedings"), 40-11-12 ("Award of Custody") (2007); *see also* R.I. Gen. Laws 42-72-16(1) (2007) (transferring authority over abused and neglected children to DCYF). Indeed, notwithstanding Defendants' stated confusion regarding the scope of Plaintiff Children's proposed class definition, Defendants themselves know when DCYF has followed these procedures to obtain lawful custody of children due to a report or

---

the population of New York City's child welfare system as "fluid, making the provision of legally mandated foster care services inherently transitory").

suspicion of abuse or neglect.[8] Defendants know who the class members are, or could easily find out who they are, on any given day.

In support of their argument against class certification, Defendants point out that Plaintiff Children's actual class definition, based on DCYF's legal custody of abused and neglected children, is broader than the group of children Defendants wrongly assume Plaintiffs really meant -- children in what they term "foster care," *see* Ob. at 10-13, a term Defendants never define and whose exact meaning can vary. In fact, Plaintiff Children's proposed definition is precise and includes no such ambiguities.

The definition provided by Plaintiffs – and not the one contrived by Defendants – is clear and defines exactly the children to whom Defendants owe a legal obligation; once children come into Defendants' legal custody due to an allegation of abuse or neglect, Defendants have an obligation to keep these children free from harm. *See Deshaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 201 n.9 (1989) (noting potential analogy of custody of a child in a foster home operated by state agents to penal custody or institutionalization, which establish a duty on the state to assume responsibility for an individual's safety and general well being and citing to other class

---

[8] For example, regarding the nine "groups of children" to which Defendants refer, the reference in fact is not to groups of children at all, but to procedures by which, except for one, children come into or out of Defendants' custody. *See* Ob. at 15-18. These procedures do not in fact conflict with the class definition. If a child is presently in DCYF custody due to an allegation of abuse or neglect, the child would be a class member. If the child's relationship with DCYF were to change – *i.e.*, the child becomes adjudicated delinquent and is not also in DCYF custody due to abuse or neglect, or the abuse/neglect petition is dismissed, or the child is adjudicated dependent and not also in DCYF custody due to an allegation of abuse or neglect, the child would no longer be a class member. Finally, if a child is in DCYF legal custody due to an allegation of abuse or neglect and is living at home, the child would be a class member. There is nothing confusing about the proposed definition, despite Defendants' attempt to make it so, and despite the procedures articulated by Defendants.

action children's rights cases establishing such a duty as well as duties under the Adoption Assistance and Child Welfare Act ("AACWA") and the Adoptive and Safe Families Act ("ASFA")). Indeed, children who are in Defendants' legal custody due to an allegation of abuse or neglect can be placed by Defendants in a variety of living arrangements under DCYF's legal supervision and it matters little whether these arrangements are called "foster care",[9] because the state's legal obligation to these children is the same. This class is therefore appropriately governed by the very relationship from which Defendants' legal obligations to Plaintiff Children arise.

Defendants' attempt to manufacture similarity between the class proposed in this action and that denied in *Carson P.* is unavailing for reasons described in more detail, *supra*. And First Circuit courts have routinely certified classes similar to that presented here – *i.e.*, with definitions that seek to include all children deprived of state-sponsored protection or services to which they are entitled. *See* [Mem. in Support of Pls.' Mot. for Class Certification and Appointment of Class Counsel] ("Br.")] at Br. 10-11. Further, federal courts in other circuits have granted class certification to classes with similar definitions to the one proposed here. *See id.* at 11-13. Consequently, the weight of authority supports a finding that the class asserted in this action is sufficiently defined to unambiguously include all of the class members on whose behalf relief is sought.

[9] For example, abused and neglected children in the state's legal custody can be placed by DCYF in licensed foster homes with people the children have never met before; they can be placed in institutions such as shelters; they can be placed with a relative; DCYF may decide that they will remain with their parents; or DCYF may decide they can be reunified with their parents on a trial basis. In each of these situations, if a child is in Defendants' legal custody due to abuse or neglect, the state can identify who she is, and the state's legal obligation to keep her free from harm is the same.

