# Exhibit 3

*Olivia Y. v. Barbour*, No. 3:04CV251LN, slip op. (S.D. Miss. Mar. 11, 2005)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

OLIVIA Y ., BY AND THROUGH HER NEXT FRIEND, JAMES D. JOHNSON; JAMISON, J., BY AND THROUGH HIS NEXT FRIEND, CLARA LEWIS; DESIREE, RENEE, TYSON AND MONIQUE P., BY AND THROUGH THEIR NEXT FRIEND, SYLVIA FORSTER; JOHN A., BY AND THROUGH HIS NEXT FRIEND, JAMES D. JOHNSON; CODY B., BY AND THROUGH HIS NEXT FRIEND, SHARON SCOTT, MARY, TOM, MATTHEW AND DANA W., BY AND THROUGH THEIR NEXT FRIEND, ZELETRA W.; AND SAM H., BY AND THROUGH HIS NEXT FRIEND, YVETTE BULLOCK, ON THEIR OWN BEHALF AND ON BEHALF OF OTHERS SIMILARLY SITUATED PLAINTIFFS

VS. CIVIL ACTION NO. 3:04CV251LN

HALEY BARBOUR, AS GOVERNOR OF THE STATE OF MISSISSIPPI; DONALD TAYLOR, AS EXECUTIVE DIRECTOR OF THE DEPARTMENT OF HUMAN SERVICES; AND BILLY MANGOLD, AS DIRECTOR OF THE DIVISION OF FAMILY AND CHILDREN'S SERVICES DEFENDANTS

MEMORANDUM OPINION AND ORDER

On March 30, 2004, plaintiffs herein moved, pursuant to Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure, for certification of this action as a class action, with two plaintiff classes, defined, respectively, as follows:

> (1) "all children who are or will be in the legal and/or physical custody of DFCS" (the "In-Custody Class"); and
>
> (2) "all of those children who are not in DFCS custody, but have been or are at risk of being abused and neglected, and about whom Defendants have received a

> report of abuse or neglect (the "Protective Services Class").

Subsequently, defendants Haley Barbour, Governor of the State of Mississippi, Donald Taylor, Executive Director of the Department of Human Services (DHS) and Billy Mangold, Director of the Division of Family and Children's Services (DFCS), moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants moved to stay consideration of the motion for class certification pending a ruling on the motion to dismiss. On November 18, the court issued its opinion on defendants' motion. The court therein dismissed all claims sought to be asserted by and on behalf of the "Protective Services Class," and also dismissed the claims of the "In-Custody Class" for violation of their alleged procedural due process rights and for violation of the Adoption Assistance and Child Welfare Act. In the wake of that ruling, there remain only claims of the putative "In-Custody Class" for violation of their substantive due process rights.

Plaintiffs, who seek class certification pursuant to Rule 23(a) and (b)(2), bear the burden of demonstrating that the requirements of the rule have been met. The pertinent provisions of the rule are as follows:

> (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the

> class, and (4) the representative parties will fairly and adequately protect the interests of the class.
>
> (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
> . . .
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Thus, plaintiffs must establish the four factors of Rule 23(a)--numerosity, commonality, typicality, and adequacy--as well as the requirements of Rule 23(b)(2).

Defendants admit that the proposed class, which would include all of the approximately 3,000 children currently in DHS custody, satisfies the requirement of numerosity, but they maintain that plaintiffs' efforts toward establishing the propriety of class certification begin and end there.

The gist of defendants' opposition to class certification is their insistence that in presenting this as as a prospective class action, plaintiffs are seeking a "one size fits all" approach to claims and issues that simply cannot be treated in such a fashion. This is not a case of "generic children with generic claims," say defendants, but rather of individual children whose cases DHS is mandated to address in an individualized fashion based on each child's individual circumstances and individual needs. They note that a child can wind up in DHS custody in one of several ways, from the Baby Drop-Off Law to orders of the Youth Court, and that

while there may be a common basic cause which leads to DHS's assuming custody, i.e., abuse and neglect, it does not follow that all abused and neglected children are alike or have the same problems and needs. Indeed, they say, abused and neglected children are of different ages, genders and family backgrounds and have different medical, psychological and behavior problems, intellect and education, so that the treatment, care and services DHS is mandated to provide must be assessed on a child-specific basis.

