# Exhibit 4

## Title IV-E Program Instruction ACYF-CB-PI-07-02, Attachment B – Title IV-E State Plan Pre-Print, Issued Jan. 23, 2007

**Attachment B**

OMB Approval No. 0980-0141
Expiration Date: 11/30/2008

# STATE PLAN FOR TITLE IV-E OF THE SOCIAL SECURITY ACT
# FOSTER CARE AND ADOPTION ASSISTANCE
# STATE OF ________________________

U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES
ADMINISTRATION FOR CHILDREN AND FAMILIES
CHILDREN'S BUREAU
January 2007

**SECTION**

SECTION 1. ORGANIZATION

A. DESIGNATION AND AUTHORITY OF STATE AGENCY
B. STATE AGENCY STRUCTURE AND FUNCTION
C. STATEWIDE OPERATIONS
D. COORDINATION WITH TITLES IV-A AND IV-B PROGRAMS
E. CHILD SUPPORT ENFORCEMENT FOR CERTAIN CHILDREN IN FOSTER CARE

SECTION 2. FOSTER CARE MAINTENANCE PAYMENTS

A. ELIGIBILITY
B. VOLUNTARY PLACEMENTS (STATE OPTION)
C. PAYMENTS
D. CASE REVIEW SYSTEM
E. MEDICAL AND SOCIAL SERVICES
F. SPECIFIC GOALS IN STATE LAW
G. PREVENTIVE AND REUNIFICATION SERVICES
H. TERMINATION OF PARENTAL RIGHTS
I. DATE CHILD CONSIDERED TO HAVE ENTERED FOSTER CARE
J. DOCUMENTATION OF JUDICIAL DETERMINATIONS.
K. TRIAL HOME VISITS
L. TRAINING

SECTION 3. ADOPTION ASSISTANCE PAYMENTS

A. ELIGIBILITY
B. PAYMENTS - AMOUNTS AND CONDITIONS
C. ADOPTION ASSISTANCE AGREEMENT
D. MEDICAID AND SOCIAL SERVICES
E. ELIGIBILITY FOR ADOPTION INCENTIVE FUNDING

SECTION 4. GENERAL PROGRAM REQUIREMENTS

A. STANDARDS FOR FOSTER FAMILY HOMES AND CHILD CARE INSTITUTIONS
B. REVIEW OF PAYMENTS AND LICENSING STANDARDS
C. FAIR HEARINGS
D. INDEPENDENT AUDIT
E. CHILD ABUSE AND NEGLECT
F. TIMELY INTERSTATE PLACEMENT OF CHILDREN
G. REMOVAL OF BARRIERS TO INTERETHNIC ADOPTION
H. KINSHIP CARE
I. SAFETY REQUIREMENTS
J. INTERJURISDICTIONAL ADOPTIONS
K. QUALITY STANDARDS

SECTION 5. GENERAL PROVISIONS

A. PERSONNEL ADMINISTRATION
B. SAFEGUARDING INFORMATION
C. REPORTING
D. MONITORING
E. APPLICABILITY OF DEPARTMENT-WIDE REGULATIONS
F. AVAILABILITY OF STATE PLANS
G. OPPORTUNITY FOR PUBLIC INSPECTION OF REVIEW REPORTS AND MATERIALS

ATTACHMENT I: STATE AGENCY CERTIFICATION

ATTACHMENT II: GOVERNOR'S CERTIFICATION

ATTACHMENT III: ASSURANCE

back to top

## STATE PLAN FOR TITLE IV-E OF THE SOCIAL SECURITY ACT

## FEDERAL PAYMENTS FOR FOSTER CARE AND ADOPTION ASSISTANCE

## STATE OF _________________________

As a condition of the receipt of Federal funds under Title IV-E of the Social Security Act (hereinafter, the Act), the

____________________________________________________________
(Name of State Agency)

(hereinafter "the State Agency") submits herewith a State plan for the program to provide, in appropriate cases, foster care and adoption assistance under Title IV-E of the Act and hereby agrees to administer the program in accordance with the provisions of this State plan, Title IV-E of the Act, and all applicable Federal regulations and other official issuances of the Department.

The official text of said laws, regulations and official issuances governs, and the State Agency acknowledges its responsibility to adhere to them regardless of the fact that, for purposes of simplicity, the specific provisions printed herein are sometimes paraphrases of, or excerpts and incomplete quotations from, the full text. Statutory citations refer to provisions in Title IV-E of the Social Security Act. Regulatory citations refer to provisions in 45 CFR Parts 1355 and 1356.

The State Agency understands that if and when Title IV-E is amended or regulations are revised, a new or amended State plan for Title IV-E that conforms to the revisions must be submitted.

The State Agency certifies the following:

back to top

| Federal Regulatory/ Statutory References[1] | Requirement | State Regulatory, Statutory, and Policy References and Citations for Each |
|---|---|---|
| | **SECTION 1. ORGANIZATION** | |
| 471(a)(2) | A. DESIGNATION AND AUTHORITY OF STATE AGENCY<br><br>The State agency has been designated to administer or supervise the administration of the program under this plan. (See Attachment I.) It is also the agency that administers or supervises the administration of the State Child Welfare Services Plan under subpart 1 of Title IV-B of the Act. | |
| | B. STATE AGENCY STRUCTURE AND FUNCTION<br><br>The State agency has available upon request an organizational chart of the State agency and a description of the functions of each of its organizational units as they relate to the administration or supervising the administration of the Title IV-E foster care maintenance, independent living (at State option) and adoption assistance payments program. | |
| 471(a)(3) | C. STATEWIDE OPERATIONS<br><br>The Title IV-E plan for foster care and adoption assistance payments is in effect in all political subdivisions administering it. | |
| 471(a)(4) | D. COORDINATION WITH TITLES IV-A AND IV-B PROGRAMS<br><br>The Title IV-E program is coordinated at the local level with the programs at the State or local level assisted under Titles IV-A, IV-B and XX of the Act and under all appropriate provisions of Federal law. | |
| 471(a)(17) | E. CHILD SUPPORT ENFORCEMENT FOR CERTAIN CHILDREN IN FOSTER CARE<br><br>The State agency takes all appropriate steps, including cooperative efforts with the State agencies administering the plans approved under Titles IV-A and -D, to secure an assignment to the State of any rights to support on behalf of each child receiving foster care maintenance payments under Title IV-E. | |

back to top

| Federal Regulatory/ Statutory | Requirement | State Regulatory, Statutory, |
|---|---|---|

| References | | and Policy References and Citations for Each |
|---|---|---|
| | **SECTION 2. FOSTER CARE MAINTENANCE PAYMENTS** | |
| 471(a)(1) | A. ELIGIBILITY<br>1. Payments are provided for each child: | |
| 472(a)(1)&(2) | a. who meets the requirements of section 406(a) of the Act (as in effect 7/16/96) is removed from the home of a relative specified in section 406(a), and is placed in foster care if:<br>1. the removal and foster care placement met and continues to meet the requirements of paragraph (2) in section 472(a) of the Act; and<br>2. the child, while in the home, would have met the AFDC eligibility requirement of paragraph (3) in section 472(a) of the Act. | |
| 471(a)(2)(A)<br>1356.21(c) | b. whose removal and foster care placement are in accordance with:<br>1. a voluntary placement agreement entered into by the child's parent of legal guardian, who is the relative referred to in paragraph (1) of section 472(a) of the Act; or<br>2. a judicial determination to the effect that continuation of residence in the home from which removed would be contrary to the welfare, or that the placment would be in the best interest, of the child and that reasonable efforts of the type described in section 471(a)(15) for a child were made. The contrary to the welfare determination will be made in the first court ruling that sanctions (even temporarily) the removal of a child from home. If the determination regarding contrary to the welfare is not made in the first court ruling pertaining to removal from the home, the child will not be eligible for Title IV-E foster care maintenance payments for the duration of that stay in foster care. | |
| 472(a)(2)(B)&(C)<br>472(a)(2)(B)(i)<br>472(a)(2)(B)(ii) | c. whose placement and care in a foster family home or child care institution (as defined in section 472(c) of the Act) is the responsibility of either;<br>1. the State agency administering the approved State Title IV-E plan, or<br>2. any other public agency with whom the State agency administering or supervising the administration of the approved State Title IV-E plan has made an agreeement which is still in effect, and | |
| 472(a)(3)(A)(i)<br>472(a)(3)(A)(ii)(I) | d. who:<br>1. received AFDC, in the home referred to in section 472(a)(1), under the State plan approved under section 402 of the Act (as in effect 7/16/96) in or for the month | |

