# Exhibit 8

## *R.C. v. Hornsby*, No. 88-D-1170-N, slip op. (M.D. Ala. Apr. 19, 1989)

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

FILED

APR 19 1989

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF AL

R.C., By His Next Friend, THE ALABAMA DISABILITIES ADVOCACY PROJECT,

Plaintiff,

v.

CIVIL ACTION NO. 88-D-1170-N

ANDY HORNSBY, IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF THE ALABAMA DEPARTMENT OF HUMAN RESOURCES,

Defendant.

## MEMORANDUM OPINION

There is presently pending in this cause a motion to dismiss, for judgment on the pleadings, or in the alternative, for full or partial summary judgment filed herein by the defendant on December 7, 1988. In support of his motion, the defendant has submitted a memorandum brief. On January 24, 1989, the plaintiff filed a memorandum in opposition to the defendant's motion and requested oral argument. Subsequently, on March 3, 1989, the court heard oral argument on the defendant's pending motion.

### I. THE STANDARD FOR GRANTING SUMMARY JUDGMENT

Rule 56(c), Fed. R. Civ. P., provides that a summary judgment may be granted only:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

EXHIBIT
"2"

Accordingly, when considering a motion for summary judgment, the Court must refrain from deciding any material factual issues. Instead, the Court's sole function on a motion for summary judgment is to determine whether there exist issues of material fact to be tried and, if not, whether the moving party is entitled to a judgment as a matter of law. See Dominick v. Dixie Nat. Life Ins. Co., 809 F.2d 1559 (11th Cir. 1987); Tippens v. Celotex Corp., 805 F.2d 949 (11th Cir. 1986); Keiser v. Coliseum Properties, Inc., 614 F.2d 406 (5th Cir. 1980). Moreover, in performing this function, inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing summary judgment. In other words, all doubt as to the existence of a genuine issue of material fact must be resolved against the party moving for summary judgment. See United States v. Diebold, Inc., 369 U.S. 654 (1962); Tippens v. Celotex Corp., 805 F.2d 949; Carlin Communication, Inc. v Southern Bell Tel. & Tel. Co., 802 F.2d 1352 (11th Cir. 1986).

As to the burden of proof on a motion for summary judgment, it is clear that the movant bears the exacting burden of showing both that there is no actual dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Combs v. King, 764 F.2d 818 (11th Cir. 1985). In clarifying the proper allocation of this burden, the United States Supreme Court has stated that:

> [W]e are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the

trial on the merits. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -"whether there is [evidence] upon which a jury [could] properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." (Citations omitted.)

***

Thus, in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden....The question is whether a jury could reasonably find either that the plaintiff proved his case by the quality and quantity of evidence required by the governing law or that he did not.

***

Our holding,...[however] does not denigrate the role of the jury. It by no means authorizes trial on affidavits. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. (Citations omitted.) Neither do we suggest that the trial court should act other than with caution in granting summary judgment or that the trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial. (Citations omitted.)

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). See also Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

## II. DISCUSSION

This is an action brought by R.C.,[1] by his next friend, the Alabama Disabilities Advocacy Program ("ADAP"),[2] pursuant to 42 U.S.C. § 1983. R. C. is presently in state custody residing at Hickory House,[3] which is more than two hundred miles away from his family. R.C. has suffered and is continuing to suffer serious emotional problems and other injuries because he has been allegedly denied appropriate care and treatment by the Alabama Department of Human Resources ("ADHR"). More specifically, R. C. alleges in his complaint that his injuries are a direct result of the defendant's failure to maintain the systems intended to ensure that children in foster care who are emotionally disturbed or behaviorally disordered receive proper care, services, conditions, and placement. R. C. alleges that his experiences in the care of ADHR reflect a systematic failure by the defendant to maintain the system charged to his responsibility. Further, R.C. alleges that the defendant has failed to comply with federal, constitutional, and statutory law governing the program the

---

1 R.C. is an eight-year-old boy whose home is in Jefferson County, Alabama. His true name has not been divulged to protect his right of privacy.

2 The ADAP is a non-profit corporation that advocates on behalf of mentally ill and developmentally disabled adults and children. The ADAP has been designated by the State of Alabama to receive federal funds for advocacy activities pursuant to the Protection and Advocacy for Mentally Ill Individuals Act of 1986, 42 U.S.C. §§ 1080, et seq. It is an organization that has an interest in the welfare of children and, as far as this case is concerned, R.C. in particular.

