**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **SAM and TONY M., by Next Friend Gregory c. Elliot; CAESAR S., by Next Friend Kathleen J. Collins; DAVID T., by Next Friend Mary Melvin; BRIANA, ALEXIS, CLARE and DEANNE H., by Next Friend Gregory C. Elliott; and DANNY and MICHAEL B., by Next Friend Gregory C. Elliott; for themselves and those similarly situated** | : | |
| **v.** | : | **C.A. 07-241L** |
| **DONALD L. CARCIERI, in his official capacity as Governor of the State of Rhode Island; JANE HAYWARD, in her official capacity as Secretary of the Executive Office of Health & Human Services; and PATRICIA MARTINEZ, in her official capacity as Director of the Department of Children, Youth and Families** | : | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO FED. R. CIV. P. 12(b)(1)**

On January 24, 2008, this Honorable Court offered the parties the opportunity to submit legal memoranda analyzing the testimony of the three individuals calling themselves the "next friends" of Sam and Tony, Danny and Michael, Briana, Alexis, Clare and Deanna, Daniel T. and Caesar. The memoranda may also address any other issue relating to Fed.R.Civ.P. 12(b)(1). The Defendants submit this memorandum, in addition to their previously filed pleadings, in support of their position that the Amended Complaint should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.

PDF created with pdfFactory trial version www.pdffactory.com

**A. <u>Professor Gregory Elliott, Ms. Mary Melvin and Ms. Kathleen Collins Failed To Demonstrate That they Should be Permitted to File and Pursue This Legal Action As The "Next Friends" of Sam and Tony, Danny and Michael, Briana, Alexis, Clare and Deanna, Daniel T. and Caesar</u>.**

It is clear from the testimony of the self-proclaimed "next friends" that they have no personal knowledge regarding the named children's current placement, treatment and services and, therefore, they cannot speak to whether or not their decision to involuntarily subject those children to the jurisdiction of this Court is in each child's best interest. The supposed "next friends" have never seen any Family Court Orders addressing the children's placement or services. They have never seen DCYF case plans submitted to the Family Court that detail the children's lives. The self-proclaimed "next friends" have not spoken with the children's relatives or the Family Court appointed attorneys whose representation of the children they call into question. They have not confirmed the veracity of the allegations in the Amended Complaint or verified whether the needs and best interests of the children are being met. Despite this complete lack of personal information, the self-proclaimed "next friends" ask this Court to accept their "decision" that the children should be subjected to a federal lawsuit, which may compel them to publicly testify, that they can determine what is in the best interest for the children they've never met and that their lack of a significant relationship should not prohibit them from pursuing this case.

**i. Professor Gregory Elliott**

Professor Gregory Elliott filed this lawsuit on behalf of siblings Sam and Tony M., siblings Briana, Alexis, Clare[1], and Deanna H. and siblings Danny and Michael B. *See*

[1] On September 24, 2007, the Family Court approved the adoption of Briana, Alexis and Clare. Briana, Alexis and Clare's adoption contradicts the allegations in the Amended Complaint that



PDF created with pdfFactory trial version www.pdffactory.com

Amended Complaint at ¶¶ 34, 82 and 96. Professor Elliott, an associate professor of sociology at Brown University, seeks to be the legal "next friend" of five (5) of the named children despite his lack of real-life connection with any of the children that he has subjected to federal court litigation. Professor Elliott admitted that he does not know the real names of sisters Briana, Alexis, Clare or Deanna. *See* Exhibit H: Transcript January 24, 2008 hearing at Page 12. He admitted that he does not know the real names of brothers Sam and Tony. ***Id***. He admitted that he does not know the real names of brothers Danny and Michael. ***Id***. Professor Elliott has never met any of these children. ***Id***. He has never met any of the children's natural relatives. ***Id***. He has never communicated with anyone who has legal responsibility for the children, including the attorney appointed by the Family Court to protect the children's best interest. ***Id***. Based on the foregoing facts, Professor Elliott cannot make any representation that the children, their natural relatives, foster parents or CASA attorneys support the filing of this lawsuit on the children's behalf.

Professor Elliott has never reviewed any medical records for Briana, Alexis, Clare, Deanna, Sam, Tony, Danny and Michael. ***Id***. Professor Elliott has never reviewed the children's Family Court files. ***Id***. at 12-13. He has never reviewed the children's DCYF records. ***Id***. at 13. He has never reviewed the children's educational records. ***Id***. Professor Elliott admitted that he did not know the names of any of the Family Court judges who oversee each child's case. ***Id***. Professor Elliott had no idea where Deanna was living or whether she was in a pre-adoptive home. ***Id***. at 14.

---

"DCYF has left Briana, Alexis and Clare to languish without appropriate permanency services in an unlicensed and overcrowded foster home which DCYF knows will not be permanent and in which their safety is in constant jeopardy." Amended Complaint ¶80



PDF created with pdfFactory trial version www.pdffactory.com

Despite never meeting the children or reviewing their medical records, school records, DCYF case plans or Family Court orders, Professor Elliot claimed that "while there might be some discomfort that would involved, the amount of stress or discomfort that would be involved in their participation is so much less than the circumstances that they are under now that I think it would be important for them to take part in this case." ***Id***. at page 11. Professor Elliot's willingness to submit five children ranging in age from 1½ years old to 12 years old to federal court proceedings and discovery is an extremely presumptuous statement when he has absolutely no knowledge regarding the children's current placement or services and the only documents he has reviewed are the untested allegations in the Complaint and the Amended Complaint. In fact, subjecting these children to this lawsuit could just as well have a detrimental effect on them and their current placements. Professor Elliot, of course, has no way to evaluate the amount of "stress and discomfort" those actions would inflict on these children.

**ii. Ms. Mary Melvin**

The second "next friend" is Mary Melvin who seeks to pursue this lawsuit on behalf of fourteen (14) year old David T. Ms. Melvin served as David T.'s foster parent more than ten (10) years ago and took him for a few day outings immediately after the foster placement ended. ***Id***. at 16, 22. She acknowledged that she has not had any contact with David T. for approximately ten years. ***Id***. Ms. Melvin has not had any contact with any of David's natural relatives for the past ten years. ***Id***. at 23. Ms. Melvin has had no access to David's DCYF records or Family Court's records for David for the past ten years. ***Id***. at 22-23. She has not seen David's medical or educational records for the past ten years. ***Id***. at 23. Ms. Melvin does not know even where David currently resides or where he is attending school. ***Id***. at 26-27.



PDF created with pdfFactory trial version www.pdffactory.com

During the time Ms. Melvin served as David's foster mother she drove him to the Family Court but did not have direct contact with the Family Court. ***Id***. at 23. Ms. Melvin has never raised any complaints with the Family Court regarding David, while serving as his foster mother or any time thereafter. ***Id***. at 23-24. Based on her own personal knowledge of David, she has no complaint with the way the Family Court handled his case. ***Id***. at 24. Ms. Melvin was not aware that the Family Court had appointed legal counsel to protect David's best interest. ***Id***. at 25. She has no idea what documents the Family Court reviewed for David over the last year. ***Id***. at 26. She has no criticism of any decisions the Family Court has made for David over the last year. ***Id***. Ms. Melvin was aware that the Family Court could also help David. ***Id***. at 28.