Finally, even if the Court were to perceive ambiguity in the class as defined, that alone would not warrant denial of class certification. *See* 7A Wright & Miller, Federal Practice & Procedure, Civil § 1760 (3d ed. 2007) ("If the court decides that the class described in the complaint does not meet a minimum standard of definiteness or is too broad, it need not dismiss the action, however. It has discretion to limit or redefine the class in an appropriate manner to bring the action within Rule 23"). The Court may, in its discretion, redefine the class,[10] or fashion relief with the current class definition in mind.[11]

## V. THE NAMED PLAINTIFF CHILDREN ADEQUATELY REPRESENT THE INTERESTS OF THE CLASS AND DEFENDANTS' OBJECTIONS TO PLAINTIFF CHILDREN'S CHOICE OF NEXT FRIENDS ARE MERITLESS

Unable to articulate a substantive objection to the adequacy of the Named Plaintiff Children or Plaintiff Children's counsel, Defendants attempt to attack the selection of Plaintiff Children's Next Friends. This is despite the fact that one counsel for Plaintiff Children is the Rhode Island Child Advocate, who is statutorily entitled to bring suit on behalf of precisely the children who seek class certification in this case.

---

[10] *See, e.g.*, *In re N.E. Mutual Life Ins. Co. Sales Practices Litig.*, 183 F.R.D. 33 (D. Mass. 1998).

[11] *See, e.g.*, *Harper v. Mayor & City Council of Balt.*, 359 F. Supp. 1187 (D. Md. 1973), *modified and aff'd*, 486 F.2d 1134 (4th Cir. 1973); *see also Lamphere v. Brown Univ.*, 553 F.2d 714, 719 (1st Cir. 1977) ("[T]he underlying theme [of class certification] is flexibility; different cases call for different approaches."); *Yaffe*, 454 F.2d at 1365 (noting courts' considerable discretion conferred "by Rule 23(c) and (d) as to determination of classes and subclasses, conditional orders, imposing conditions, prescribing measures to prevent undue complication, etc.").

Defendants' contentions that the Next Friends will be unable to adequately pursue the interests of the named plaintiffs are wholly without merit.[12]

It is well-established that "[t]here are no special requirements for the person suing as next friend" pursuant to Fed. R. Civ. P. 17(c).[13] 6A Wright, Miller & Kane, Federal Practice & Procedure, Civil 2d § 1572. Thus, contrary to Defendants' assertion, a close relationship, blood tie, or long-term relationship need not exist between a proposed next friend and the child he or she seeks to represent.[14] Rather, courts "consider the good faith of those claiming to speak for the infant . . . [to ensure] that the 'next friend' is motivated by a sincere desire to seek justice on the infant's behalf." *Ad Hoc Committee of Concerned Teachers v. Greenburgh #11 Union Free School Dist.*, 873 F.2d 25, 30-31 (2d Cir. 1989). Courts have recognized that foster children in particular may have little opportunity to develop long-term relationships with adults who have no

---

[12] Defendants' challenge to the Named Plaintiff Children's Next Friends is presented in only a cursory manner in this class certification context because Defendants chose to detail this argument in the Motion to Dismiss. See Ob. at 37; Defs' Mot. at 79-85. However, class certification raises separate issues which can be fully resolved by this Court based on the arguments submitted in support of, and opposition to, Plaintiff Children's motion for class certification.

[13] Fed. R. Civ. P. 17(c) provides:

> Infants or Incompetent Persons. Whenever an infant or incompetent person has a representative, such as a general guardian, committee, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person. An infant or incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person.

[14] *See Bowen v. Rubin*, 213 F. Supp. 2d 220, 226 (E.D.N.Y. 2001) (stating "a close relationship or blood tie need not exist between a proposed next friend and an individual in need of representation."); *Marisol A. v. Giuliani*, 1998 WL 265123, at *9 (S.D.N.Y.

conflicts and are able and bring suit to advocate for the children's best interests. As noted by the Second Circuit:

> The term ["next friend"] is broad enough to include any one who has an interest in the welfare of an infant who may have a grievance or a cause of action . . . . The right of access to courts by those who feel they are aggrieved should not be curtailed; and this is particularly so in the instance of children who, rightly or wrongly, attribute such grievances to their very custodians. Those who propose to speak for the plaintiffs have manifested an interest in their welfare and should, under the circumstances here presented, be allowed to proceed.

*Ad Hoc Comm. of Concerned Teachers*, 873 F.2d at 30-31 (quoting *Child v. Beame*, 412 F. Supp. 593, 599 (S.D.N.Y. 1976)).