Defendants further contend that plaintiffs cannot legitimately label their claims "common" merely by broadly alleging that "systemic deficiencies have resulted and continue to result in violations of their federal and statutory and constitutional rights." They argue, that is, that the requisite commonality cannot be found to exist where plaintiffs have not challenged specific practices or procedures utilized by DHS but rather have simply alleged generally that DHS has a practice and procedure of failing to meet the needs of children in its custody and has thereby violated the substantive due process rights of all children in its custody. In sum, defendants submit that plaintiffs have impermissibly attempted to group together children with very different needs, rights and problems, and they conclude that since plaintiffs cannot demonstrate that all children in the proposed class have experienced the same problems or the same

difficulties in receiving required services from DHS as plaintiffs or as each other, then plaintiffs cannot possibly satisfy Rule 23(a)'s requirements of commonality and typicality.

With reference to the requirement of Rule 23(b)(2), defendants similarly argue that because plaintiffs have not identified any specific policy or practice that could be the subject of injunctive relief but rather have alleged generally that defendants have a policy and practice of not meeting the needs of children in its custody, it is difficult to conceive of an injunction that could remedy the alleged deficiencies, and certainly not a "classwide" injunction that could remedy the deficiencies encountered by individual children.

To meet the test for commonality, plaintiffs need not show that "[t]he interests and claims of the various plaintiffs . . . are identical. Rather, the commonality test is met when there is 'at least one issue whose resolution will affect all or a significant number of the putative class members.'" Forbush v. J.C. Penney Co., Inc., 994 F.2d 1101, 1106 (5th Cir. 1993) (quoting Stewart v. Winter, 669 F.2d 328, 335 (5th Cir. 1982)). "For this reason, '[t]he threshold of "commonality" is not high'." Id. (quoting Jenkins v. Raymark Industries, 782 F.2d 468, 472 (5th Cir. 1986)). Neither is the test for typicality demanding. Smith v. Texaco, Inc., 263 F.3d 394, 406 (5th Cir. 2001). The requirement of typicality "'focuses on the similarity between the

named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent,' and is satisfied when the resolution of common questions affects all or a substantial number of class members." Id. at 406-07 (citations omitted).

Here, the court, having considered plaintiffs' arguments, is persuaded that plaintiffs have sufficiently identified issues common to all or most of the proposed class members. These include, by way of example only, the legal questions whether defendants' actions and inactions have violated the substantive due process rights of children in DHS custody to be safe from harm while in state custody and whether defendants' actions and inactions have resulted in a denial of necessary health services in violation of their substantive due process rights, and the factual questions whether defendants have failed to provide children in their custody with safe, licensed foster care placements, whether defendants have failed to provide children in foster care with required services necessary to keep them safe and prevent them from deteriorating physically, psychologically or otherwise while in custody and whether DHS staffing shortage endangers children in DHS custody.[1]

---

[1] A plaintiff cannot clear the commonality hurdle by "merely describing issues at the highest level of generality." Smith v. Texaco, Inc., 263 F.3d 394, 405 -406 (5th Cir. 2001). Thus, for example, it is not sufficient merely to allege, without more, that all members of the proposed class have been victims of race discrimination. Here, while defendants challenge plaintiffs' complaint as too general to support class certification, the court

In the court's opinion, it is reasonably clear from their complaint that plaintiffs have identified alleged shortcomings by DHS, in terms, inter alia, of its staffing, policies and practices, which if proven, could readily be found to place every child in DHS custody at substantial risk of harm. Consequently, even though each plaintiff and each proposed class member may not yet have suffered the same type or degree of harm (though some surely have), because it appears that defendants' alleged acts and omissions pose a significant risk of similar harm to all (or at least the requisite "significant number" of) children in DHS custody, the court concludes that the requirements of commonality and typicality are satisfied.