| | | |
|---|---|---|
| 472(a)(3)(A)(ii)(II) | in which either a voluntary placement agreement was entered into or court proceedings leading to the judicial determination, referred to in section 472(a)(2)(A) of the Act, were initiated, or | |
| 472(a)(3)(B) | 2. would have received AFDC, in the home, in or for such month referred to in the above clause if application for such aid had been made, or<br><br>3. had been living with a relative specified in section 406(a) of the Act (as in effect 7/16/96) within six months prior to the month in which a voluntary placement agreement was entered into or court proceedings leading to the judicial determination, referred to in section 472(a)(2)(A) of the Act, were initiated, and would have received AFDC in or for such month if the child had been living in the home with such relative and an application had been made for AFDC under Title IV-A of the Act.<br><br>4. had resources (determined under section 402(a)(7)(B) of the Act as in effect 7/16/96) that had a combined value of not more than $10,000. | |
| 472(a)(4) | 2. In any case where the child is an alien disqualified under sections 245A(h) or 210(f) of the Immigration and Nationaity Act from receiving aid under the approved Title IV-A State plan in or for the month in which the voluntary placement agreement, described in section 472(a)(2)(i), was entered into or court proceedings leading to the judicial determination, referred to in section 472(a)(2)(A)(ii), were instituted, the child shall be considered to satisfy the requirements of section 472(a)(3) with respect to that month, if the child would have satisfied such requirements but for the disqualification. | |
| 1356.21(k) | 2. Removal.<br><br>a. For the purposes of meeting the requirements of section 472(a)(2)(A)(1) of the Act, a removal from the home must occur pursuant to:<br><br>1. a voluntary placement agreement entered into by a parent or relative which leads to a physical or constructive removal (i.e., a non-physical or paper removal of custody) of the child from the home; or<br>2. a judicial order for a physical or constructive removal of the child from a parent or specified relative. | |
| 1356.21(k) | b. A removal has not occurred in situations where legal custody is removed from the parent or relative and the child remains with the same relative in that home under supervision by the State agency. | |
| 1356.21(k) | c. A child is considered constructively removed on the date of the first judicial order removing custody, even temporarily, from the appropriate specified relative or the date that the voluntary placement agreement is signed by all relevant parties. | |

| | | |
|---|---|---|
| 1356.21(1) | 3. Living with a specified relative. For purposes of meeting the requirements for living with a specified relative prior to removal from the home under section 472(a)(2)(A) of the Act and all of the conditions under section 472(a)(3)(A), one of the two following situations will apply: | |
| 1356.21(1) | a. the child was living with the parent or specified relative, and was AFDC eligible in that home in the month of the voluntary placement agreement or initiation of court proceedings; or | |
| 1356.21(1) | b. the child had been living with the parent or specified relative within six months of the month of the voluntary placement agreement or the initiation of court proceedings, and the child would have been AFDC eligible in that month if s/he had still been living in that home. | |
| 472(f) | B. VOLUNTARY PLACEMENTS (State Option)<br><br>1. Foster care maintenance payments are made in the voluntary placment of a minor child out of the home by or with the participation of the State agency only if: | |
| 1356.22(a)<br>472(d) | a. the State has fulfilled all of the requirements of section 472 of the Act, as amended; sections 422(b)(10) and 475(5) of the Act; and 45 CFR 1356.21(f),(g),(h) and (i) of the Act, and | |
| 472(f)(1) | b. the assistance of the State agency has been requested by the child's parent(s) or legal guardian(s), and | |
| 472(f)(2) | c. there is a written voluntary placement agreement, binding on all parties to the agreement, which specifies at a minimum the legal status of the child and the rights and obligations of the parents or guardians, the child and the State agency while the child is in placement. | |
| 1356.22(b)<br>472(e) | 2. Federal financial participation is claimed only for voluntary foster care maintenance expenditures made within the first 180 days of the child's placement in foster care unless there has been a judicial determination by a court of competent jurisdiction, within the first 180 days of the date of such placement, to the effect that the continued voluntary placement is in the best interests of the child. | |
| 1356.22(c)<br>472(g)(1)&(2) | 3. The State agency has established a uniform procedure or system, consistent with State law, for revocation by the parent(s) of a voluntary placement agreement and return of the child. | |
| 1355.20(a)<br>475(4)(A) | C. PAYMENTS<br><br>1. Foster care maintenance payments for a child in foster care may cover the cost of (and the cost of providing) food, clothing, shelter, daily supervision, school | |

| | | |
|---|---|---|
| | supplies, a child's personal incidentals, liability insurance with respect to the child, and reasonable travel to the child's home for visitation with family, or other caretakers. Local travel associated with providing the items listed above is also an allowable expense. In the case of child care institutions, such term must include the reasonable costs of administration and operation of such institutions as are necessarily required to provide the items described in the preceding sentences. | |
| 472(b)(1)&(2) | 2. Foster care maintenance payments are made only on behalf of an eligible child who is:<br>a. in the foster family home of an individual, whether the payments are made to such individual or to a public or private child placement or child care agency; or<br>b. in a child care institution, whether the payments are made to such institution or to a public or private child placement or child-care agency. Such payments are limited to include only those items that are included in the term "foster care maintenance payments" (defined in section 475(4) of the Act). | |
| 1355.20(a)<br>472(c)(1) | 3. Foster family home means, for the purpose of Title IV-E eligibility, the home of an individual or family licensed or approved as meeting the standards established by the State licensing or approval authority(ies) (or with respect to foster family homes on or near Indian reservations, by the tribal licensing or approval authority(ies)), that provides 24-hour out-of-home care for children. The term may include group homes, agency-operated boarding homes or other facilities licensed or approved for the purpose of providing foster care by the State agency responsible for approval or licensing of such facilities. Foster family homes that are approved must be held to the same standards as foster family homes that are licensed. Anything less than full licensure or approval is insufficient for meeting Title IV-E eligibility requirements. | |
| 1355.20(a)<br>472(c)(2) | 4. Child care institution means a private child care institution, or a public child care institution which accommodates no more than 25 children, and is licensed by the State in which it is situated or has been approved by the agency of such State or tribal licensing authority (with respect to child care institutions on or near Indian reservations) responsible for licensing or approval of institutions of this type as meeting the standards established for such licensing. This definition must not include detention facilities, forestry camps, training schools, or any other facility operated primarily for the detention of children who are determined to be delinquent. | |