3 Hickory House is a foster care facility operated by the State of Alabama at 1060 Government Street, Mobile, Alabama.

defendant is charged with operating.

In his motion, the defendant raises eleven separate grounds as bases for the court's granting summary judgment for the defendant in this cause. The court will address each of these grounds separately.

1. The Abstention Doctrine.

In essence, the defendant alleges that this court cannot exercise jurisdiction over this cause because the abstention doctrine, as articulated by the Supreme Court in the case of Younger v. Harris, 401 U.S. 37 (1971), is applicable. The defendant argues that Younger abstention requires this court to abstain because, according to the defendant, there is "an ongoing case in the family court in Jefferson County" and "the plaintiff had an opportunity to raise, through his counsel, any constitutional claims and have them addressed" in those proceedings.

Abstention is a judicially created doctrine through which federal courts decline to exercise their jurisdiction in order to prevent unnecessary friction between the federal and state governments. In essence, the philosophy of the abstention doctrine is that, under certain circumstances, federal district courts should decline to exercise jurisdiction over a particular cause in order to serve important countervailing state interests. Hawaii Housing Authority v. Midkiff, 467 U.S. 229 (1984); Allegheny County v. Mashuda Company, 360 U.S. 185 (1959). However, "[a]bstention is 'an extraordinary and narrow exception to the duty of a [federal] court to adjudicate a controversy

properly before it,' and...[a]bstention questions must be resolved by close attention to the facts of each case." Fields v. Rockdale County, Georgia, 785 F.2d 1558, 1560 (11th Cir. 1986) (quoting Allegheny County, 360 U.S. at 188-89). See also Baggett v. Bullitt, 377 U.S. 360 (1964). Accordingly, the question of when the doctrine of abstention ought to be invoked is a matter that involves the exercise of discretion. See Harmon v. Forsenius, 380 U.S. 528 (1965).

Consistent with its perception of abstention as a narrow exception to the general rule that federal district courts should exercise jurisdiction over cases properly before them, the Supreme Court has defined a limited number of situations in which abstention is appropriate. See Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, reh'g denied, 426 U.S. 912 (1976). Basically, there are three types of abstention, each motivated by a separate and distinct concern for comity and federalism, the important countervailing interests lying at the heart of the abstention doctrine. See Planned Parenthood League of Mass. v. Bellotti, 608 F. Supp. 800, 808 (D.C. Mass. 1985). First, there is the so-called Younger abstention, under which a federal court will abstain from hearing a case where there is a pending state court criminal or quasi-criminal action. See Younger v. Harris, 401 U.S. 37. Second, there is the so-called Pullman abstention, under which a federal court will abstain when there is an unsettled question of state law, the disposition of which may obviate the need to reach a federal constitutional question. See Railroad Comm'n of Texas v. Pullman Co., 312 U.S.

496 (1941). Third, there is the so-called Burford abstention, under which a federal court may abstain in order to avoid deciding an issue which would interfere with a state's attempt to establish or maintain a coherent state policy with respect to a matter of important state concern. See Burford v. Sun Oil Co., 319 U.S. 315 (1943).

In the instant case, the defendant relies on Younger abstention as a basis for this court not having jurisdiction over this cause. It is obvious to the court that the defendant misconstrues the application of the abstention doctrine by contending that abstention is a jurisdictional doctrine; it is not. Younger abstention is a limited doctrine of non-interference with a pending state court proceeding in which a federal claim can be fully adjudicated. In Younger, the Supreme Court established a rule designed to protect state courts from federal court interference with pending criminal proceedings. The Younger principle was expanded to include civil proceedings which were similar in nature to a criminal proceeding. See Juidice v. Vail, 430 U.S. 327 (1977); Huffman v. Pursue, 420 U.S. 592 (1975).

After hearing oral argument in this cause, the court is persuaded that the defendant does not understand the nature of the plaintiff's pending suit. It is apparent to the court that the plaintiff does not seek an injunction or any relief at all against any state court proceedings. The plaintiff seeks injunctive relief against the defendant for his alleged operation of a federally-funded system in violation of the federal laws governing the use of those funds and in violation of

constitutional law. Said another way, the plaintiff herein does not seek to interfere with state court custody determinations, procedures, or any other issue properly before a state court. The court understands this action to be directed toward the system for placement required to be established by federal statute which the plaintiff alleges is being administered in violation of federal statutory provisions and his constitutional rights.