Ms. Melvin indicated that her understanding of this lawsuit was that it "was about making things better for the children, like David." ***Id***. at 18-19. She testified that if David didn't understand what the lawsuit was about she would try to help him understand. ***Id***. at 20. However, Ms. Melvyn did not have any idea whether or not this federal court action could affect David's schooling. ***Id***. at 27. Additionally, Ms. Melvin testified that she did not see how this action could affect David's placement. ***Id***. at 28. Based on her testimony, it is clear that Ms. Melvin has never spoken with David, his natural relatives or his CASA attorney regarding the institution of this lawsuit and cannot represent to this Court that they support the filing of this lawsuit on David's behalf. Additionally, based on her testimony, it is not certain that Ms. Melvin is cognizant of the specific civil rights violations alleged, what action is sought on David's behalf or that David could be compelled to testify publicly or be bound by adverse rulings of this Court.



PDF created with pdfFactory trial version www.pdffactory.com

**iii. Ms. Kathleen Collins**

Kathleen Collins seeks to be the next friend for Caesar. Ms. Collins serves as a school psychologist for two elementary schools in the Providence School Department. ***Id***. at 31-32. During the 2006-2007 school year, Ms. Collins had thirty (30) to thirty-six (36) children to whom she provided services and counseling. ***Id***. at 45. In addition, Ms. Collins had "some responsibility" for approximately seven hundred (700) school children. ***Id***. at 45-46. Caesar was a student in one of these schools for the 2006-2007 school year. ***Id***. at 33-35. During the entire 2006-2007 school year, Ms. Collins worked with Caesar approximately twelve times on an individual basis, assisted in evaluating him for a special education referral and participated in an individualized planning meeting. ***Id***. at 34. Ms. Collins stated that she observed Caesar at school. ***Id***. Ms. Collins did not have any idea of the details that brought Caesar into DCYF's care. ***Id***. at 52.

Ms. Collins admitted that the first time she met Caesar was in September 2006. ***Id***. at 46. She had no interaction with him prior to that date. ***Id***. She had no involvement with DCYF's records relating to Caesar prior to that date and had no involvement with this child's medical records prior to that date. ***Id***. She did not know Caesar's guardian ad litem. ***Id***. at 46-47. Ms. Collins did not have any involvement with the Family Court during the year Caesar was part of her caseload. ***Id***. at 47. She never brought a complaint to the Family Court about Caesar. ***Id***.

Ms. Collins had contact with Caesar's DCYF caseworker approximately five (5) times during the school year. ***Id***. at 47. The contact concerned "largely planning for special education, to express concerns for his needs and what DCYF's role might be in addressing some of those needs that the school could not address." ***Id***. at 53. When asked whether she voiced complaints



PDF created with pdfFactory trial version www.pdffactory.com

to Caesar's caseworker, Ms. Collins responded that she "made suggestions as to what his needs might be." ***Id***. at 48. Ms. Collins specifically requested that DCYF "seek counseling, a private or at least a community-based counseling service for him, some therapy to deal with some of his attachment issues and difficulties with his behaviors." ***Id***. at 54. When questioned by Plaintiffs' counsel whether those suggestions were ever taken up, Ms. Collins responded "I received an assent from the worker that she would seek those services, and I believe that she did make an attempt to garner those services." ***Id***. at 54.

During that school year Ms. Collins also had contact with the Office of Child Advocate – an organization she knew was an available resource to her as a school psychologist if she saw an issue with a child in DCYF custody. ***Id***. at 48. Her contact with the Office of Child Advocate was not with regards to Caesar. ***Id***. at 48. Ms. Collins also acknowledged her familiarity with the CANTS hotline – a DCYF phone number that would allow her to report allegations of abuse or neglect of a child. ***Id***. at 48-49. In fact, she has used the CANTS hotline before; however, she never called the CANTS hotline with regards to Caesar. ***Id***.

The last time Ms. Collins had contact with Caesar was in June 2007. ***Id***. Since that time Ms. Collins has not seen any DCYF records, medical records or educational records for Caesar. ***Id***. She has not had any contact with the Family Court relating to Caesar. ***Id***. She has no personal knowledge of how Caesar is doing in his current placement. ***Id***. at 50. Ms. Collins has no personal knowledge of Caesar's current medical treatment plan. ***Id***. Ms. Collins has no personal knowledge of Caesar's current educational plans. ***Id***. at 50. She has no idea what the Family Court did or did not approve for Caesar while he was part of her school caseload. ***Id***. at



PDF created with pdfFactory trial version www.pdffactory.com

53. She has no idea what the Family Court reviewed in arriving at its decisions for Caesar during that school year. ***Id***.

Ms. Collins summarized her "concerns" for Caesar, indicating that when he was five years old he did not have a permanent home and needed care and wasn't getting it (which seems to be a strange statement in light of her admission that she has no knowledge of what care or services Caesar is currently receiving). ***Id***. at 41. Ms. Collins indicated that she came to Federal Court because she wanted some things for Caesar. ***Id***. at 52. However, she has never addressed those "things" with the Family Court. ***Id***. As such, she has no idea whether the Family Court would be responsive to what she wanted for Caesar. ***Id***. Moreover, from Ms. Collins' testimony it is clear that the "suggestion" that she did give to Caesar's DCYF caseworker for counseling was pursued. Moreover, it is clear from Ms. Collins testimony that she has not spoken with Caesar, his natural relatives, his foster parents or guardian ad litem and cannot represent to this Court that they support the filing of this lawsuit on Caesar's behalf.

**iv. Legal Analysis of "Next Friends"**

Despite their lack of contact and knowledge, Plaintiffs Elliott, Melvin and Collins ask this Court to allow them to pursue this lawsuit on behalf of these seven children as their "next friends" pursuant to Fed.R.Civ.P. 17(c). Rule 17(c) provides that:

> Whenever an infant or incompetent person has a representative, such as a general guardian, committee, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person. An infant or incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other orders as it deems proper for the protection of the infant or incompetent person.



PDF created with pdfFactory trial version www.pdffactory.com

It is undisputed that Professor Elliott, Ms. Melvin and Ms. Collins are not general guardians, committees, conservators, guardians ad litem or other like fiduciary for the seven children. Thus, they have proclaimed themselves to be "next friends" solely to institute this lawsuit. Although Rule 17(c) does not expressly define "next friend", in *Whitmore v. Arkansas*, 495 U.S. 149, 163, 110 S.Ct. 1717, 1727, 109 L.Ed.2d 135 (1990) the United States Supreme Court provided guidance as to the characteristics a "next friend" should possess. The *Whitmore* Court explained that "[n]ext friend' standing is by no means granted automatically to whomever seeks to pursue an action on behalf of another." 110 S.Ct. at 1727. In determining "next friend" standing a court should consider the "next friend's" explanation why the real party in interest cannot appear on his own behalf to prosecute the action and whether the "next friend" is truly dedicated to the best interests of the person on whose behalf he seeks to litigate. *Id*. Federal Courts have suggested a third requirement that "a 'next friend' must have some significant relationship with the real party in interest." *Id*. "The burden is on the 'next friend' clearly to establish the propriety of his status and thereby justify jurisdiction of the court." *Id*.

This Court has substantial discretion on whether or not to appoint a "next friend" for an infant under Rule 17(c). *See Developmental Disabilities Advocacy Center, Inc. v. Melton*, 689 F.2d 281, 286 (1st Cir. 1982). It is clear that these three individuals do not have a "significant relationship", or in fact, any current relationship, with the children they seek to represent. Plaintiffs have asserted that it is the very nature of being in the foster care system that precludes the establishment of a "significant relationship." Defendants dispute that these children lack "significant relationships" in their lives – as is evidenced by the fact that Briana, Alexis and Clare were adopted. However, before even reaching the issue of whether a "significant



PDF created with pdfFactory trial version www.pdffactory.com

relationship" exists with the children, Professor Elliott, Ms. Collins and Ms. Melvin must satisfy this Court that they are truly dedicated to the best interests of the children they either have never met or have no current contact with but on whose behalf they now seek to litigate. These three individuals fail to meet this burden.