This suit is properly brought by Next Friends who have no suggested or actual motive other than to pursue the legal rights of the children they represent. Defendants provide no basis to challenge that motivation or their sincerity, particularly when the Next Friends were chosen by counsel, the Rhode Island Child Advocate.[15] Defendants instead seek to capitalize on one of the very issues central to this suit: that the Plaintiffs are subjected to a child welfare system so dysfunctional that they are denied the opportunity to develop stable and long-standing attachments to adults who can advocate for them.

---

May 22, 1998) (finding next friends adequate despite never meeting foster children being represented); *Child v. Beame*, 412 F. Supp. 593, 599 (S.D.N.Y. 1976) (same).

[15] The next friends in this action were chosen by Jametta Alston, the Rhode Island Child Advocate, pursuant to her statutory authority to protect the interests of the Named Plaintiff children in this case. *See* Alston Decl. ¶ 2 (citing R.I. Gen. Laws §§ 42-73-1 *et seq.* (2006). The Office of the Child Advocate is *required* to "[t]ake all possible action including, but not limited to . . . formal legal action, to secure and ensure the legal, civil, and special rights of children" in DCYF foster care custody. *See id.* ¶ 3 (citing R.I. Gen. Laws §§ 42-73-7(6)). Plaintiff Children's choice of Next Friends should thus be given considerable deference.

Defendants' objection to the next friends of David T. and Caesar S., on the ground that they do not "truly understand or know" the children they represent, *see* Ob. at 37, is unfounded. Next Friend Kathleen J. Collins has known Caesar for over a year, since he entered one of the schools where she works as a psychologist. Am. Compl. ¶ 55. Next Friend Mary Melvin cared for David T. as his foster mother for over two years and continued to be a resource for him even after he left her care. *See id.* ¶ 69. Ms. Melvin's home was the first and last stable family environment David has experienced in the fourteen years he has been in DCYF custody. *See id.* ¶ 58. The number of times Defendants have moved David among various temporary and institutional placements has made it unlikely that David has formed any other significant attachments. David T. should not be penalized or have his access to this Court limited on this basis, nor should Defendants escape accountability on this ground. Both Ms. Collins and Ms. Melvin are suitable Next Friends. *See, e.g., Dwayne B.*, 2007 WL 1140920 at * 3 (finding former foster mother of named plaintiffs' sibling suitable as next friend).

Plaintiff Children's counsel expended significant effort to secure next friends with personal connections to Named Plaintiffs Sam and Tony M., Deanna H., and Danny and Michael B. Plaintiff Children's counsel reached out to as many people as they could identify who had both a personal connection to these Named Plaintiffs and who would pose no obvious conflict if they were to serve as next friends. These adults included: service providers, including therapists, clinicians, medical doctors, and staff at child development programs; educators and educational advocates; social workers; staff at foster care facilities; relatives; and former foster parents of the Named Plaintiffs. *See* Alston Decl. ¶ 7. Plaintiff Children's counsel also reached out to a number of community

advocates who have significant interests in child welfare, including clergy, community activists, directors of community-based organizations, attorneys, and parents with connections to the child welfare system. *See id.* The persons closest to these Named Plaintiffs either posed a potential conflict, or expressed concern regarding possible retaliation from DCYF or other state entities and declined to become involved. *See id.* ¶ 8. Defendants should not be allowed to benefit from the social isolation that they have created and perpetuated for these Plaintiffs. Indeed, had it not been for Defendants' failures, the Named Plaintiff Children likely would have someone in their lives concerned for their well-being and willing and able to vindicate their rights.

The Named Plaintiff Children, as minors, are unable to pursue their claims on their own behalf and require next friends under Federal Rule of Civil Procedure 17(c). The Plaintiff Children's Next Friends here have both the requisite capacity and commitment to bring this suit on behalf of the Named Plaintiffs and this vulnerable class, as they are experienced in the field of child welfare and child care. And as evidenced by their participation in this matter, their desire to seek justice on behalf of these minors is sincere and unwavering. Indeed, the Defendants do not even attempt to challenge the Next Friends' sincerity or motive. Such a challenge without a legitimate basis has been rejected in previous cases and should be rejected here as well. *See Marisol A.*, 1998 WL 265123, at *9; *Child v. Beame*, 412 F. Supp. at 599. Therefore – contrary to Defendants' assertion – Gregory Elliot under these circumstances is an appropriate Next Friend to Named Plaintiff Children, Sam and Tony M., Deanna H., and Danny and Michael B., is therefore an appropriate Next Friend under these circumstances.