It also follows from the court's conclusion in this regard that plaintiffs have satisfied the requirements of Rule 23(b)(2), in that the plaintiffs' allegations do relate to defendants' actions and inaction with respect to the class as a whole and the relief plaintiffs seek is classwide declaratory and injunctive relief with respect to the class as a whole. The court does acknowledge defendants' contention that effective injunctive relief for the benefit of the proposed class, as opposed to relief for the specific named plaintiffs, cannot feasibly be granted in view of the extensiveness of the failures alleged by plaintiffs.

---

finds that it is sufficiently specific in terms of the violations identified and relief sought.

In the court's opinion, however, the fact that it could prove difficult to fashion fully responsive and effective injunctive relief (in the event violation(s) are proven) is not a basis for refusing to undertake the task in the first place. That is to say, the court does not perceive this to be an impossible undertaking, and it is not one the court is unwilling to assume.

In addition to the foregoing, defendants also contend that plaintiffs have failed to satisfy the "adequacy" requirement of Rule 23(a). As to this requirement, the Fifth Circuit has made clear that

> [t]o meet Rule 23 requirements, the court must find that class representatives, their counsel, and the relationship between the two are adequate to protect the interests of absent class members. Stirman v. Exxon Corp., 280 F.3d 554, 562 (5th Cir. 2002). Class representatives must satisfy the court that they, and not counsel, are directing the litigation. To do this, class representatives must show themselves sufficiently informed about the litigation to manage the litigation effort. Berger, 257 F.3d at 479.

Unger v. Amedisys Inc., 2005 WL 375684, *2 (5th Cir. 2005).

Defendants in this case do not question the adequacy of class counsel. They do, however, contend that the "next friends" through whom the named plaintiffs are suing are "uninterested and inexperienced" and hence are not adequate class representatives. In this regard, they note that at their depositions, Sharon Scott, next friend to Cody B., and Sylvia Forester, next friend to the P. Children, both testified that they do not know where these children are now, and next friend James Johnson testified that he

has never met John A. and that while he knows John A. is in a foster home, he does not know the name of the foster parent and has never spoken with the foster parent.

Plaintiffs vigorously dispute defendants' characterization of these persons as uninterested and inexperienced, and insist that the next friend for each of the named In-Custody plaintiffs is an adequate representative.[2] Specifically, plaintiffs note that James Johnson serves as guardian ad litem for both Olivia Y. and John A., having been appointed by the Mississippi Youth Court and that his representation of the children in this case is specifically authorized by Federal Rule of Civil Procedure 17(c). As for the others, plaintiffs point out that Sharon Scott is a family friend of Cody B.'s former foster parent and helped care for him for approximately eighteen months, until he was moved. Ms. Scott testified that she has repeatedly tried to get information from DHS as to his whereabouts but DHS will not give her the information.

Zelatra W., next friend to Mary, Tom, Matthew and Dana W., is the children's aunt who, as a licensed foster care provider, cared for the children in her home for two and a half years before they were removed. She testified that although she has been unable to get information from DHS concerning the children, it has not been

---

[2] Plaintiffs point out that Sylvia Forester is not a next friend on behalf of any of the In-Custody plaintiffs.

for lack of effort on her part. Clara Lewis, next friend to Jamison J., is his former foster parent who has known him for years, stayed in touch with him, knows where he is currently and is Jamison J.'s biological sister's adoptive parent.

In the court's opinion, the suggestion by defendants that these representatives of the named plaintiff children are uninterested or inexperienced is unfounded in fact. To the contrary, each is generally knowledgeable about the nature and purpose of this litigation, and has a good faith interest in the named plaintiffs' welfare and in the prosecution of this litigation.[3]

In conclusion, based on the foregoing, it is ordered that plaintiffs' motion for class certification is granted to the extent they seek certification of an "In-Custody Class."[4]

SO ORDERED this 11th day of March, 2005.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE

---

[3] Copies of the next friends' deposition transcripts were provided at the court's request, and the court's review refutes defendants' characterization of these individuals.

[4] The court notes that plaintiffs have moved to strike Exhibit 1 which was submitted by defendants with their response to the motion for class certification. In the court's opinion, plaintiffs are correct that for present purposes, the exhibit is not relevant and it is therefore stricken.