| | | |
|---|---|---|
| 472(i)(1) | 5. Administrative costs associated with an otherwise eligible child who is in an unallowable facility or an unapproved or unlicensed relative home, and who is removed in accordance with section 472(a) from the home of a relative specified in section 406(a)(as in effect on July 16, 1996), shall be considered only for expenditures: | |
| 472(i)(1)(A) | a. for a period of not more than the lesser of 12 months or the average length of time it takes for the State to license or approve a home as a foster home, in which the child is in the home of a relative and an application is pending for licensing or approval of the home as a foster family home; or | |
| 472(i)(I)(B) | b. for a period of not more than 1 calendar month when a child moves from a facility not eligible for payments under this part into a foster family home or child care institution licensed or approved by the State. | |
| 472(i)(2) | 6. Administrative costs associated with a child who is potentially eligible for benefits under the State's approved Title IV-E state plan and at imminent risk of removal from the home, shall be considered for expenditures only if: | |
| 472(i)(2)(A) | a. reasonable efforts are being made in accordance with section 471(a)(15) to prevent the need for, or if necessary to pursue, removal of the child from the home; and | |
| 472(i)(2)(B) | b. the State agency has made, not less often than every 6 months, a determination (or redetermination) as to whether the child remains at imminent risk of removal from the home. | |
| 1356.21(j)<br>475(4)(B) | 7. Child of a minor parent in foster care. Foster care maintenance payments made on behalf of a child placed in a foster family home or child care institution, who is the parent of a son or daughter in the same home or institution, must include amounts which are necessary to cover costs incurred on behalf of the child's son or daughter. Said costs must be limited to funds expended on those items described in the definition of foster care maintenance payments. | |
| 1356.21(g) | D. CASE REVIEW SYSTEM<br>1. Case Plan<br>To meet the case plan requirements of sections 471(a)(16), 475(1) and 475(5)(A) and (D) of the Act, the State agency has promulgated policy materials and instructions for use by State and local staff to determine the appropriateness of and necessity for the foster care placement -of the child. The case plan for each child: | |

| | | |
|---|---|---|
| 1356.21(g)(1) | a. is a written document which is a discrete part of the case record, in a format determined by the State, which is developed jointly with the parent(s) or guardian(s) of the child in foster care; and | |
| 1356.(g)(2) | b. is developed within a reasonable period, to be established by the State, but in no event later than 60 days from the child's removal from the home; and | |
| 1356.21(g)(4) | c. includes a description of the services offered and provided to prevent removal of the child from the home and to reunify the family; and | |
| 475(1)(A) | d. includes a description of the type of home or institution in which the child is placed; and | |
| 475(1)(A) | e. includes a discussion of the safety and appropriateness of the placement and how the responsible agency plans to carry out the judicial determination made with respect to the child in accordance with section 472(a)(2)(A) of the Act; and | |
| 475(1)(B) | f. includes a plan for assuring that the child receives safe and proper care, and services are provided to the parent(s) in order to improve the conditions in the parent's (parents') home to facilitate the child's return to his/her own safe home or the permanent placement of the child; and | |
| 475(1)(B) | g. includes a plan for assuring that services are provided to the child and foster parents in order to address the needs of the child while in foster care; and | |
| 475(1)(B) | h. includes a discussion of the appropriateness of the services that have been provided to the child under the plan; and | |
| 475(1)(D) | i. where appropriate for a child 16 or over, includes a written description of the programs and services which will help such child prepare for the transition from foster care to independent living; and | |
| 1356.21(g)(5)<br>475(1)(E) | j. documents the steps to finalize a placement when the case plan goal is or becomes adoption or placement in another permanent home in accordance with sections 475(1)(E) and (5)(E) of the Act. When the case plan goal is adoption, at a minimum such documentation shall include child-specific recruitment efforts such as the use of State, regional, and national adoption exchanges including electronic exchange systems to facilitate orderly and timely in-State and interstate placements; and | |
| 1356.21(g)(3)<br>475(5)(A) | k. includes a discussion of how the case plan is designed to achieve a safe placement for the child in the least restrictive (most family-like) setting available and in close proximity to the home of the parent(s) when the case plan goal is reunification and a discussion of how the placement is consistent with the best interests and special needs of | |

| | | |
|---|---|---|
| | the child; and | |
| 475(5)(A)(i) | l. if the child has been placed in a foster family home or child-care institution a substantial distance from the home of the parent(s), or in a different State, sets forth the reasons why such a placement is in the best interests of the child; and | |
| 475(5)(A)(ii) | m. if the child has been placed in foster care in a State outside the State in which the child's parent(s) are located, assures that an agency caseworker on the staff of the State agency of the State in which the home of the parents of the child is located, of the State in which the child has been placed, or of a private agency under contract with either such State, visits the child in such foster home or institution no less frequently than every 6 months and submits a report on the visit to the State agency of the State where the home of the child's parent(s) is located; and | |
| 475(1)(C) | n. incorporates the health and education records of the child including the most recent information available regarding:<br>1. the names and addresses of the child's health and educational providers;<br>2. the child's grade level performance;<br>3. the child's school record;<br>4. assurances that the child's placement in foster care takes into account the proximity to the school in which the child is enrolled at the time of placement;<br>5. a record of the child's immunizations;<br>6. the child's known medical problems;<br>7. the child's medications; and<br>8. any other relevant health and education information concerning the child determined to be appropriate by the State agency. | |
| 1356.21(f) | 2. Case Review<br><br>The State Agency has a case review system which meets the requirements of sections 475(5) and 475(6) of the Act and assures that: | |
| 475(5)(B) | a. a review of each child's status is made no less frequently than once every six months either by a court or by an administrative review to:<br>1. determine the safety of the child, the continuing need for and appropriateness of the placement,<br>2. determine the extent of compliance with the case plan,<br>3. determine the extent of progress made toward alleviating or mitigating the causes necessitating the placement, and<br>4. project a likely date by which the child may be returned and safely maintained at home or placed for adoption or legal guardianship. | |

| | | |
|---|---|---|
| 475(6) | b. if an administrative review is conducted, the following requirements will be met:<br>1. the review will be open to the participation of the parents of the child, and<br>2. the review will be conducted by a panel of appropriate persons, at least one of whom is not responsible for the case management of, or delivery of services to either the child or the parents who are the subject of the review. | |
| 1356.21(h)<br>475(5)(C) | 3. Permanency Hearing<br>a. To meet the requirements of the permanency hearing, the State holds permanency hearings for all children under the responsibility for placement and care of the Title IV-E/IV-B State Agency, including children for whom the State claims Federal reimbursement for the costs of voluntary foster care maintenance payments. | |
| 1356.21(h)<br>475(5)(C) | b. The permanency hearing takes place within 12 months of the date the child is considered to have entered foster care (as defined within the meaning of 475(5)(F)) and not less frequently than every 12 months thereafter during the continuation of foster care. | |
| 1356.21(h)(2)<br>471(a)(15)(E)(i) | c. When a court determines that reasonable efforts to return the child home are not required, a permanency hearing is held within 30 days of that determination, unless the requirements of the permanency hearing are fulfilled at the hearing in which the court determines that reasonable efforts to reunify the child and family are not required. | |
| 1356.21(b)(3)<br>475(5)(C)<br>471(1)(15)(E)(i) | d. For the purposes of this requirement, a permanency hearing shall determine:<br>1. the permanency plan for the child that includes whether, and if applicable when, the child will be returned to the parent, or placed for adoption and the State will file a petition for termination of parental rights, or referred to legal guardianship, or (in cases where the State agency has documented to the State court a compelling reason for determining that it would not be in the best interest of the child to return home, be referred for termination of parental rights, or be placed for adoption, with a fit and willing relative, or with a legal guardian) placed in another planned permanent living arrangement;<br>2. in the case of a child who will not be returned to the parent, the hearing shall consider in-State and out-of-State placement options,<br>3. in the case of a child placed out of the State in which the home of the parent(s) of the child is located, the hearing shall determine whether the out-of State placement continues to be appropriate and in the best interests of the child, and,<br>4. in the case of a child who has attained age 16, the services needed to assist the child to make the | |