The plaintiff in this case has asserted "system-wide" violations of his rights under federal statute as well as the Constitution. Plaintiffs have prevailed in other cases brought in federal courts on claims based on the exact federal statute upon which R.C. relies, 42 U.S.C. §§ 670 et seq., as well as constitutional claims. See L.J. v. Massinga, 838 F.2d 118 (4th Cir. 1988), cert. denied sub nom. Massinga v. L.J., 109 S. Ct. 816 (1989); Lynch v. King, 550 F. Supp. 325 (D. Mass. 1982), aff'd sub nom. Lynch v. Dukakis, 719 F.2d 504 (1st Cir. 1983); G. L. v. Zumwalt, 564 F. Supp. 1030 (W.D. Mo. 1983); Joseph A. v. New Mexico Dept. of Human Services, 575 F. Supp. 346 (D. N.M. 1982).

The defendant alleges that R.C. has an ongoing case in the family court in Jefferson County, which is a state circuit court. R.C. is represented in that proceeding by a court-appointed guardian ad litem. The defendant alleges that R.C. had an opportunity to raise, through his counsel, any constitutional claims and have them addressed in the state court proceedings. Therefore, the defendant argues, this court must abstain from entertaining this action. The proceedings in the Jefferson County

Family Court with respect to the custody of R.C. led to R.C.'s placement in ADHR's custody. However, as previously stated, the custody of R.C. is not a matter which he is contesting in this case. Accordingly, by exercising jurisdiction in this cause, there is no pending state court proceeding with which this court would be interfering. Further, the court agrees with R.C. that he has never had, nor could he have, an opportunity in the state court proceeding to raise the federal statutory and constitutional claims he raises herein. This court also doubts that the state juvenile court would have the authority to consider the issues which reflect systematic violations under the federal statutory scheme or to grant the relief sought by the plaintiff in this case.[4]

In conclusion, this court is of the opinion that it has jurisdiction over this cause and that Younger abstention simply is not applicable.

2. Whether the Plaintiff Has Stated a Claim or Cause of Action Under 42 U.S.C. § 1983.

---

4 The present case is not unlike Wyatt v. Stickney, 325 F. Supp. 781 (M.D. Ala. 1971), aff'd sub nom. Wyatt v. Aderholt, 503 F.2d 1305 (5th Cir. 1974), where the United States Court of Appeals for the Fifth Circuit found that where there had been a documented history of substandard practices by the Alabama Department of Mental Health, a federal district court could order the department to produce a plan to meet minimum constitutional standards for adequate care. The court in Wyatt considered whether such a holding would invade the province of decisionmaking reserved for the state legislature and found that it did not, stating that the state legislature is not free, "for budgetary or any other reasons, to provide a social service in a manner which will result in the denial of individuals' constitutional rights." Wyatt v. Aderholt, 503 F.2d at 1315.

In essence, the defendant argues that the plaintiff has failed to state a claim under 42 U.S.C. § 1983. In Parratt v. Taylor, 451 U.S. 527 (1981), the Supreme Court held that:

> [I]n any section 1983 action the initial inquiry must focus on whether the two essential elements to a section 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

Id. at 535.

After reading the complaint, it appears clear to the court that the plaintiff has alleged specific violations of his constitutional as well as federal statutory rights, and that the conduct in question was that of a person acting under color of state law. Both the constitutional rights violations and federal statutory rights violations are actionable under section 1983. Accordingly, there is no merit to the defendant's contention that the plaintiff has made only "a conclusory statement to the effect that a cause of action exist[s] under the [C]onstitution to a child in state custody to care and treatment and placement."

3. The Right to Be Free of Unwarranted Governmental Interference With One's Family.

In his brief, the defendant argues that such a constitutional right has never been established and that the plaintiff is required to allege a specific constitutional right that has been violated under 42 U.S.C. § 1983. This court disagrees with the defendant's premise. The constitutional right to be free of unwarranted governmental interference with the

integrity of one's family is a firmly and clearly established constitutional principle. Moore v. East Cleveland, 431 U.S. 494, 499 (1977); Stanley v. Illinois, 405 U.S. 645, 651 (1972); Pierce v. Society of Sisters, 268 U.S. 510 (1923); Meyer v. Nebraska, 262 U.S. 390 (1923); Gary W. v. State of Louisiana, 437 F. Supp. 1209, 1216 (E. D. La. 1976).