Professor Elliott, Ms. Collins and Ms. Melvin have a total lack of knowledge of the children's current lives. Professor Elliott, Ms. Collins and Ms. Melvin have not spoken to the seven children or their natural relatives regarding the filing of this lawsuit, the effect of it or what is sought to be accomplished for each individual child. Professor Elliott, Ms. Collins and Ms. Melvin have not voiced their concerns to the individual child's CASA or guardian ad litem or before the Rhode Island Family Court. The one "suggestion" Ms. Collins did convey to Caesar's DCYF caseworker was pursued. The total lack of knowledge as to the children's current lives or independent verification of the allegations in the Amended Complaint undercut Professor Elliott, Ms. Collins and Ms. Melvin's representations that they are truly dedicated to the best interests of the seven children. *See* *Carson P. ex rel. Foreman v. Heineman*, 240 F.R.D. 456, 519-529 (D.Ned. 2007)(The United States District Court for the District of Nebraska held that "[t]here is also reason to question the " good faith" motivation, initiative, fortitude, and dedication of these next friends to represent the named plaintiffs' interests. The record reflects that the next friends expended little, if any, effort to seek out sources and discover the current circumstances or the potential risk of harm faced by their assigned named plaintiff. They filed a complaint on behalf of the child without his knowledge; and as of the time their depositions were taken (at least three months after this suit was filed), they still lacked the information necessary to assess the state's current efforts on behalf of the child, and had little, if any, reliable information concerning the



PDF created with pdfFactory trial version www.pdffactory.com

circumstances and suitability of the child's current placement. Whatever concerns they did have were not voiced to the juvenile court, guardians ad litem, county attorneys, HHS caseworkers, or the Foster Care Review Board. The evidence currently before me indicates that while each next friend may have sincere empathy for her named plaintiff's plight, her goal in this litigation is system change on behalf of others and not advocating the individual interests of her named plaintiff." (Footnote omitted.))

The Defendants submit that the Amended Complaint should be dismissed. Professor Elliott, Ms. Collins and Ms. Melvin are not adequate "next friends" under Rule 17(c) or the United States Supreme Court's analysis in ***Whitmore***. Moreover, the appointment of a guardian ad litem does not cure the legal deficiencies of standing, lack of subject matter jurisdiction under ***Younger*** and ***Rooker-Feldman***, mootness, or the Child Advocate's legal inability to commence this lawsuit in federal court on behalf of the named children.

**B. The Child Advocate Does Not Have The Authority To File Or Pursue This Case in Federal Court.**

The Child Advocate, Jametta Alston, chose to submit the ten (10) named Plaintiff Children to the rigors of a federal court case. *See* Exhibit G: Transcript January 23, 2008 hearing at Page 5. There is no evidence that the natural relatives of the plaintiff children were informed of or agreed to have these children subjected to a federal lawsuit prior to its filing. There is no evidence that the children's Family Court appointed attorneys, statutorily charged with representing their best interests, were informed or agreed that it would be in the best interest of these children to be subjected to a federal court lawsuit. The Rhode Island Family Court was never advised by the Child Advocate that ten children under its original and exclusive jurisdiction were to be subjected to a federal court lawsuit that would claim numerous of the



PDF created with pdfFactory trial version www.pdffactory.com

Family Court's rulings placed the children in harm's way or permitted them to languish in foster care. Despite being encouraged by DCYF to make her concerns known to the Family Court at a hearing for three (3) of the named Plaintiff Children, Briana, Alexis and Clare, (See Exhibit F-1), Child Advocate Alston declined stating:

> …the Child Advocate recognizes the Family Court's authority to make decisions in individual cases and we will not interfere with the Court's decision-making process. Based upon the information that the Department of Children, Youth and Families has access to review, the Office of the Child Advocate would assert that it is your executive duty to make appropriate decisions regarding the children's permanency and safety as well as to fully inform the court and the children's CASA attorney of the housing situation as it currently exists at the proposed placement; and any danger that may be presented by individuals living in the home of the maternal aunt as noted in the records maintained by the Department.

*See* Exhibit F-2. Such a response is troubling when the Amended Complaint represents to this Court that "Briana, Alexis, Clare and Deanna have been and continue to be harmed," Briana and Alexis were returned to a clearly unsuitable home environment, in which they suffered further neglect and possible sexual abuse and "DCYF has left Briana, Alexis and Clare to languish without appropriate permanency services in an unlicensed and overcrowded foster home which DCYF knows will not be permanent and in which their safety is in constant jeopardy." *See* Amended Complaint ¶80. If these children were in harms way as is alleged in the Amended Complaint, the Family Court would have provided the Child Advocate with an immediate avenue to address and remedy it. Declining to take such action in order to pursue a more protracted process in Federal Court begs the question of whether securing the best interests of Sam and Tony, Danny and Michael, Deanna, Daniel T. and Caesar is the purpose of this lawsuit or are these children merely a vehicle to file a federal court action.



PDF created with pdfFactory trial version www.pdffactory.com

In response to questioning from this Court, the Child Advocate claimed that Rhode Island General Laws, specifically §42-73-7, permits her to file a legal action on behalf of children in any court or jurisdiction of her pleasing. *See* Exhibit G: Transcript January 23, 2008 hearing at Pages 5-7. The Defendants disagree. The Child Advocate's interpretation of R.I. Gen. Laws §42-73-7 is contrary to the tenets of statutory construction and results in a separation of powers issue. Accordingly, this Court must engage in statutory construction of R.I. Gen. Laws §42-73-7.

"A federal court that engages in the construction of a state statute must follow the state's rules of statutory construction." ***Huguenin v. Ponte***, 29 F.Supp.2d 57, 63 (D.R.I. 1998). "Absent any guidance as to the construction of this particular provision of state law, the Court proffers a reading that is consistent with the canons of statutory construction as applied by the Supreme Court of Rhode Island." ***Id***. Under Rhode Island law, where the language of a statute is clear and unambiguous, a court is required to give the words their plain and ordinary meaning. ***O'Neil v. Code Commission for Occupational Safety and Health***, 534 A.2d 606 (R.I. 1987). A rule of statutory construction is that "statutes relating to the same or similar subject matter should be construed such that they will harmonize with each other and be consistent with their general objective scope." ***Blanchette v. Stone***, 591 A.2d 785, 786 (R.I.1991). "This rule of construction applies even though the statutes in question [may] contain no reference to each other and are passed at different times." ***Id***. (quoting. *State v. Ahmadjian*, 438 A.2d 1070, 1081 (R.I.1981)) "Moreover, '[i]f a mechanical application of a statutory definition produces an absurd result or defeats legislative intent, this court will look beyond mere semantics and give effect to the purpose of the act."' *Sorenson v. Colibri Corp.*, 650 A.2d 125, 129 (R.I. 1994)(quoting ***Labbadia v. State***, 513 A.2d 18, 21 (R.I.1986)).



PDF created with pdfFactory trial version www.pdffactory.com

The Rhode Island Family Court has "exclusive original jurisdiction" over abused, neglected[2] and dependent children. ***R.I. Gen. Laws §14-1-5***. The Family Court retains such jurisdiction over such children until they reach eighteen years of age. ***R.I. Gen. Laws §14-1-6(a)***. The Rhode Island Legislature spoke in a clear and distinct voice in granting the Family Court such extensive control and authority over abused and neglected children.