Finally, Plaintiff Children's counsel is ultimately responsible for ensuring that the class is adequately represented throughout the litigation. *See*, *e.g.*, *Key v. Gillette Co.*, 782 F.2d 5, 7 (1st Cir. 1986) (characterizing the sufficiency of the class representative's counsel as the "essential ingredient" for adequacy of representation purposes). Indeed, Plaintiff Children's choice of experienced and competent counsel diminishes any risk that their interests will not be adequately protected. Counsel is well qualified to both vigorously protect the Plaintiff Children's interests and provide guidance for the Next Friends in vindicating the rights of the children. Moreover, even if the Court were to decide that these Next Friends were unacceptable, the proper remedy pursuant to Federal Rule of Civil Proceudre 17(c) would be to afford the Plaintiff Children a reasonable opportunity to propose acceptable next friends.

## VI. CONCLUSION

Plaintiff Children, Sam and Tony M., Caesar S., David T., Deanna H., and Danny and Michael, B. seek to represent nearly 3000 other children whose lives are similarly affected by the systemic failure of Rhode Island's DCYF. The comments to Federal Rule of Civil Procedure 23(b)(2) make it clear that the Rule's ideal application is in civil rights cases such as this. And decisions in the First Circuit agree that children subject to the protective intervention of states comprise a suitable class under this Rule. Plaintiff Children propose a class that is precisely defined to reach only children to whom DCYF owes a federal statutory and Constitutional duty—children who desperately need the relief requested. In fact, such relief falls precisely within that contemplated by Rule 23(b)(2).

Defendants' arguments against certification of the proposed class rely on factually distinguishable cases and an opportunistic poke at the suitability of the Named Plaintiff Children's Next Friends. Defendants, however, have raised no facts or legal arguments that contravene the weight of authority leaning in favor of class certification here. As such, Sam and Tony M., Caesar S., David T., Deanna H., and Danny and Michael, B. respectfully request that this Court grant Named Plaintiff Children's motion for class certification under Federal Rule of Civil Procedure 23(b)(2).

Dated: October 19, 2007

Respectfully submitted,

_/s/ Vernon M. Winters_________
VERNON M. WINTERS (Bar No. 130128 (Cal.); admitted *pro hac vice)*
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA
Phone: (650) 802-3005
Email: Vernon.winters@weil.com

_/s/_Jametta O. Alston______________
JAMETTA O. ALSTON (Bar No. 3909)
CHILD ADVOCATE OF
THE STATE OF RHODE ISLAND
John O. Pastore Center
57 Howard Avenue, Fourth Floor
Cranston, RI 02920
Phone: (401) 222-1690
Facsimile: (401) 222-6652
Email: jalston@doa.state.ri.us

JOHN W. DINEEN (Bar No. 2346)
305 South Main Street
Providence, RI 02903
Phone: (401) 223-2397
Facsimile: (401) 223-2399
Email: jwdineen1@yahoo.com

MARCIA ROBINSON LOWRY (Bar No. 1187053 (N.Y.); admitted *pro hac vice)*
SUSAN LAMBIASE (Bar No. 2099489 (N.Y.); admitted *pro hac vice)*
CHILDREN'S RIGHTS
330 Seventh Avenue, Fourth Floor
New York, NY 10001
Phone: (212) 683-2210
Facsimile: (212) 683-4015
Email: mlowry@childrensrights.org

**CERTIFICATION**

I hereby certify that on October 19, 2007, I caused the foregoing document to be electronically mailed to the attorneys of record listed below:

Brenda D. Baum, Esq.
Assistant Attorney General
Rhode Island Department of the Attorney General
150 South Main Street
Providence, RI 02903-2907
Tel: (401) 274-4400 x 2294
Fax: (401) 222-3016
bbaum@riag.ri.gov

Kevin Aucoin, Esq.
DCYF Chief Legal Counsel
101 Friendship Street
Providence, RI 02903-3716
Tel: (401) 528-3570
Kevin.Aucoin@dcyf.ri.gov

/s/David J. Taylor
DAVID J. TAYLOR
WEIL, GOTSHAL & MANGES LLP
1300 Eye Street, NW STE 1300
Washington, DC 20005
Phone: (202) 682-7094
Facsimile: (202) 857-0940
Email: david.taylor@weil.com