| | | |
|---|---|---|
| | transition from foster care to independent living.<br>5. in any permanency hearing held with respect to the child, including any hearing regarding the transition of the child from foster care to independent living, procedural safeguards shall be applied to assure the court or administrative body conducting the hearing consults, in an age-appropriate manner, with the child regarding the proposed permanency or transition plane for the child. | |
| 475(5)(C) | e. Procedural safeguards are also to be applied with respect to parental rights pertaining to the removal of the child from the home of his/her parents, to a change in the child's placement, and to any determination affecting visitation privileges of parents. | |
| 1356.21(h)(3) | f. If the State concludes, after considering reunification, adoption, legal guardianship, or permanent placement with a fit and willing relative, that the most appropriate permanency plan for a child is placement in another planned permanent living arrangement, the State will document to the court the compelling reason for the alternate plan. | |
| 1356.21(h)(4) | g. When an administrative body, appointed or approved by the court, conducts the permanency hearing, the procedural safeguards set forth in the definition of permanency hearing will be extended by the administrative body. | |
| 475(5)(D) | 4. Health and Education Records<br>a. A child's health and education records are reviewed and updated, and a copy of the record is supplied to the foster parent or foster care provider with whom the child is placed, at the time of each placement of the child in foster care.<br>b. The child's health and education records are supplied to the child at no cost at the time the child leaves foster care if the child is leaving foster care by reason of having attained the age of majority under State law. | |
| 1356.21(o)<br>475(5)(G) | 5. Notice<br>The State provides the foster parent(s) of a child and any pre-adoptive parent or relative providing care for the child with timely notice of and a right to be heard in any proceeding to be held with respect to the child during the time the child is in the care of such foster parent, pre-adoptive parent, or relative caregiver. Notice of and a right to be heard does not require the State to make the caregiver a party to the proceeding. | |
| 472(h)(1)<br>473(b)(1)(b)(2) | E. MEDICAL AND SOCIAL SERVICES<br>For purposes of Titles XIX and XX, any child with respect to whom foster care maintenance payments are made under this section will be deemed a dependent child as defined in | |

| | | |
|---|---|---|
| | section 406 of the Act (as so in effect 7/16/1996) and shall be deemed to be a recipient of aid to families with dependent children under Part A of this Title (as so in effect 7/16/1996). Titles XIX and XX services will be available to such child in the State in which the child resides. | |
| 1356.21(h)<br>471(a)(14) | F. SPECIFIC GOALS IN STATE LAW<br><br>1. The State agency formulates for each fiscal year, commencing with the fiscal year which begins October 1, 1983, a specific goal as to the maximum number of children (in absolute numbers or as a percentage of all children in foster care receiving assistance under a State Title IV-E program) who at any given time during the fiscal year will have been in foster care for over 24 months. The specific foster care goals required under section 471(a)(14) of the Act are incorporated into State law by statute or administrative regulation with the force of law.<br><br>2. The State agency will describe the steps that will be taken to achieve the specific goal established.<br><br>3. The specific goal for the first fiscal year will be established by the State in law on or before October 1, 1982. | |
| 1356.21(b)<br>471(a)(15)(A)&(B) | G. PREVENTIVE AND REUNIFICATION SERVICES<br><br>1. Reasonable efforts. The State makes reasonable efforts to maintain the family unit and prevent the unnecessary removal of a child from his/her home, as long as the child's safety is assured; to effect the safe reunification of the child and family (if temporary out-of-home placement is necessary to ensure the immediate safety of the child); and to make and finalize alternate permanency plans in a timely manner when reunification is not appropriate or possible. In determining reasonable efforts to be made with respect to a child and in making such reasonable efforts, the child's health and safety is the State's paramount concern. | |
| 471(a)(15)(C) | 2. If continuation of reasonable efforts as described in section 471(a)(15)(B) of the Act is determined to be inconsistent with the permanency plan for the child, reasonable efforts are made to place the child in a timely manner in accordance with the permanency plan including, if appropriate, through an interstate placement, and to complete whatever steps are necessary to finalize the permanent placement of the child. | |
| 1356.21(b)(1)(I)&(ii) | 3. Judicial determination of reasonable efforts to prevent a child's removal from the home.<br><br>a. When a child is removed from his/her home, the judicial determination, as to whether reasonable efforts were made or were not required to prevent the removal, is made no later than 60 days from | |

| | | |
|---|---|---|
| | the date the child is removed from the home.<br>b. If the determination concerning reasonable efforts to prevent the removal is not made as specified above, the child is not eligible under the Title IV-E foster care maintenance payments program for the duration of that stay in foster care. | |
| 1356.21(b)(2)(i) | 4. Judicial determination of reasonable efforts to finalize a permanency plan.<br>a. The State agency obtains a judicial determination that it has made reasonable efforts to finalize the permanency plan that is in effect (whether the plan is reunification, adoption, legal guardianship, placement with a fit and willing relative, or placement in another planned permanent living arrangement) within 12 months of the date the child is considered to have entered foster care in accordance with the definition at section 1355.20 of the regulations, and at least once every 12 months thereafter while the child is in foster care. | |
| 1356.21(b)(2)(ii) | b. If such a judicial determination regarding reasonable efforts to finalize a permanency plan is not made, the child becomes ineligible under Title IV-E from the end of the 12th month following the date the child is considered to have entered foster care or the end of the 12th month following the month in which the most recent judicial determination of reasonable efforts to finalize a permanency plan was made, and remains ineligible until such a judicial determination is made. | |
| 1356.21(b)(3)<br>471(a)(15)(D) | 5. Circumstances in which reasonable efforts are not required to prevent a child's removal from home or to reunify the child and family. Reasonable efforts to prevent a child's removal from home or to reunify the child and family are not required if the State agency obtains a judicial determination that such efforts are not required because: | |
| 1356.21(b)(3)(I)<br>471(a)(15)(D) | a. A court of competent jurisdiction has determined that the parent has subjected the child to aggravated circumstances (as defined in State law, which definition may include but need not be limited to abandonment, torture, chronic abuse, and sexual abuse); | |
| 1356.21(b)(3)(ii)<br>471(a)(15)(D) | b. A court of competent jurisdiction has determined that the parent has been convicted of:<br>1. murder (which would have been an offense under section 1111(a) of Title 18, United States Code, if the offense had occurred in the special maritime or territorial jurisdiction of the United States) of another child of the parent;<br>2. voluntary manslaughter (which would have been an offense under section 1112(a) of Title 18, United States Code, if the offense had occurred in the special maritime or territorial jurisdiction of the United States) of another child of the parent; | |