The associated, similarly well-established constitutional right involved in this cause of action is the so-called "least restrictive means" doctrine. This doctrine provides that when a state impinges on fundamental constitutional rights, it must do so in a manner least restrictive to the individual. See Shelton v. Tucker, 364 U.S. 479, 488 (1960); Lynch v. Baxley, 744 F.2d 1452, 1459 (11th Cir. 1984); Gary W., 434 F. Supp. at 1215, 1216-20.

In his complaint, R.C. describes in detail a series of events that have transpired since ADHR obtained custody of him. The complaint describes, inter alia, the failure by ADHR to properly treat R.C.; ADHR's failure to provide him with appropriate placement, services, and support relative to his condition; the failure of ADHR to provide proper care for R.C.'s medical and emotional needs; the improper placement of R.C. in the psychiatric unit of a hospital while giving him inappropriately large doses of psychotropic medications; and the upheaval forced upon R.C. when he was transferred from one restrictive setting to another, more than two hundred miles away from his family. As the complaint alleges, all of these things result directly from systematic problems within ADHR and from

ADHR's failure to maintain a system consistent either with the constitutional rights of its charges or the federal statutory scheme which funds it. This court is of the opinion that the plaintiff has stated a cause of action to be free of unwarranted governmental interference with his family.

4. The Right to Adequate Care and Treatment While in State Custody.

The defendant argues that the plaintiff has no constitutional right to adequate care and treatment while in state custody and, further, that even if he does, this cause of action should be dismissed because the plaintiff has failed to allege "deliberate indifference." In Taylor ex rel. Walker v. Ledbetter, 818 F.2d 791 (11th Cir. 1987) (en banc), the United States Court of Appeals for the Eleventh Circuit held that:

> [A] child involuntarily placed in a foster home is in a situation so analogous to a prisoner in a penal institution and a child confined in a mental health facility that the foster child may bring a section 1983 action for violation of fourteenth amendment rights.

Id. at 797.

In Youngberg v. Romeo, 457 U.S. 307, 315 (1982), the Supreme Court recognized a child's liberty interest in the safety of his environment and noted that the right to personal security constitutes a "historic liberty interest" protected substantively by the due process clause. A person who is involuntarily committed to a custodial setting has a right to safety, a right to be protected from injury, and a right to adequate care and treatment. Gary W., 437 F. Supp. at 1216. It is constitutionally

impermissible for the state to deprive a person of liberty for the purpose of helping that person and then fail to provide that help. See Youngberg, 457 U.S. 307; Ingraham v. Wright, 430 U.S. 651 (1977); O'Conner v. Donaldson, 422 U.S. 563 (1975); Doe v. New York City Dept. of Social Services, 649 F.2d 134 (2d Cir. 1981), cert. denied, 464 U.S. 864 (1983); Spence v. Staras, 507 F.2d 554 (7th Cir. 1974); Gary W., 434 F. Supp. 1209; New York State Ass'n for Retarded Children v. Carey, 393 F. Supp. 715, 719 (E.D. N.Y. 1975); Welsch v. Likens, 373 F. Supp. 487 (D. Minn. 1974), aff'd in part, vacated and remanded in part on other grounds, 550 F.2d 1122 (8th Cir. 1977). Accordingly, this court is of the opinion that R.C. has a constitutional right to adequate care and treatment while in the custody of ADHR.

5. The Plaintiff's Federal Statutory Claim.

R.C. alleges that the defendant has failed to comply with federal requirements of the Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. § 601 et seq., and that, therefore, his federal rights have been violated. The defendant makes several arguments concerning the federal statutory claim in his brief but begins by arguing that "no case law has been decided that allows a private cause of action against a state simply because a state receives federal funds to carry on certain of its programs" and that "compliance with a federal statute is not constitutionally required."