Despite the plain language of R.I. Gen. Laws §14-1-5, the Child Advocate claims that the forum and jurisdiction to vindicate abused and neglected children is of her choosing based on R.I. Gen. Laws §42-73-7(6) which provides that "the child advocate shall perform the following duties .. [t]ake all possible legal action including, but not limited to programs of public education, legislative advocacy, and formal legal action to secure the legal, civil, and special rights of children subject to provisions of §42-73-9.1 and chapter 72 of this title." The Child Advocate ignores the phrase "subject to the provisions of §42-73-9.1 and chapter 72 of this title" that ends subsection (6) of §42-73-7. This very important phrase limits the forum where the Child Advocate may bring suit.

In line with the plain and ordinary language of R.I. Gen. Laws §42-73-7(6), the Child Advocate may file a legal action on behalf of a child under R.I. Gen. Laws §42-73-9.1. Specifically, §42-73-9.1 provides that:

> (a) In addition to the powers set forth in § 42-73-9, the child advocate**,** or his or her designee, ***<u>shall have the power to commence in the superior court a civil action</u>*** against the state pursuant to the provisions of chapter 25 of title 12 on

[2] "Neglected" includes "abused" as it is defined as "a child who requires the protection and assistance of the [family] court when his or her physical or mental health or welfare is harmed or threatened with harm when the parents or guardian: (i) fails to supply the child with adequate food, clothing, shelter, or medical care, through financially able to do so or offered financial or other reasonable means to do so; (ii) Fails to provide the child proper education as required by law; or (iii) Abandons and/or deserts the child." ***R.I. Gen. Laws §14-1-3(8).***



PDF created with pdfFactory trial version www.pdffactory.com

> behalf of any child the custody of whom has been assigned to any institution or agency under the control of the department of children, youth, and families or other private agency or provided in § 14-1-34.
>
> (b) Any judgment for compensation or order for settlement of the claim for compensation entered by the court pursuant to the provisions of § 12-25-3 shall be considered as the estate of the child for whose benefit the judgment or order is entered, to be held by the office as guardian of that compensation, and shall be deposited into a trust account established by the office for the purposes of distributing those funds to the child in accordance with the plan adopted by the family court pursuant to the provisions of § 14-1-35.1.

Emphasis Added. Thus, Rhode Island law permits the Child Advocate to file a civil action in the Rhode Island Superior Court on behalf of a child and assist in the recovery under the "Criminal Injuries Compensation Act", Title 12, Chapter 25.

In line with the plain and ordinary language of R.I. Gen. Laws §42-73-7(6), the Child Advocate may file a legal action on behalf of a child or children under chapter 72 of title 42. Chapter 72 repeatedly refers to the Rhode Island Family Court and its authority over abused and neglected children. Specifically, R.I. Gen. Laws §42-72-15 entitled the "Children's bill of rights" provides, in pertinent part:

> (a) No child placed or treated under the supervision of the department in any public or private facility shall be deprived of any personal property or ***civil rights***, except in accordance with due process.
>
> * *
>
> (m) Any child aggrieved by a violation of the children's bill of rights ***may petition the family court for appropriate equitable relief***. ***The family court shall have exclusive original jurisdiction***, notwithstanding any remedy contained in chapter 35 of this title.

Emphasis Added. Moreover, Chapter 73, which creates the Office of Child Advocate and describes its powers and responsibilities, acknowledges the Family Court's jurisdiction in §42-



PDF created with pdfFactory trial version www.pdffactory.com

73-10, which provides:

> All records of the child advocate pertaining to the care and treatment of a child shall be confidential. Information contained in those records may not be disclosed publicly in any manner that would identify individuals, but records shall be available to persons approved, upon application for good cause, by the ***family court***. Emphasis Added.

and §42-73-7 (8), which provides that the Child Advocate shall "[r]eview orders of the family court relating to juveniles with power to request reviews as required by the best interests of the child."

If the legislature intended to empower the Child Advocate to bring suit on behalf of a child in any forum, it would not have specifically enumerated the Child Advocate's power to take legal action in Superior Court in 42-73-9.1. Nor would have the legislature made specific references to the forum of Family Court in sections 42-73-10, 42-73-7(8), and 42-72-15(m). Thus, state law limits the Child Advocate's power to take formal legal action on a child's behalf in only these state court forums

As further evidence that Family Court is the appropriate jurisdiction for the Child Advocate to raise her concerns is the Rhode Island Supreme Court's decision ***In re R.J.P.***, 445 A.2d 286 (R.I.1982). In that case, the child advocate filed a motion with the Family Court requesting authorization to file a petition alleging that the child R.J.P. was dependent, neglected and/or abused. 445 A.2d at 286. The Rhode Island Supreme Court held that the child advocate had the authority to file such a petition before the Family Court as he/she is an "appropriate person" under R.I. Gen. Laws §14-1-10. In arriving at its decision, the Supreme Court reasoned:

> Although the Child Advocate is not specifically listed by designation in § 14-1-3(I), he is the head of an agency which meets the requirements set forth in § 14-1-3(I)(5). It is clear that the Office of Child Advocate was established for purposes similar to those specified in G.L.1956 (1969 Reenactment) §§ 8-10-2



PDF created with pdfFactory trial version www.pdffactory.com

> and 14-1-2. *Therefore, we are of the opinion that the Legislature intended to include the Child Advocate among those who can bring information to the Family Court* to initiate a preliminary investigation and those who can file a petition alleging that the child is dependent, neglected, and/or abused. *Thus, the Child Advocate is an "appropriate person" for purposes of §§ 14-1-10 and 14-1-11. We reach this conclusion by relying upon the history of the statute and the reasons for the creation of the Office of the Child Advocate. We note that the Child Advocate is required by the Legislature "[t]o take all possible action * * * to secure and ensure the legal, civil and special rights of children * * *." General Laws 1956 (1977 Reenactment) § 42-73-7(6), as enacted by P.L.1979, ch. 248, § 2.* Also, the Legislature has specifically stated that the Child Advocate in performing his duties, one of which is the bringing of formal legal action on behalf of children, must act independently of DCF. Section 42-73-5. The trial justice therefore did not err in allowing the Child Advocate to file a petition alleging that R.J.P. was a dependent, neglected, and/or abused child.

***Id***. at 288. Emphasis Added. Based on the Rhode Island Supreme Court's reasoning in ***In re R.J.P.***, and the basic tenets of statutory construction, the Family Court is the forum where the Legislature intended the Child Advocate to seek full legal redress for abused, neglected and/or dependent children as to placement, services, etc.

To interpret R.I. Gen. Laws §42-73-7(6) as permitting Child Advocate Alston to file a legal action in federal court in order to review Rhode Island Family Court's decisions for abused and neglected children would result in a separation of powers quandary. In the context of the instant case, Child Advocate Alston is challenging the placements and services rendered to the seven named children. As such, Child Advocate Alston is, by the very essence, challenging the Family Court's orders directing or approving the placements and services. Based on the foregoing statutory analysis, it is clear that the legislature empowered the Child Advocate, as a member of the executive branch independent of DCYF, to advocate for the children of Rhode Island in Family Court. As such, the Child Advocate's pursuit of this federal lawsuit is an attempt to make an end run around the Family Court, thereby usurping the judicial branch's



PDF created with pdfFactory trial version www.pdffactory.com

authority. Interpreting §42-73-7(6) as the Child Advocate suggests is improper and violates separation of powers. *See Taylor v. Place*, 4 R.I. 324 (1856)*; In re Opinion of the Justices (Dorr)*, 3 R.I. 299 (1854)

Accordingly, based on the basic tenets of statutory construction and to avoid a separation of powers conflict, R.I. Gen. Laws §42-73-7(6) must be interpreted as granting the Child Advocate to take legal action before the Rhode Island Family Court and in the very limited circumstances of seeking recovery under the "Criminal Injuries Compensation Act" of title 12, chapter 25 before the Superior Court.