| | | |
|---|---|---|
| | 3. aiding or abetting, attempting, conspiring, or soliciting to commit such a murder or such a voluntary manslaughter; or<br>4. a felony assault that results in serious bodily injury to the child or another child of the parent; or, | |
| 1356.21(b)(3)(iii)<br>471(a)(15)(D) | c. The parental rights of the parent with respect to a sibling have been terminated involuntarily. | |
| 1356.21(b)(4)<br>471(a)(15)(F) | 6. Concurrent planning.<br>1. Reasonable efforts to finalize an alternate permanency plan may be made concurrently with reasonable efforts to reunify the child and family.<br>2. Reasonable efforts to place a child for adoption or with a legal guardian, including identifying appropriate in-State and out-of-state placements, may be made concurrently with reasonable efforts to reunify the child and family. | |
| 1356.21(b)(5) | 7. Use of the Federal Parent Locator Service.<br>The State agency may seek the services of the Federal Parent Locator Service to search for absent parents at any point in order to facilitate a permanency plan. | |
| 1356.21(i)(1) | H. TERMINATION OF PARENTAL RIGHTS<br>1. The State will file a petition (or, if such a petition has been filed by another party, seek to be joined as a party to the petition) to terminate the parental rights of a parent(s): | |
| 1356.21(i)(1)(i)<br>475(5)(F) | a. whose child has been in foster care under the responsibility of the State for 15 of the most recent 22 months. The petition must be filed by the end of the child's 15th month in foster care. In calculating when to file a petition for termination of parental rights, the State:<br>1. will calculate the 15 out of the most recent 22 month period from the date the child entered foster care as defined at section 475(5)(F) of the Act;<br>2. will use a cumulative method of calculation when a child experiences multiple exits from and entries into foster care during the 22 month period;<br>3. will not include trial home visits or runaway episodes in calculating 15 months in foster care; and,<br>4. only applies section 475(5)(E) of the Act to a child once if the State does not file a petition because one of the exceptions applies; | |
| 1356.21(i)(1)(ii) | b. whose child has been determined by a court of competent jurisdiction to be an abandoned infant (as defined under State law). The petition to terminate parental rights is made within 60 days of the judicial determination that the child is an abandoned infant; or, | |

| | | |
|---|---|---|
| 1356.21(i)(1)(iii) | c. who has been convicted of one of the felonies listed above. Under such circumstances, the petition to terminate parental rights is to be made within 60 days of a judicial determination that reasonable efforts to reunify the child and parent are not required. | |
| 1356.21(i)(2) | 2. The State may elect not to file or join a petition to terminate the parental rights of a parent of this section if:<br>a. at the option of the State, the child is being cared for by a relative;<br>b. the State agency has documented in the case plan (which must be available for court review) a compelling reason for determining that filing such a petition would not be in the best interests of the individual child;<br>c. the State agency has not provided to the family, consistent with the time period in the case plan, services that the State deems necessary for the safe return of the child to the home, when reasonable efforts to reunify the family are required. | |
| 1356.21(i)(3) | 3. When the State files or joins a petition to terminate parental rights, it concurrently begins to identify, recruit, process, and approve a qualified adoptive family for the child. | |
| 1355.20(a)<br>475(5)(F) | I. DATE CHILD CONSIDERED TO HAVE ENTERED FOSTER CARE<br>A child will be considered to have entered foster care on the earlier of:<br>1. the date of the first judicial finding that the child has been subjected to child abuse or neglect; or<br>2. the date that is 60 days after the date on which the child is removed from the home. | |
| 1356.21(d) | J. DOCUMENTATION OF JUDICIAL DETERMINATION<br>The judicial determinations regarding contrary to the welfare, reasonable efforts to prevent removal, and reasonable efforts to finalize the permanency plan in effect, including judicial determinations that reasonable efforts are not required, are explicitly documented and made on a case-by-case basis and so stated in the court order.<br>1. If the reasonable efforts and contrary to the welfare judicial determinations are not included as required in the court orders, a transcript of the court proceedings is the only other documentation accepted to verify that these required determinations have been made.<br>2. Neither affidavits nor nunc pro tunc orders will be accepted as verification documentation in support of reasonable efforts and contrary to the welfare judicial determinations. | |

| | | |
|---|---|---|
| | 3. Court orders that reference State law to substantiate judicial determinations are not acceptable, even if State law provides that a removal must be based on a judicial determination that remaining in the home would be contrary to the child's welfare or that removal can only be ordered after reasonable efforts have been made | |
| 1356.21(e) | K. TRIAL HOME VISITS<br><br>A trial home visit may not exceed six months in duration, unless the court orders a longer trial home visit. If a trial home visit extends beyond six months and has not been authorized by the court, or exceeds the time period the court has deemed appropriate, and the child is subsequently returned to foster care, that placement must then be considered a new placement and Title IV-E eligibility must be newly established. Under these circumstances, the judicial determinations regarding contrary to the welfare and reasonable efforts to prevent removal are required. | |
| 471(a)(24) | L. TRAINING<br><br>Before a child in foster care is placed with prospective foster parents, the prospective foster parents are adequately prepared with the appropriate knowledge and skills to provide for the needs of the child. As necessary, such preparation is continued after placement of the child. | |

back to top

| **Federal Regulatory / Statutory References** | **Requirement** | **State Regulatory, Statutory, and Policy References and Citations for Each** |
|---|---|---|
| | **SECTION 3. ADOPTION ASSISTANCE PAYMENTS** | |
| 473(a)(1)(A)<br>473(c) | A. ELIGIBILITY<br><br>1. Adoption assistance payments may be made to parents who adopt a child with special needs. A child will not be considered a child with special needs unless: | |
| 473(c)(1) | a. the State has determined the child cannot or should not be returned to the home of his or her parents; | |
| 473(c)(2)(A) | b. the State has first determined that a specific factor or condition exists with respect to the child (such as ethnic background, age, or membership in a minority or sibling group, or the presence of factors such as medical conditions or physical, mental or emotional disabilities) because of which it is reasonable to conclude that such child cannot be placed for adoption without providing adoption assistance or medical assistance under Title XIX; | |

| | | |
|---|---|---|
| | and | |
| 473(c)(2)(B) | c. a reasonable, but unsuccessful, effort has been made to place the child without providing assistance except where it would be against the best interests of the child due to such factors as the existence of significant emotional ties with prospective adoptive parents while in the care of such parents as a foster child. | |
| 473(a)(1)(B) | 2. Adoption assistance payments are made to adoptive parents who have entered into an adoption assistance agreement (see subsection C of this plan) with the State agency. | |
| 473(a)(2)(A) | 3. Adoption assistance payments are made with respect to an adoptive child who: | |
| 473(a)(2)(A)(i)(I) | a. was removed from the home of a relative specified in section 406(a) of the Act (as in effect on July 16, 1996) and placed in foster care in accordance with a voluntary placement agreement as provided under section 474 (or section 403, as in effect on July 16, 1996), or in accordance with a judicial determination to the effect that continuation in the home would be contrary to the welfare of the child; and<br><br>1. received AFDC, in that relative's home, under the State plan approved under section 402 of the Act (as in effect 7/16/96), or would have received AFDC under such plan had application been made, in or for the month the voluntary placement agreement was entered into or court proceedings leading to the judicial determination referred to in section 473(a)(2)(A)(i) were initiated; or<br>2. had been living with a relative specified in section 406(a) of the Act within six months before the month in which a voluntary placement agreement was entered into or court proceedings leading to the judicial determination referred to in section 473(a)(2)(A)(i), were initiated and would have received AFDC in that relative's home under the State plan approved under section 402 of the Act for that month, if in that month the child had been living with such relative and application had been made. | |
| 473(a)(2)(A)(i)(II) | b. meets all the requirements of Title XVI of the Act with respect to eligibility for supplemental security income benefits; or | |
| 473(a)(2)(A)(i)(III) | c. is a child whose costs in a foster family home or child-care institution are covered by the foster care maintenance payments being made with respect to the minor parent of the child as provided in section 475(4)(B); and, | |
| 473(a)(2)(A)(ii) | d. has been determined by the State pursuant to section 473(c) to be a child with special needs. | |