In Maine v. Thiboutot, 448 U.S. 1 (1980), the Supreme Court held that claims based solely on rights found in federal statutes are sufficient to state a private cause of action pursuant to 42

U.S.C. § 1983 when they are asserted by those individuals directly affected by a state's administration of the program in question. Clearly the rule set forth in Thiboutot is that section 1983 provides a private right of action to enforce federal statutes. In Middlesex County Sewerage Authority v. National Sea Clammers Ass'n, 453 U.S. 1 (1981), the Supreme Court carved out two "exceptions to the application of section 1983 to statutory violations." The Court articulated the inquiry with respect to whether the exceptions to the Thiboutot rule apply as being:

> (a) whether Congress had foreclosed private enforcement of that statute in the enactment itself and (b) whether the statute at issue was the kind that created enforceable "rights" under section 1983.

453 U.S. at 19. This court is of the opinion that neither of those exceptions is applicable to the present case.

The first exception is derived from Middlesex and Smith v. Robinson, 468 U.S. 992 (1984). In the statute at issue in Middlesex, Congress had provided a comprehensive enforcement mechanism which provided expressly for private citizens' actions for injunctive relief. The Court found, therefore, that this express remedial scheme provided by the statute would supplant remedies otherwise available under section 1983 and the Thiboutot rule. In Smith, the Court found a claim for attorney's fees under the Education of the Handicapped Act to be inappropriate where the statute expressly provided for a private right of action, but notably omitted a provision for the recovery of attorney's fees.

In Lynch v. Dukakis, 719 F.2d at 510-512, the United States Court of Appeals for the First Circuit expressly considered the first Middlesex exception to the Thiboutot rule and rejected the defendants' contention of its applicability with respect to the exact statute at issue in the present case.

The court in Lynch first discussed Thiboutot and the relationship of the Middlesex exceptions to it and then considered and explicitly rejected the assertion by the defendants therein that 42 U.S.C. § 671(b) (a provision authorizing the withholding or reduction of federal funds under Title IV-E for noncompliance by a state) was the sole, comprehensive remedy for a violation of the statute, to the exclusion of section 1983 actions. In its analysis, the Lynch court noted with approval the district court's application of Rosado v. Wyman, 397 U.S. 397 (1970), to the statutory scheme and argument at issue in Lynch.

In Rosado, the Supreme Court held:

> We have considered and rejected the argument that a federal court is without power to review state welfare provisions or prohibit the use of federal funds by the states in view of the fact that Congress had lodged in the Department of HEW the power to cut off federal funds for noncompliance with statutory requirements. We are most reluctant to assume Congress has closed the avenue of effective judicial review to those individuals most directly affected by the administration of its program.

d. at 420. The Lynch court considered Rosado together with the umerous other cases "implicitly and explicitly" holding that rights" under various provisions of the Social Security Act are nforceable under section 1983 and found that in none of those

myriad cases did a court find remedies analogous to those provided by section 671(b) (the section at issue in both Lynch and the present case) to be exclusive.

The court in Lynch concluded that:

> the [United States Supreme] Court has found remedies under the SSA to be exclusive only when the Act expresses such an intent...Section 671(b), while providing the Secretary authority to withhold funds from non-complying states, in no way purports to limit the availability of relief under any other provision.

Id. at 510. Finally, the Lynch court held that:

> nothing in the language or structure of Title IV-E suggests that Congress meant section 671(b) to be an exclusive remedy....[T]he district court properly concluded that Rosado v. Wyman in effect settled this issue long ago; and, to the extent that Title IV-E confers rights on individuals, section 1983 is available to remedy violations of these rights.

Id. at 512.

Other circuits have required a strong government showing in support of an argument that a statutory scheme is so comprehensive as to preclude section 1983 claims for statutory violations. See, e.g., Keaukaha-Panaewa Community v. Hawaiian Homes, 739 F.2d 1467 (9th Cir. 1984); Marvin H. v. Austin Independent School Dist., 714 F.2d 1348, 1357-58 (5th Cir. 1983); Powell v. Defore, 699 F.2d 1078 (11th Cir. 1983).

It appears to the court that there is no comprehensive enforcement mechanism present in 42 U.S.C. § 670 et seq., nor is there the clear intention by Congress that section 671(b) or any other related provision is intended to preclude section 1983 actions. Accordingly, it is the opinion of this court that the

first Middlesex exception to the Thiboutot rule is clearly inapplicable.