**C. This Court Should Abstain Under The *Younger* Doctrine and Dismiss the Amended Complaint for Lack of Subject Matter Jurisdiction Pursuant Fed. R. C.P. 12(b)(1).**

This Honorable Court lacks subject matter jurisdiction over the Plaintiffs' Amended Complaint as the ***Younger*** Doctrine compels abstention. Federal injunctive relief issued in this case would most definitely interfere with not only the ongoing proceedings before the Rhode Island Family Court for each of the seven named children. Rhode Island's child welfare system and the oversight and involvement of the Rhode Island Family Court are important state interests. The federal claims cited in the Amended Complaint could be raised before the Family Court.

One of the seminal cases calling for a Federal Court to abstain from interfering with a pending state court case is ***Younger v. Harris***, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). "'Although ***Younger*** concerned state criminal proceedings, its principles are 'fully applicable to noncriminal judicial proceedings when important state interests are involved.'" *31 Foster Children v. Bush, 329 F.3d 1255, 1274 (11th Cir. 2003(quoting Middlesex County Ethics Comm.*



PDF created with pdfFactory trial version www.pdffactory.com

*v. Garden State Bar Ass'n,* 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982)). "'Proceedings necessary for the vindication of important state policies or for the functioning of the state judicial system ... evidence the state's substantial interest in the litigation.'" *31 Foster Children, 329 F.3d at 1274 (quoting Middlesex*, 102 S.Ct. at 2521).

Under the *Younger* Abstention Doctrine, a federal court will abstain from assuming jurisdiction over a case when the requested relief would interfere (1) with an ongoing state judicial proceeding; (2) that implicates an important state interest; and (3) that provides an adequate opportunity for the federal plaintiff to advance his federal constitutional challenge. *Rossi v. Gemma*. 489 F.3d 26, 34-35 (1st Cir. 2007). This three-part test is customarily referred to as the "*Middlesex* analysis" and is derived from the United States Supreme Court decision in *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*., 457 U.S. 423, 431, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). Where a case satisfies this three part test a district court has no discretion to provide injunctive relief and must abstain. *See Colorado River Water Conservation District v. United States*, 424 U.S. 800, 816 fn22, 96 S.Ct. 1236,1 246 fn.22, 47 L.Ed.2d 483 (1976).

Before reaching this three-part test, Plaintiffs attempt to disrupt the Court's *Younger* analysis by claiming that this lawsuit does not affect comity or implicate enforcement proceedings. These arguments are clearly wrong. The Plaintiffs erroneously claim that comity is not affected and *Younger* abstention is inappropriate because Rhode Island voluntarily agreed to federal oversight of its foster care system in exchange for federal funding. Defendants addressed this argument and explained its deficiencies in their Reply Memorandum at pages 30-31. Moreover, Plaintiffs' characterization of this lawsuit is inaccurate. Plaintiffs continuously



PDF created with pdfFactory trial version www.pdffactory.com

choose to ignore the Family Court's active role in the placements, services, reunification efforts and visitation decisions, the very subjects that the Amended Complaint alleges violated the named children's constitutional rights.

The Plaintiffs also allege that the ongoing child welfare proceedings before the Rhode Island Family Court are not the "enforcement proceedings" envisioned by ***Younger***. As explained more fully in the Defendants' Reply Memorandum at pages 32 to 38, both the United States Supreme Court and the First Circuit have likened state court actions surrounding allegations of abuse and neglect to "enforcement proceedings." *See* ***Moore v. Sims***, 442 U.S. 415, 423, 99 S.Ct. 2371, 2377, 60 L.Ed.2d 994, ___ (1979)(recognizing applicability of ***Younger*** doctrine to cases concerning state proceedings for temporary removal of child in child-abuse context); *McLeod v. Maine Department of Human Services*, 229 F.3d 1133, 2000 WL 869512 (1st Cir. 2000); *see also* *Malachowski v. City of Keene*, 787 F.2d 704(1st Cir. 1986). Thus, Plaintiffs' argument that ***Younger*** does not apply to the Rhode Island Family Court's proceedings for abused and neglected children must fail.

**i. The First Middlesex Factor**

The facts of this case clearly satisfy the three-prong Middlesex test. First, there are ongoing proceedings for each of the named children before the Rhode Island Family Court and injunctive relief will interfere with these proceedings. The Rhode Island Family Court plays a critically important function in child abuse and neglect cases from the outset. The Family Court is vested with the *exclusive original jurisdiction* to hear and determine "matters relating to delinquent, wayward, dependent, neglected, or mentally defective or mentally disordered children," as well as all matters regarding the guardianship and adoption of children in the



PDF created with pdfFactory trial version www.pdffactory.com

custody of DCYF. *See R.I. Gen. Laws* §*14-1-5*. *See also* *In re Alicia S.*, 763 A.2d 643, 645 (R.I. 2000). The stated purpose for the Family Court is "[t]o secure for each child under its jurisdiction care, guidance and control, preferably in his or her own home, that serves the child's welfare and the best interests…." *See R.I. Gen. Laws §14-1-2(1)*. Significant for purposes of this litigation is the number of duties imposed upon the Family Court with respect to abused or neglected children in the legal custody of the state.

If allegations of abuse and/or neglect are substantiated, the Department of Children, Youth and Families (hereinafter "DCYF") is empowered to file a petition in the Family Court, in which it may ask that the child be removed from the home, remain removed from the home or remain in the home. *See R.I. Gen. Laws §§ 14-1-11, 40-11-7*. The Family Court is vested with the authority to either grant or deny the petition for removal.

If the Family Court orders that the child be placed in DCYF's protective custody, the Court has explicit statutory authority to approve or direct the placement of abused or neglected children. For example, the Family Court has the authority to order the temporary placement of a child in the care of a relative within thirty (30) days of being placed in the care of DCYF. *See R.I. Gen. Law §14-1-27*. In addition, the Family Court may authorize the placement of such a child in private homes licensed by the DCYF, in the care of any agency or institution licensed for childcare or in the care of the parent, relative, or other suitable person upon such terms as the Court deems to be in the child's best interests. *See R.I. Gen. Laws §§ 14-1-27 and 14-1-34*. Even if the child is not removed from the home of the parent, the Family Court must still approve the continued placement of that child in the home. *See R.I. Gen Laws §14-1-32(1)*.



PDF created with pdfFactory trial version www.pdffactory.com

In cases where the Family Court orders the removal of a child from the home of a parent, it has several mandates. The Family Court shall, upon the filing of a petition, immediately take any action it deems necessary or appropriate for the protection of the child, or children, suspected of being abused or neglected, including the removal of the child, or children, from the custody of the parent or parents, or other person suspected of the abuse or neglect. *See R.I. Gen. Laws §40-11-7.1*. The Family Court must also conduct a hearing within seven (7) days from the filing of any petition to remove a child. *See R.I. Gen. Laws §40-11-7.1(b)*. During said hearing, the Family Court must also assure that a guardian ad litem or court appointed special advocate has been appointed to represent the interests of the child. *See R.I. Gen. Laws §40-11-7.1(b) (3)*.