| | | |
|---|---|---|
| 473(a)(2)(B) | e. meets the requirements of section 472(a)(4) of the Act in any case in which the child is an alien as described in such section of the Act. | |
| 473(a)(2)(C) | 4. Any child who meets the following requirements will be treated as meeting the requirements to receive adoption assistance payments:<br>a. meets the requirements of section 473(a)(2)(A)(ii);<br>b. is determined eligible for adoption assistance payments under 473 of the Act with respect to a prior adoption;<br>c. is available for adoption because the prior adoption has been dissolved and the parental rights of the adoptive parents have been terminated or because the child's adoptive parents have died; and<br>d. fails to meet the requirements of section 473(a)(2)(A)(i) but will meet such requirements if the child is treated as if the child is in the same financial and other circumstances the child was in the last time the child was determined eligible for adoption assistance payments under section 473 of the Act and the prior adoption is treated as never having occurred. | |
| 473(a)(1)(B)(i) | B. PAYMENTS – AMOUNTS AND CONDITIONS<br>1. Payments will be made for non-recurring adoption expenses incurred by or on behalf of the adoptive parents in connection with the adoption of a child with special needs, directly through the State agency or through another public or nonprofit private agency, in amounts determined through an agreement with the adoptive parents, and | |
| 473(a)(1)(B)(ii) | 2. In any case where the child meets the requirements of section 473(a)(2) of the Act, the State may make adoption assistance payments to adoptive parents, directly through the State agency or through another public or nonprofit private agency, in amounts so determined through an adoption assistance agreement (see Section 3, item C of this plan). | |
| 473(a)(3) | 3. The amount of such payment:<br>a. will take into consideration the circumstances of the adopting parents and the needs of the child being adopted;<br>b. may be adjusted periodically with the concurrence of the adoptive parents to reflect changing circumstances; and<br>c. may not exceed the foster care maintenance payment which would have been paid during the period if the child with respect to whom the adoption assistance payment is made had been in a foster family home. | |

| | | |
|---|---|---|
| 1356.40(d) | 4. In determining eligibility for adoption assistance payments, there is no income eligibility requirement (means test) for the adoptive parents. | |
| 473(a)(4) | 5. Payments are terminated when the State determines that:<br>a. the child has attained the age of 18 (or, where the State determines that the child has a mental or physical disability which warrants the continuation of assistance, the age of 21), or<br>b. the parents are no longer legally responsible for the support of the child, or<br>c. the child is no longer receiving support from the adoptive parents. | |
| 473(a)(4) | 6. The adoptive parents are required to inform the State agency of circumstances that would make them ineligible for adoption assistance payments or eligible for adoption assistance payments in a different amount. | |
| 475(3) | C. ADOPTION ASSISTANCE AGREEMENT<br>1. An adoption assistance agreement is a written agreement, binding on all parties, between the State agency, other relevant agencies, and the prospective adoptive parents. | |
| 1356.40(b) | 2. The adoption assistance agreement meets the requirements of section 475(3) of the Act as stated below: | |
| 1356.40(b)(1) | a. is signed by the adoptive parents and a representative of the State agency and is in effect before adoption assistance payments are made under Title IV-E, but no later than the finalization of the adoption; | |
| 1356.40(b)(2)<br>475(3) | b. specifies the duration of the agreement; | |
| 1356.40(b)(3) | c. specifies the amount of the adoption assistance payments (if any) and the nature and amount of any other payments, services and assistance to be provided (including non-recurring adoption expenses in agreements that became effective on or after January 1, 1987, for expenditures incurred by the parents on or after that date); | |
| 473(b) | d. specifies the child's eligibility for Title XIX and Title XX; | |
| 475(3)(B) | e. specifies, with respect to agreements entered into on or after October 1, 1983, that the agreement remains in effect regardless of the State of residence of the adoptive parents; | |

| | | |
|---|---|---|
| 475(3) | f. contains provisions for the protection of the interests of the child in case the adoptive parents and child should move to another State while the agreement is in effect; and | |
| 1356.40(d) | g. for agreements entered into on or after October 1, 1983, if a needed service specified in the agreement is not available in the new State of residence, the State making the original adoption assistance payment remains financially responsible for providing the specified service(s). | |
| 473(b)(1-4) | D. MEDICAID AND SOCIAL SERVICES<br>1. For the purposes of Titles XIX and XX, any eligible child for whom there is an adoption assistance agreement in effect under section 473(a)(2) (whether or not adoption assistance payments are being made) is deemed to be a dependent child as defined in 406 of the Act and is deemed to be a recipient of AFDC under part A of Title IV of the Act (as in effect 7/16/96) in the State in which such child resides. Any child of such eligible child will be eligible for such services. | |
| 471(a)(21)(A)&(B) | 2. The State will provide health insurance coverage (through one or more State medical assistance programs), with the same type and kind of benefits as those which would be provided for children by the State under Title XIX, or a comparable State medical plan, for any child who has been determined to be a child with special needs, for whom there is in effect an adoption assistance agreement between the State and an adoptive parent or parents, and who the State has determined cannot be placed with an adoptive parent or parents without medical assistance due to special needs for medical, mental health or rehabilitative care. | |
| 471(a)(21)(C)&(D) | 3. In the event that the State provides such coverage through a State medical assistance program other than the program under Title XIX, and the State exceeds its funding for services under such other program, any such child is deemed to be receiving aid or assistance under the State plan under this part for purposes of section 1902(a)(10)(a)(i)(1); and in determining cost-sharing requirements, the State will take into consideration the circumstances of the adopting parent or parents and the needs of the child being adopted to the extent coverage is provided through a State medical assistance program, consistent with the rules under such program. | |
| 473A(b) | E. ELIGIBILITY FOR ADOPTION INCENTIVE FUNDING<br>To be eligible for adoption incentive funds in FY's 2001 through 2007, the State provides health insurance coverage to any child with special needs (as determined under section 473(c)) for whom there is in effect an adoption assistance agreement. | |

back to top

| Federal Regulatory / Statutory References | Requirement | State Regulatory, Statutory, and Policy References and Citations for Each |
|---|---|---|
| | **SECTION 4. GENERAL PROGRAM REQUIREMENTS** | |
| 471(a)(10) | A. STANDARDS FOR FOSTER FAMILY HOMES AND CHILD CARE INSTITUTIONS<br><br>The State agency has established or designated a State authority(ies) which is responsible for establishing and maintaining standards for foster family homes and child care institutions which are reasonably in accord with recommended standards of national organizations concerned with standards for such institutions or homes, including standards related to admission policies, safety, sanitation, and protection of civil rights. The standards so established are applied by the State to any foster family home or child-care institution receiving funds under Titles IV-E or IV-B. | |
| 1356.21(m)(1)&(2)<br>471(a)(11) | B. REVIEW OF PAYMENTS AND LICENSING STANDARDS<br><br>The State agency reviews at reasonable, specific, time-limited periods established by the State:<br><br>1. the amount of the payment made for foster care maintenance and adoption assistance to assure their continued appropriateness; and<br><br>2. the licensing or approval standards for child care institutions and foster family homes. | |
| 471(a)(12) | C. FAIR HEARINGS<br><br>The State agency has a system for granting an opportunity for a fair hearing (before the State agency) to any individual whose claim for benefits under this plan is denied or not acted upon with reasonable promptness. | |
| 471(a)(13) | D. INDEPENDENT AUDIT<br><br>The State Agency will arrange for a periodic and independently conducted audit, no less frequently than once every three years, of the Titles IV-E and IV-B programs. | |
| 471(a)(9) | E. CHILD ABUSE AND NEGLECT<br><br>The State agency will report to an appropriate agency or official known or suspected instances of physical or mental injury, sexual abuse or exploitation, or negligent treatment or maltreatment of a child receiving aid under Titles IV-B or IV-E under circumstances that indicate that the child's health or welfare is threatened. | |