The second Middlesex exception to Thiboutot is derived from Pennhurst State School v. Halderman, 451 U.S. 1 (1981), in which the Supreme Court considered introductory language in the Developmental Disabilities Act ("DDA") and found that such language reflected Congressional intent that the provisions of that Act were not to be binding on the states nor a condition of receiving funds under the statute. The statute's provisions at issue in the instant case, however, are very different from the DDA and unambiguously make 42 U.S.C. § 670 et seq. binding on any state that accepts funds under the Act. See, e.g., the mandatory provisions of section 671(a)(15); section 671(a)(16); section 675(1); section 675(5)(a), (b), (c); section 671(a), (b). It is accordingly the opinion of this court that the second Middlesex exception to Thiboutot is equally inapplicable to this case. This court finds that R.C. clearly has a right to bring an action under a 42 U.S.C. § 1983 analysis for violations of provisions of the statute and to enforce his rights thereunder.

In his brief, the defendant further submits to the court hat:

> no circuit court of appeals, having reviewed the provisions of Public Law 96-272, 42 U.S.C. section 601 et seq., has found the statute to give rise to private rights, the denial of which is actionable in a claim for injunctive relief.

ee defendant's memorandum brief at p. 16.

Notwithstanding the defendant's assertion, the Fourth Circuit, in L.J. v. Massinga, 838 F.2d 118 (4th Cir. 1988), and the First Circuit, in Lynch v. Dukakis, 719 F.2d 504 (1st Cir. 1983), have made it abundantly clear that a private right of action exists with respect to violations of the statutory provisions at issue in this case. The plaintiff concedes, and this court agrees, that no Eleventh Circuit appellate decision has fully analyzed the issue and set forth a controlling principle of law. While the Eleventh Circuit, in Taylor ex rel. Walker v. Ledbetter, 818 F.2d 791 (11th Cir. 1987), made clear that a private right of action exists under section 1983 for a violation of constitutional rights in the foster care setting, and that a private right of action under section 1983 existed for a failure by state officials in Georgia to follow the mandates of the state child statutory scheme, there is no analysis of the right to maintain a private right of action under section 1983 for a violation of rights set forth in the federal statute. The only reference in Taylor to such a claim is found at page 800 of the court's opinion, where the court simply relies on the district court's opinion in finding "without merit plaintiffs' claim...based upon...42 U.S.C.A. § 601 and its regulations." This court agrees with the plaintiff that that language "can hardly be said to be any sort of dispositive exposition on the matter with respect to this circuit."

While this court agrees with the plaintiff that a private right of action is available under 42 U.S.C. § 1983, one could also be implied from the statute itself. In Cort v. Ash, 422 U.S.

66 (1975), the Supreme Court stated a four-part test for determining whether a private remedy is implicit in a statute:

> (1) the identity of the class for whose particular benefit the statute was passed, (2) the legislative history and purpose of the statute, (3) the existence of express statutory remedies adequate to serve the legislative purpose, and (4) the traditional role of the states in affording the relief claimed.

Id. at 78.

In the analogous context of federal anti-discrimination laws, virtually every court to apply the Cort test has found a private right of action. See, e.g., Daily Income Fund, Inc. v. Fox, 464 U.S. 523, 536 (1984); Guardians Ass'n v. Civil Service Comm'n of the City of N.Y., 463 U.S. 582 (1983) (private right of action found in Title VII of the Civil Rights Act, 42 U.S.C. § 2000 et seq.); Cannon v. University of Chicago, 441 U.S. 677 (1979) (private right of action found in Title IV of the Education Amendment of 1972, 20 U.S.C. § 1681 et seq.); NAACP v. Medical Center, Inc., 599 F.2d 1247, 1258 (3d Cir. 1979) (section 504 of the Rehabilitation Act, 29 U.S.C. § 794, creates a private right of action); Davis v. Southeastern Community College, 574 F.2d 1158, 1159 (4th Cir. 1978), rev'd on other grounds, 442 U.S. 397 (1979); Lloyd v. Regional Transportation Authority, 548 F.2d 1277 (2d Cir. 1977). This court is of the opinion that if the Cort factors are applied to the instant case, it is clear that the plaintiff may assert an implied private cause of action on behalf of foster care children under Title IV-E. Accordingly, this court finds that even if the private right of action were

not to exist pursuant to 42 U.S.C. § 1983, it would be implied pursuant to Cort v. Ash. By either analysis, the plaintiff herein has a private right of action to enforce Title IV of the Social Security Act.