As part of its continuing exclusive jurisdiction, the Family Court will preside over each child's case from a pre-adjudication stage, to trial, to Rule 17 case plan reviews, to permanency hearings, and even eventual adoption of the child in certain cases. *See R.I. Gen. Laws §40-11-12.1*. In fact, after the Rhode Island Family Court assumes exclusive jurisdiction over the child, the Family Court may retain said jurisdiction and continue to monitor the matter until that child reaches eighteen (18) years of age. *See R.I. Gen. Laws* §§*14-1-11 and 14-1-6.*

The Plaintiffs contend that although the Family Court conducts periodic reviews, the Family Court has no authority to issue specific orders[3] on behalf of abused and/or neglected

[3] Plaintiffs' contend at footnote 33 of their Opposition Memorandum that the Family Court cannot order the children to a specific placement. The exhibits produced in this case dispute Plaintiffs' suggestion. By way of examples, see A-23 (Family Court justice orders "child to be placed with "specific name", no unsupervised visits with child"), A-28 (A Family Court decree states "that said children shall be placed with ___ and _____ ________ as long as their home is suitable to accommodate the addition of 'Briana' and 'Alexis'" and "That visitation may take place daily at the home of the _______ from 5:00 to 7:00 p.m."), Exhibit C-7 (The Family Court justices orders that "child to be placed with Mom-as long as she lives in present home or DCYF agrees to home for Mom and child"; Exhibit C-19 (the Family Court ordered that "the maternal



PDF created with pdfFactory trial version www.pdffactory.com

children to remedy the issues as asserted in the instant case. *See* Plaintiffs' Memorandum in Objection to Motion to Dismiss, fn 33. Even with a cursory review of the Family Court Act, along with the procedural history of each Plaintiff child's case, it is clear that Plaintiffs' argument is patently wrong.

At each scheduled "Rule 17" hearing[4], permanency hearing, dispositional hearing or even termination of parental rights hearing, the Family Court has the authority to consider and determine many aspects of each child's case. The Family Court determines the particular placement and often sets conditions on said placement. For example, the Family Court may refuse to remove a child from the home of the parent, but order the child to remain in the parent's home, so long as the parent's comply with substance abuse treatment or counseling, or any other service that the Family Court deems necessary to ensure the safety of the child. The Family Court also approves visitation schedules between the child and the biological parent. The Family Court considers and approves services for the child in addition to any services that the parent must engage in order to effectuate reunification. *See R.I. Gen. Laws §40-11-12.1.* In addition, the Family Court has the authority to compel a parent to engage in a program of counseling, whether it be anger management, substance abuse, mental health, etc., in order to learn how to provide a safe living environment for their child. *See R.I. Gen. Law 14-1-32(3).*

The Family Court also has explicit statutory authority to direct and/or approve the placement of a child, notwithstanding whether that child remains placed in the home of the biological parent or is placed in foster care. Once a child is placed in the custody of DCYF, the

---

grandmother is allowed to visit said child on biological mother's scheduled visiting day (bi-weekly Fridays)", "[t]hat if maternal grandmother misses two consecutive visits, she will not visits again"

[4] *See* R.I. Rules of Juv. Proc. Rule 17.



PDF created with pdfFactory trial version www.pdffactory.com

Family Court "may at any time, for good cause shown, modify or revoke the decree," of custody. *See R.I. Gen. Laws* § 14-1-34. Additionally, in any case wherein the DCYF is unable to complete the licensing process of a foster home within six months of the child's placement in the home, the Family Court has the authority to authorize the continued placement of the child in said foster home, or the child must be removed from that home. *See R.I. Gen. Law* § 14-1-34(c).

> In the event the department is unable to complete the licensing process within six (6) months of the child's placement in the foster home and if the department determines that continued placement of the child in said foster home is in the child's best interest, the department shall file a petition with the family court to seek authorization to allow the child(ren) to remain in the foster home pending completion of the licensing process. The department shall provide notice of all such petitions to the office of the child advocate, children(s) parent/guardian and CASA attorney…

*Id*. It is significant to note that the Office of the Child Advocate is by law required to receive notice of any such filing and has a right to intervene in such cases.

Further, the DCYF is required to petition the Family Court for authorization to place a child in an out of state child caring facility (other than in the home of a relative). *See R.I. Gen. Laws §14-1-65.* As a matter of law, the Family Court may authorize such a placement if the Court concludes that there are no suitable in state facilities, the child will receive an individualized education plan and that the placement is in the best interests of the child. *Id.*

At a minimum of every six months the Family Court requires DCYF to "submit within thirty (30) days a written plan for care and treatment" of the abused or neglected child. *See R.I. Rules of Juv. Proc. Rule* 17; *see also R.I. Gen. Laws* 42-72-10. The Family Court considers the appropriateness of the DCYF's service plan and whether the parents are complying with said services sufficiently to prove to the court that the parent(s) can safely have their child returned to



PDF created with pdfFactory trial version www.pdffactory.com

parent(s) home. *See R.I. Gen. Laws §40-11-12.2*. Upon submission of the written plan for care and treatment, the Family Court "shall thereupon approve or modify such plan, or shall remand such plan to the department for further development and resubmission." *See R.I. Rules of Juv. Proc. Rule* 17. The Plaintiffs attempt to analogize the Family Court's involvement at this stage as a "review" of an executive action akin to *New Orleans Public Service, Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1998). Given the Family Court's authority under *Rule* 17 and the provisions of R.I. Gen. Laws §40-11-12.2, which include but is certainly not limited to expressly modifying the child's care plan, there can be no comparison to *NOPSI*. Rather, the Family Court's authority in this area is very similar to that of the Florida state courts as described in *31 Foster Children*, 329 F.3d at 1277-1278, where abstention under *Younger* was deemed appropriate.

Within twelve months of the Family Court acquiring jurisdiction of a child, the court must hold a permanency hearing. At a permanency hearing the Family Court makes various determinations concerning the welfare of the child and the long-term case plan objectives. *See R.I. Gen. Laws §40-11-12.1*. Specifically, during the permanency hearing, the court is obligated to consider the appropriateness of the services being provided by the DCYF to both the child and the parent. The Family Court is also mandated to consider whether said services are sufficient to strengthen and perhaps reunite the family. *See R.I. Gen. Laws §40-11-12.1(d)(1), et. seq*. At all permanency hearings, the Family Court must consider whether it is likely that the child will be reunified with the biological parent in the reasonable foreseeable future. If reunification is not imminent and/or likely within a determinate period of time, the Family Court must consider whether or not to authorize DCYF to pursue an alternative permanency outcome for the child.



PDF created with pdfFactory trial version www.pdffactory.com

The Family Court has the authority to order that the DCYF pursue guardianship, a potential adoptive home, or even continued long-term foster care, if appropriate. *See R.I. Gen. Laws §40-11-12.1(e)(1) et. seq*.

On the other hand, the Family Court might also determine that the biological parent may soon be in a position to provide a safe home for their child. In that case, the Family Court may authorize the DCYF to continue to make efforts and provide services in an attempt to reunify the family unit. Specifically, the statute provides that the Family Court may, "[d]irect that foster care of the child and reunification efforts be continued if the department of children, youth, and families, after a hearing, has demonstrated to the court that continuation of the child in foster care and continued reunification efforts for a determinate period is in the child's best interests." *See R.I. Gen. Laws §40-11-12.1(e)(3)*.

Consistent with the primary goals of the child welfare system, when the Family Court is satisfied that a parent has successfully completed the services requested by DCYF and approved by the Family Court, the child may be reunified with the biological parent. Even after reunification occurs, the Family Court will continue to exercise jurisdiction in a case until such time as the court is satisfied that the welfare of the child is adequately protected.