| | | |
|---|---|---|
| 471(a)(25)&(26) | F. TIMELY INTERSTATE PLACEMENT OF CHILDREN<br><br>1. The State shall have in effect procedures for the orderly and timely interstate placement of children which provides that:<br><br>a. Within 60 days after the State receives from another state a request to conduct a study of a home environment for purposes of assessing the safety and suitability of placing a child in the home, the State shall, directly or by contract:<br><br>i. Conduct and complete the study; and<br>ii. Return to the other State a report on the results of the study which shall address the extent to which placement in the home would meet the needs of the child; and<br>iii. In the case of a home study begun on or before September 30, 2008, if the State fails to conduct and complete the home study within the 60-day period as a result of circumstances beyond the control of the State (such as failure by a Federal agency to provide the results of a background check, or the failure by an entity to provide completed medical forms, requested by the State at least 45 days before the end of the 60-day period), the State shall have 75 days (an additional 15 days beyond the original 60 days) to comply with the request provided the State documents the circumstances involved and certifies that completing the home study is in the best interests of the child.<br><br>b. The State is not required to complete within the applicable time period the parts of the home study involving the education and training of the prospective foster or adoptive parents.<br>c. The State shall treat any such report that is received from another State or an Indian tribe (or from a private agency under contract with another State) as meeting any requirements imposed by the State for the completion of a home study before placing a child in the home, unless, within 14 days after receipt of the report, the State determines, based on grounds that are specific to the content of the report, that making a decision in reliance on the report would be contrary to the welfare of the child; and<br>d. The State shall not impose any restriction on the ability of a State agency administering, or supervising the administration of, a State program operated under a State plan approved under this part to contract with a private agency for the conduct of such a home study. | |
| 471(a)(18)(A)&(B)<br><br><br><br>1355.38(a)(2)(iii) | G. REMOVAL OF BARRIERS TO INTERETHNIC ADOPTION<br><br>1. The State has a plan, approved by the Secretary not later than January 1, 1997, which provides that neither the State nor any other entity in the State that receives funds from the Federal Government and is involved in | |

| | | |
|---|---|---|
| | adoption or foster care placements may:<br>a. deny to any person the opportunity to become an adoptive or foster parent, on the basis of race, color, or national origin of the person, or of the child involved; or<br>b. delay or deny the placement of a child for adoption or into foster care, on the basis of race, color, or national origin of the adoptive or foster parent or the child involved; and<br>c. with respect to a State, maintains any statute, regulation, policy, procedure or practice that, on its face, is a violation as defined in sections 471(a)(18)(A) and (B) above. | |
| 1355.38(a)(5) | 2. Compliance with the Indian Child Welfare Act of 1978 (Pub.L.95-608) does not constitute a violation of section 471(a)(18). | |
| 471(a)(19) | H. KINSHIP CARE<br>The State considers giving preference to an adult relative over a non-related caregiver when determining a placement for a child, provided that the relative caregiver meets all relevant State child protection standards. | |
| 1356.30(a)<br>471(a)(20)(A) | I. SAFETY REQUIREMENTS<br>1. Safety requirements for foster care and adoptive home providers.<br>a. Unless an election provided for in paragraph (d) of this section was made, the State provides procedures for criminal records checks (including finger-print-based checks of national crime information databases (as defined in section 534(e)(3)(a) of Title 28, United States Code) for any prospective foster and adoptive parent before the parent may be finally approved for placement of a child regardless of whether foster care maintenance payments or adoption assistance payments are to be made on behalf of the child. | |
| 1356.30(b)<br>471(a)(20)(A)(i) | b. The State does not approve or license any prospective foster or adoptive parent, nor does the State claim FFP for any foster care maintenance or adoption assistance payment made on behalf of a child placed in a foster home operated under the auspices of a child placing agency or on behalf of a child placed in an adoptive home through a private adoption agency, if the State finds that, in any case involving a child on whose behalf such payments are to be made in which a criminal records check conducted in accordance with paragraph (a) of this section, a court of competent jurisdiction has determined that the prospective foster or adoptive parent has been convicted of a felony involving:<br>1. Child abuse or neglect;<br>2. Spousal abuse;<br>3. A crime against a child or children (including child pornography); or,<br>4. A crime involving violence, including rape, sexual | |

| | | |
|---|---|---|
| | assault, or homicide, but not including other physical assault or battery. | |
| 1356.30(c)<br>471(a)(20)(A)(ii) | c. The State does not approve or license any prospective foster or adoptive parent, nor claim FFP for any foster care maintenance or adoption assistance payment made on behalf of a child placed in a foster family home operated under the auspices of a child placing agency or on behalf of a child placed in an adoptive home through a private adoption agency, if the State finds, in any case involving a child on whose behalf such payments are to be made in which a criminal records check conducted in accordance with paragraph (a) of this section, that a court of competent jurisdiction has determined that the prospective foster or adoptive parent has, within the last five years, been convicted of a felony involving:<br>1. Physical assault;<br>2. Battery; or,<br>3. A drug-related offense. | |
| 1356.30(d)<br>471(a)(20)(B) | d. Criminal records checks.<br>1. The State may have elected not to conduct or require criminal records checks on prospective foster or adoptive parents by having:<br>a. Notified the Secretary in a letter from the Governor on or before September 30, 2005; or<br>b. Enacted State legislation.<br>2. Such an election removed the State's obligation to comport with paragraphs (b) and (c) of this section. | |
| 1356.30(e) | e. If the State opted out of the criminal records check requirement, the licensing file for that foster or adoptive family contains documentation that verifies that safety considerations with respect to the caretaker(s) have been addressed. | |
| 1356.30(f) | f. In order for a child care institution to be eligible for Title IV-E funding, the licensing file for the institution contains documentation which verifies that safety considerations with respect to the staff of the institution have been addressed. | |
| 471(a)(20)(C) | g. The State shall check any child abuse and neglect registry for information on any prospective foster or adoptive parent and on any other adult living in the home of such a prospective parent for such information, before the prospective foster or adoptive parent may be finally approved for placement of a child, regardless of whether foster care maintenance payments or adoption assistance payments are to be made on behalf of the child:<br>1. The State shall check any child abuse and neglect registry it maintains for such information.<br>2. The State shall request any other State in which any such prospective parent or other adult has resided in the preceding 5 years, to check any child abuse and neglect registry maintained by such other State for such | |

| | | |
|---|---|---|
| | information.<br>3. The State shall comply with any such request to check its child abuse and neglect registry that is received from another State. | |
| 471(a)(23)(A)&(B) | J. INTERJURISDICTIONAL ADOPTIONS<br>The State will not:<br>1. deny or delay the placement of a child for adoption when an approved family is available outside of the jurisdiction with responsibility for handling the case of the child; or<br>2. fail to grant an opportunity for a fair hearing, as described in section 471(a)(12), to an individual whose allegation of a violation of part (1) of this subsection is denied by the State or not acted upon by the State with reasonable promptness. | |
| 471(a)(22) | K. QUALITY STANDARDS<br>1. Effective January 1, 1999, the State has developed and implemented standards to ensure that children in foster care placements in public or private agencies are provided quality services that protect the safety and health of the children. | |
| 471(a)(24) | 2. The State will ensure that prospective foster parents are adequately trained with the appropriate knowledge and skills to provide for the needs of the child and that such preparation will be continued after the placement. | |