6. The Doctrine of Qualified Good-Faith Immunity.

The defendant, relying on Harlow v. Fitzgerald, 457 U.S. 800 (1982), argues that he enjoys immunity from suit under the doctrine of qualified good-faith immunity. However, qualified good-faith immunity applies only in cases where a plaintiff seeks damages. See, e.g., Davis v. Scherer, 468 U.S. 183, 197 (1984). In reviewing the complaint filed by R.C., the court notes that this is an action solely for injunctive and declaratory relief and not for monetary damages. Accordingly, it is the opinion of this court that the defendant's assertion of qualified immunity is due to be rejected as to the constitutional rights and statutory rights violations alleged by R.C. in his complaint.

7. Indispensable Parties and

8. Standing of the Alabama Disabilities Advocacy Program to Bring This Action.

The defendant alleges that this action should be dismissed under Rule 19, Fed. R. Civ. P., for failure to join indispensable parties. R.C. concedes that his parents are not party plaintiffs to this action; the defendant contends that their presence is necessary for a complete resolution of the issues in this case. In conjunction with this issue, the defendant argues that ADAP should be dismissed as a party plaintiff herein. The court finds each of these arguments to be without merit.

Rule 17(c), Fed. R. Civ. P., provides that infants may sue through representatives. The rule specifically states that "an infant or incompetent person who does not have a duly appointed representative may sue by his next friend or by a guardian ad litem." Rule 17(c) authorizes suits on behalf of infants by anyone with an interest in the welfare of an infant who may have a grievance or a cause of action. See Child v. Beame, 412 F. Supp. 593 (S.D. N.Y. 1976). ADAP is clearly an organization that has an interest in R.C.'s welfare. Further, R.C.'s father apparently expressly authorized the filing of this action. The court sees no need to make R.C.'s father or mother indispensable parties to this cause when R.C.'s rights can be adequately represented by ADAP. Accordingly, this court is of the opinion that this cause was properly brought by R.C. through his next friend, ADAP. In addition, the court finds no reason why R.C.'s parents need be joined as indispensable party plaintiffs.[5]

9. Whether R.C. is Precluded by Res Judicata or Collateral Estoppel From Relitigating in This Court Issues Relating to the State Court Custody Proceeding.

The defendant asserts that this action is barred by the doctrines of res judicata and/or collateral estoppel. This court rejects the defendant's argument on the basis that there has been no state court proceeding in which the issues the plaintiff

---

Additionally, in the event the court ordered R.C.'s parents to be joined as party plaintiffs, such amendment would do away with the privacy of R.C. and his family, a right which R.C. has clearly sought to maintain by filing this action under a fictitious name.

raises in this cause have been raised or could have been raised. Accordingly, there is no proceeding the result of which could provide the effect of res judicata and/or collateral estoppel.

10. Eleventh Amendment Immunity.

The defendant asserts that this suit is barred by the eleventh amendment. However, as has been stated by the Eleventh Circuit Court of Appeals:

> The Eleventh Amendment does not insulate state officials acting in their official capacities from suit for prospective injunctive relief to remedy violations of federal constitutional law....The Eleventh Amendment also does not bar monetary relief, including costs, ancillary to the prospective injunctive relief.

Stevens v. Gay, 864 F.2d 113, 114 (11th Cir. 1989) (citations omitted) (emphasis in original). See also Edelman v. Jordan, 415 U.S. 651, 666-68 (1974); Ex parte Young, 209 U.S. 123 (1908). As R. C. seeks only prospective injunctive relief, his suit is accordingly not barred by the eleventh amendment.

11. Federal Jurisprudence Does Not Recognize Section 1983 Claims Based on Respondeat Superior or Supervisory Negligence.

While the court agrees with the defendant that there is no vicarious liability under section 1983, see Monell v. Dept. of Social Services, 436 U.S. 658, 694 (1978), this is not an action based on theories of respondeat superior or supervisory negligence. Further, R.C. represents to this court that it is anticipated that discovery in this action will expose examples of direct participation by the defendant in the violations outlined in the complaint, and that his role with respect to the agency and its programs will be clear. Accordingly, at the present time,

this case does not appear to present an issue with respect to respondeat superior liability.

Accordingly, for all of the above reasons, it is the opinion of this court that the defendant's motion to dismiss, for judgment on the pleadings, or, in the alternative, for full or partial summary judgment is due to be denied in all respects.

A separate order will accompany this memorandum opinion.

DONE this the 19th day of April, 1989.

Joel F. Dubina

UNITED STATES DISTRICT JUDGE