In the cases wherein the Family Court concludes that a child cannot be safely returned to the home of the biological parent, the Family Court has the authority to compel that DCYF initiate a termination of parental rights petition." *See R.I. Gen. Laws §40-11-12.1(e)(5)*. Family Court has the authority to adjudicate the termination of parental rights petitions. *See R.I. Gen. Laws §15-7-7*. After trial, if the Court concludes by clear and convincing evidence that a parent has demonstrated an inability to care for a child and that the DCYF has made reasonable efforts



PDF created with pdfFactory trial version www.pdffactory.com

to make efforts to reunify the child with a parent, the Family Court is empowered to enter an order terminating the parental rights of the parent and awarding sole guardianship to the Director of the DCYF. *See R.I. Gen. Laws §15-7-7(a) - (d).* Thereafter, the Family Court is required to schedule a review hearing of the case within thirty (30) days from the date of the entry of the termination of parental rights decree. *See R.I. Gen. Laws §15-7-7(g).* At that hearing, the DCYF is required to provide the court with a report which documents the steps the Department is taking to find an adoptive family for the child, or a fit and willing relative, or legal guardian, or other planned living arrangement and/or to finalize the adoption or guardianship of the child. *Id.* Thereafter, in cases wherein the DCYF service plan goal is designated as "adoption", the DCYF is required to present to the Family Court a plan which outlines the steps the Department is taking to find an adoptive family and/or the efforts is Department is making to finalize the service plan goal of adoption on behalf of the child. *See R.I. Gen. Laws §40-11-12.2(h).* Ultimately, if an adoption petition is filed, the Family Court is vested with jurisdiction to approve and enter an order that finalizes the adoption. *See R.I. Gen. Laws §§ 14-1-14 and 15-7-4.*

Notwithstanding the expansive authority vested in the Rhode Island Family Court the plaintiffs' contend that the Family Court's involvement is not "ongoing". *See* Plaintiffs' Memorandum in Opposition to Motion to Dismiss at page 35. Such a statement is at best unsupported by any facts. Rather, a more deliberative examination of the Family Court files reveal that in most cases, as a matter of course, the Family Court examines and takes action in the best interest of the children on far more frequent basis. By way of illustration, in the case of Deanna H. the DCYF filed a neglect and abuse petitions in October of 2006 and its first



PDF created with pdfFactory trial version www.pdffactory.com

termination of parental rights petition in January of 2007. *See* Exhibits A157, A173. The State has presented certified copies of Family Court records which reflect that between October of 2006 and October of 2007 the Family Court conducted both pre and post adjudicatory hearings on Deanna's case. The record reveals that Deanna's case was heard before the Family Court on thirteen (13) occasions. *See* Exhibits A 158 – A 177.

It is clear from this brief summary that the Family Court plays an active and important role in the cases of abused and neglected children. The Family Court is vested with explicit and exclusive statutory authority to ensure that the children's best interests are protected in the course of child protection proceedings. Clearly, any injunctive relief that this Court would issue in this case would directly and indirectly interfere with the Family Court's decisions, including but not limited to the issues of placement, treatment and services.

The active role of the Rhode Island Family Court in cases of abused and neglected children is similar to Florida, as described by the Eleventh Circuit in ***31 Foster Children***. In determining whether the first factor of the ***Middlesex*** test had been satisfied in Florida, the Eleventh Circuit explained:

> Whether the effect of the federal court injunctive relief the plaintiffs seek in this lawsuit will interfere with ongoing state dependency proceedings depends in part upon the nature and extent of those proceedings. The state trial level courts of Florida play a critically important role in dependency hearings from the outset of a child's case. After the Department files a petition for dependency, the court holds an adjudicatory hearing as soon as practicable. Fla. Stat. § 39.507. If the facts alleged in the dependency petition are proven in the adjudicatory hearing and the child is determined to be dependent, the state court conducts a disposition hearing. ***Id.*** §§ 39.507(7); 39.521(1). The Department must prepare a written case plan and a predisposition study and file these items with the court no later than 72 hours before the disposition hearing. ***Id.*** § 39.521(1)(a).
>
> The case plan is a document that " follows the child from the provision of voluntary services through any dependency, foster care, or termination of parental



PDF created with pdfFactory trial version www.pdffactory.com

> rights proceeding or related activity or process." *Id.* § 39.01(11). It must include, among other items, a description of the permanency goal for the child, a description of the type of home or institution in which the child is to be placed, a discussion of the safety and appropriateness of the child's placement, the services that the child needs and will receive, a description of the visitation rights of the parents, and a description of the efforts to be undertaken to maintain the stability of the child's education. *Id.* § 39.601(3)(a)-(i).
>
> The case plan must be approved by the court. *Id.* §§ 39.601(2), (3); 39.603. It may be amended if all the parties agree and the court approves, or after a hearing it may be amended by the court on its own motion or that of a party, based on competent evidence that demonstrates the need for an amendment. *Id.* § 39.601(9)(f). If at the hearing on the case plan, which occurs in conjunction with the disposition hearing, the court determines that any of the elements required in the plan are not present, it can order the Department to amend the plan to include what is necessary. *Id.* § 39.603(2).
>
> The state court has continuing jurisdiction over a dependency case and reviews the child's status at least every six months. *Id.* § 39.701(1)(a). Prior to the review hearing, the Department must furnish to the court a written report that includes, among other items, a description of the placement of the child, its appropriateness, the safety of the child, the number of placements, documentation of the efforts of all parties to comply with the case plan, the number of times the child's educational placement has been changed, and copies of all medical and psychological records that support the terms of the case plan. *Id.* § 39.701(6)(a). At the review hearing, the court considers the child's situation, including whether there has been compliance with the case plan, the appropriateness of the child's current placement, and whether the child is in a setting that is family-like and consistent with the child's best interests and special needs. *Id.* § 39.701(7)(d), (g). No later than 12 months after the date that the child is placed in shelter care, the court must conduct a judicial review to plan for the child's permanent placement. *Id.* § 39.701(8)(f). If the child is not returned to his parents, the case plan must document steps the Department is taking to find an adoptive parent or other permanent living arrangement for the child. *Id.*
>
> If the Department has not complied with the case plan, the court may find it in contempt. *Id.* § 39.701(8)(c). The court can also issue protective orders. *Id.* § 39.701(8)(g). A protective order can require a person or agency to make periodic reports to the court containing such information as the court prescribes. *Id.* The court can issue a protective order in support of, or as a condition to, any other order it may make. *Id.*

329 F.3d at 1277-1278. After reviewing the Florida court's extensive involvement and control over the state's abused and neglected children, the Eleventh Circuit addressed whether a Federal



PDF created with pdfFactory trial version www.pdffactory.com

Court's order of injunctive relief would directly or indirectly interfere with the ongoing state proceedings. The Eleventh Circuit resolved this question in the affirmative, finding that:

> In this case, the plaintiffs are seeking relief that would interfere with the ongoing state dependency proceedings by placing decisions that are now in the hands of the state courts under the direction of the federal district court. The declaratory judgment and injunction that they request would interfere with the state proceedings in numerous ways. The federal and state courts could well differ, issuing conflicting orders about what is best for a particular plaintiff, such as whether a particular placement is safe or appropriate or whether sufficient efforts are being made to find an adoptive family. The federal court relief might effectively require an amendment to a child's case plan that the state court would not have approved, and state law gives its courts the responsibility for deciding upon such an amendment. ***See*** Fla. Stat. § 39.601(9)(f). Even though any remedial order would run against the Department, state law makes it a duty of state courts to decide whether to approve a case plan, and to monitor the plan to ensure it is followed. ***Id.*** § 39.701(1), (7)-(8). The plaintiffs seek to have the district court appoint a panel and give it authority to implement a systemwide plan to revamp and reform dependency proceedings in Florida, as well as the appointment of a permanent children's advocate to oversee that plan. To say the least, taking the responsibility for a state's child dependency proceedings away from state courts and putting it under federal court control constitutes " federal court oversight of state court operations, even if not framed as direct review of state court judgments" that is problematic, calling for ***Younger*** abstention. ***Joseph A.,*** 275 F.3d at 1271. The relief that the plaintiffs seek would interfere extensively with the ongoing state proceedings for each plaintiff. The first ***Middlesex*** factor is satisfied.