back to top

| **Federal Regulatory / Statutory References** | **Requirement** | **State Regulatory, Statutory, and Policy References and Citations for Each** |
|---|---|---|
| | **SECTION 5. GENERAL PROVISIONS** | |
| 471(a)(5) | A. PERSONNEL ADMINISTRATION<br>1. The State agency and the local agencies administering the Title IV-E program have established and will maintain methods of personnel administration in conformity with standards for a Merit System of Personnel Administration, prescribed in Title 5 CFR 900 by the U.S. Office of Personnel Management pursuant to section 208 of the Intergovernmental Personnel Act of 1970, as amended.<br>2. The State agency is implementing an affirmative action plan to assure equal employment opportunity in all aspects of personnel administration as specified in Title | |

| | | |
|---|---|---|
| | 5 CFR 900. The plan provides for specific action steps and timetables to assure such equal opportunity, and is available for review upon request. | |
| 471(a)(8) | B. SAFEGUARDING INFORMATION<br>1. Subject to section 471(c), the State agency has safeguards restricting use of or disclosure of information concerning individuals assisted under the State plan to purposes directly connected with: | |
| 471(a)(8)(A) | a. the administration of the Title IV-E plan or any of the State plans or programs under Parts A, B or D of Title IV or under Titles I, V, X, XIV, XVI (as in effect in Puerto Rico, Guam, and the Virgin Islands), XIX or XX, or the supplemental security income program under Title XVI; and | |
| 471(a)(8)(B) | b. any investigation, prosecution, or criminal or civil proceeding conducted in connection with the administration of any such plan or program; and | |
| 471(a)(8)(C) | c. the administration of any other Federal or federally assisted program which provides assistance (in-cash or in-kind) or services directly to individuals on the basis of need; and | |
| 471(a)(8)(D) | d. any audit or similar activity conducted in connection with the administration of any such plan or program by any governmental agency authorized by law to conduct such audit or activity. | |
| 471(a)(8)(E) | 2. The safeguards provided will prohibit the disclosure to any committee or legislative body (other than an agency referred to in section 471(a)(8)(D) with respect to an activity referred to in such clause) of any information which identifies by name or address any applicant for or recipient of assistance under Title IV-E of the Act. | |
| 471(a)(20)(C)(iii) | 3. The State shall have in place safeguards to prevent the unauthorized disclosure of information in any child abuse and neglect registry maintained by the State, and to prevent any such information obtained pursuant to section 471(a)(20)(C) from being used for a purpose other than the conducting of background checks in foster and adoptive placement cases. | |
| 471(c) | 4. In the use of child welfare records in State Court proceedings, section 471(a)(8) of the Act shall not be construed to limit the flexibility of a State in determining State policies relating to public access to court proceedings to determine child abuse and neglect or other court hearings held pursuant to Title IV-B or Title IV-E of the Act, except that such policies shall, at a minimum, ensure the safety and well-being of the child, parents, and family. | |

<table>
<tr><td>471(a)(6)</td><td>C. REPORTING<br><br>The State agency makes reports in such form and containing such information on the State's Title IV-E program as are required by the Secretary of the Department of Health and Human Services (HHS), and the State agency will comply with such provisions as the Secretary may from time to time find necessary to assure the correctness and verification of such reports.</td><td></td></tr>
<tr><td>471(a)(7)</td><td>D. MONITORING<br><br>The State agency monitors and conducts evaluations of activities carried out in the State's Title IV-E program.</td><td></td></tr>
<tr><td>1355.30</td><td>E. APPLICABILITY OF DEPARTMENT-WIDE REGULATIONS<br><br>The State agency will comply with all of the requirements of applicable regulations, including the regulations listed below:<br><br>1. 45 CFR Part 16 - Department Grant Appeals Process<br>2. 45 CFR Part 30 - Federal Claims Collection<br>3. 45 CFR Part 76 - Government Debarment and Suspension<br>4. 45 CFR Part 80 - Nondiscrimination<br>5. 45 CFR Part 81 - Hearings under Part 80<br>6. 45 CFR Part 84 - Nondiscrimination on basis of handicap<br>7. 45 CFR Part 91 - Nondiscrimination on basis of age<br>8. 45 CFR Part 92 - Administrative requirements for grants and cooperative agreements<br>9. 45 CFR Part 93 - New restrictions on lobbying<br>10. 45 CFR Part 95 - General Administration - Grant Programs (Public Assistance and Medical Assistance)<br>11. 45 CFR Part 97 - Consolidation of grants to the insular areas<br>12. Section 95.517 (supersedes section 205.150) - Cost Allocation Plans<br>13. Section 201.5 - Grants (except that ACYF shall supply appropriate forms and instructions)<br>14. Section 201.6 - Withholding/Reduction of FFP<br>15. Section 201.7 - Judicial Review<br>16. Section 201.15 - Deferral of Claims<br>17. Section 201.66 - Repayment of Federal Funds by Installments<br>18. Section 204.1 - Submittal of State Plans for Governor's Review<br>19. Section 205.5 - Plan Amendments<br>20. Section 205.10 - Hearings<br>21. Section 205.50 - Safeguarding Information<br>22. Section 205.100 - Single State Agency</td><td></td></tr>
<tr><td>1356.21(c)</td><td>F. AVAILABILITY OF STATE PLANS<br><br>The State plans and plan amendments for Titles IV-E and IV-B are made available by the State agency for public review and inspection.</td><td></td></tr>
<tr><td>1355.33(b)<br>1355.33(e)<br>1355.35(a)</td><td>G. OPPORTUNITY FOR PUBLIC INSPECTION OF REVIEW REPORTS AND MATERIALS<br><br>The State agency makes available for public review and</td><td></td></tr>
</table>

| | | |
|---|---|---|
| | inspection all statewide assessments, report of findings, and program improvement plans developed as a result of a full or partial child and family services review. | |

back to top

ATTACHMENT I

TITLE IV-E STATE PLAN – STATE OF ___________________________

## C E R T I F I C A T I O N

I hereby certify that I am authorized to submit amended pages for the State Plan on behalf of

___________________________________________________________
(Designated State Agency)

Date____________________________________ ________________________________________
(Signature)

________________________________________
(Title)

APPROVAL DATE____________________________________ EFFECTIVE DATE:________________________________________

________________________________________
(Signature, Associate Commissioner, Children's Bureau)

back to top

ATTACHMENT II

TITLE IV-E STATE PLAN – STATE OF ___________________________

## GOVERNOR'S CERTIFICATION
## TITLE IV-E of the SOCIAL SECURITY ACT

I certify that __________________________________________________________
(Name of Agency)

a. has the authority to submit the State plan under Title IV-E of the Social Security Act for Foster Care and Adoption Assistance; and

b. is the single State agency responsible for administering the plan or supervising the administration of the plan by local political subdivisions. It has the authority to make rules and regulations governing the administration of the plan that are binding on such subdivisions. The Title IV-E plan is mandatory upon the subdivisions and is in effect throughout the State.

| | |
|---|---|
| ______________________________ Date | ________________________________ (Signature) |

---

back to top

ATTACHMENT III

TITLE IV-E STATE PLAN – STATE OF ___________________________

---

## A S S U R A N C E

I hereby assure that the State agency administering the Title IV-E programs obtained the relevant sections of the Title IV-A State plan (as in effect in this State on July 16, 1996) and used them as the basis for making Title IV-E eligibility determinations. I certify that I am authorized to submit, as an appendix to this State's Title IV-E State plan, those relevant sections of the Title IV-A State plan.

On behalf of __________________________________________________________
(Designated State Agency)

Date______________________________ ________________________________
(Signature)

________________________________
(Title)

---

APPROVAL DATE______________________________ EFFECTIVE DATE:________________________________

________________________________
(Signature, Associate Commissioner, Children's Bureau)

back to top

[1] Statutory references refer to the Social Security Act. Regulatory references refer to Title 45 of the Code of Federal Regulations (CFR). back

Back to PI-07-02