329 F.3d at 1278-1279. Given the similarities in the state courts' direct involvement with abused or neglected children, the Eleventh Circuit's analysis supports dismissal of this Amended Complaint.

Plaintiffs attempted to distinguish the ***31 Foster Children*** decision by claiming that it was never certified as a class action. *See* Plaintiffs' Memorandum of Law in Objection to Motion to Dismiss at pages 32-33. Plaintiffs ignore the fact that this case has not been certified as a class action. *See* Defendants' Reply Memorandum at pages 52-54. Plaintiffs attempted to further distinguish ***31 Foster Children*** by claiming that in Florida the plaintiffs specifically asked the



PDF created with pdfFactory trial version www.pdffactory.com

federal court, as part of their prayer for injunctive relief, to appoint a panel and give it authority to revamp and reform that state's foster care system. *See* Plaintiffs' Memorandum of Law in Objection to Motion to Dismiss at pages 32. Learning from this error, the Rhode Island Plaintiffs ask this Court for abstract injunctive relief in an effort to avoid ***Younger*** abstention. The Defendants addressed at length why this legal tactic should not defeat ***Younger*** abstention in the present case. *See* Defendants' Memorandum of Law in Support of their Motion to Dismiss at pages 62-68.

Injunctive relief in this case would clearly interfere with each of the named children's cases before the Rhode Island Family Court. The practical effect of any injunctive relief would require this Court to review, approve and/or overrule the Family Court's orders of placement, treatment and services for Sam and Tony, Danny and Michael, Deanna, Daniel T. and Caesar. The first ***Middlesex*** factor has been satisfied. *See* Defendants' Memorandum of Law in Support of their Motion to Dismiss at pages 60-68. *See also*, Defendants' Reply Memorandum at pages 42-49.

**ii. The Second Middlesex Factor**

Rhode Island's child welfare system and its oversight by the Family Court are important state interests. Although Plaintiffs attempt to dispute this fact, their position is clearly contradicted by this district, the First Circuit and other federal courts. *See Defendants' Reply Memorandum in Support of their Motion to Dismiss* at pages 57-58. *See* *Moore v. Sims*, 442 U.S. 415, 434, 99 S.Ct. 2371, 2382, 60 L.Ed2d 994 (1979); *Office of Child Advocate v. Lindgren*, 296 F.Supp.2d 178, 193 (D.R.I. 2004); *McLeod v. State of Maine Department of Human Services*, 1999 WL 33117123 (D.Me. 1999), affirmed *McLeod v. Maine Department of Human*



PDF created with pdfFactory trial version www.pdffactory.com

***Services***, 229 F.3d 1133, 2000 WL 869512 (1st Cir. 2000); ***Foreman v. Heinman***, 240 F.R.D. 456, 524(D.Neb. 2007); ***Kenny A. v. Perdue***, 218 F.R.D. 277, 285 (N.D.Ga. 2003). The second ***Middlesex*** factor has been satisfied.

**ii. The Third Middlesex Factor**

The third ***Middlesex*** factor requires that the state court proceedings provide these federal plaintiffs the opportunity to raise their alleged federal claims. The Defendants extensively briefed this issue in their *Memorandum of Law in Support of their Motion to Dismiss* at pages 68-72 and their *Reply Memorandum* at pages 58-63. The Family Court, with appellate review by the Rhode Island Supreme Court, has clearly addressed constitutional issues. The fact that the Child Advocate has chosen not to raise the constitutional claims asserted on behalf of the named children in this lawsuit before the Family Court has no bearing on the ***Middlesex*** analysis. In fact, the issue is "not whether plaintiffs' claims were raised in the pending state proceedings, but whether they could have been raised." ***Foreman v. Heineman***, 240 F.R.D. 456, 530 (D.Neb. 2007). It is the plaintiffs' burden to prove to this Court that their individual claims could not be adequately raised before the Rhode Island Family Court. ***Id***. Plaintiffs cannot sustain this burden. The third prong of the ***Middlesex*** factor has been satisfied.

The three factors of the ***Middlesex*** test have been satisfied in this case. Abstention under ***Younger*** is appropriate. This Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).



PDF created with pdfFactory trial version www.pdffactory.com

**D. <u>This Court Should Abstain Under The Rooker-Feldman Doctrine and Dismiss the Amended Complaint for lack of Subject Matter Jurisdiction Under Fed. R. C.P. 12(b)(1).</u>**

*Rooker-Feldman* doctrine applies in the "'limited circumstances' where 'the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment."' *<u>Federaciòn de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico</u>* , 410 F.3d 17, 23-24 (1st Cir. 2005). Plaintiffs claim that this doctrine does not apply to the named children. The Defendants disagree.

Plaintiffs' continuously allege in the Amended Complaint that the constitutional rights of the named children were violated as a result of their placements (either with a particular foster home, residential facility or reunified with their parents) and their lack of services or visitation and, as a result, were harmed. The exhibits produced by Defendants in support of dismissal demonstrate that the Family Court either directed or reviewed and approved placements, services and visitation. Accordingly, *<u>Rooker-Feldman</u>* compels dismissal of this case. *See* Defendants' Memorandum of Law in Support of Their Motion to Dismiss at pages 74-82. *See also* Defendants' Reply Memorandum at pages 63-65.

**E. <u>Conclusion</u>**

This Court lacks subject matter jurisdiction and the Amended Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1). For the foregoing reasons as well as those set forth in Defendants' Motion to Dismiss and supporting Memorandum of Law and Reply Memorandum, the Defendants pray that this Court grant their motion and dismiss Plaintiffs' Amended Complaint with prejudice.

PDF created with pdfFactory trial version www.pdffactory.com

Respectfully submitted
DEFENDANTS
By their Attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

/s/ James R. Lee

JAMES R. LEE (4305)
Assistant Attorney General
R.I. Department of the Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400 ext. 2314
Fax: (401) 222-2995
jlee@riag.ri.gov

/s/ Brenda D. Baum

BRENDA D. BAUM (5184)
Assistant Attorney General
R.I. Department of the Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400 ext. 2294
Fax: (401) 222-3016
bbaum@riag.ri.gov

On Behalf of PATRICIA MARTINEZ,
in her Official Capacity as Director of the
Department of Children, Youth and Families

/s/ Kevin Aucoin

KEVIN AUCOIN (3019)
Executive Counsel
R.I. Department of Children, Youth &
Families
101 Friendship Street
Providence, RI 02903
Tel: (401) 528-3579
Fax: (401) 525-3566
Kevin.Aucoin@dcyf.ri.gov



PDF created with pdfFactory trial version www.pdffactory.com

**CERTIFICATION**

I hereby certify that I have electronically mailed the foregoing document on this 15th day of February 2008 to the attorney(s) of record listed below:

**John William Dineen, Esq.**
jwdineen1@yahoo.com

**Jametta O. Alston, Esq.**
jalston@gw.doa.state.ri.us

**Susan Lambiase**
slambiase@childrensrights.org

**Vernon Winters**
vern.winters@weil.com

**Marcia Robinson Lowry**
mlowry@childrensrights.org

**/s/ Brenda D. Baum**



PDF created with pdfFactory trial version www.pdffactory.com