# EXHIBIT 6

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

THE OFFICE OF THE CHILD ADVOCATE, RHODE ISLAND PROTECTION AND ADVOCACY SYSTEM, INC., CURTIS P. and LISA B. on Their Own Behalf and On Behalf of All Others Similarly Situated,

PLAINTIFFS

vs.

ARTHUR PONTARELLI, Commissioner of Elementary and Secondary Education; BOARD OF REGENTS FOR ELEMENTARY AND SECONDARY EDUCATION; and, JOHN E. McMANUS, Director, Department for Children and Their Families,

DEFENDANTS

C.A. NO. CA 82-0091 P

CLASS ACTION COMPLAINT

## COMPLAINT

### I. PRELIMINARY STATEMENT

(1) This is a class action seeking injunctive and declaratory relief for children in need of special education services. Some of these children are already receiving some special education services while others are or should be in the process of having their special education needs determined. These children are all either in the custody of the State of Rhode Island or are without parents or guardians available to them to protect rights provided under federal and state education laws. These laws require defendants to appoint "surrogate parents" for the classmembers to protect their rights. The plaintiffs seek a declaration that defendants have violated their obligation to appoint surrogate parents and an injunction directing defendants to make all required appointments.

## II. JURISDICTION

(2) Plaintiffs' claims arise under the Due Process and Equal Protection clauses of the Fourteenth Amendment to the United States Constitution; the Rehabilitation Act of 1973, as amended, 29 U.S.C.§794 and 794a; the Education for All Handicapped Children Act, 20 U.S.C.§1401 *et seq.*; 42 U.S.C. §§1983,1985,1986 and 1988; 28 U.S.C. §§2201 and 2202; and, under R.I.G.L. §16-24-1 *et seq.* and the Regulations promulgated thereunder.

(3) This Court has jurisdiction pursuant to 28 U.S.C. §§1331 and 1343; 29 U.S.C. §794 and 794a; 20 U.S.C. §1415 (e); and, as to the state claim, pursuant to its pendent jurisdiction.

## III. PLAINTIFFS

(4) The Office of the Child Advocate, in accordance with R.I.G.L. §42-73-7(6) brings this action in its own name for the benefit of all children subject to the provision of Chapter 72 of Title 42 of the Rhode Island General Laws.

(5) Plaintiff Rhode Island Protection and Advocacy System, Inc, hereinafter RIPAS, brings this action in its own name. RIPAS is a federally mandated advocacy program designated by the State of Rhode Island to pursue legal, administrative and other appropriate remedies to insure the protection of the rights of developmentally disabled persons pursuant to the State's receipt of funds under the federal Developmentally Disabled Assistance and Bill of Rights Act, P.L.94-103, and under the Education for All Handicapped Children Act, P.L. 94-142.

(6) Plaintiff Curtis P. Is a citizen of the United States and a resident of the State of Rhode Island and Providence Plantations. He is a ward of the State and currently is a resident of the Rhode Island Training School in Cranston, R.I. Curtis P. is seventeen years old, having been born on March 8, 1964. He has been identified as a child in need of special education.

(7) Lisa B. is a citizen of the United States and a resident of the State of Rhode Island and Providence Plantations. She is a ward of the State in that the Rhode Island Family Court on April 17, 1981 awarded custody to the Department for Children and Their Families on the basis of a petition alleging dependency neglect and abuse. Lisa B. is fourteen years old, having been born on September 10, 1967. She has been identified as a child in need of special education.

IV. DEFENDANTS

(8) Defendant Arthur Pontarelli is the Commissioner of Elementary and Secondary Education for the State of Rhode Island and as such is responsible for the administration, coordination and supervision of the Department's program, including the Surrogate Parent Program.

(9) Defendant, Board of Regents for Elementary and Secondary Education has general supervision and responsibility for the interests of the State with respect to elementary and secondary education, including the Surrogate Parent Program.

(10) Defendant John McManus is the Director of the Department for Children and Their Families and has the overall responsibility of administering the delivery of services by that Department.

## V. CLASS-ACTION ALLEGATIONS

(11) The plaintiffs bring this action pursuant to Rule 23 (a) and (b) (1) (A), (b) (1) (B) and (b) (3) of the Federal Rules of Civil Procedure.

(12) The class consists of all persons in Rhode Island ages three through twenty-one who are or may be in need of special education, who are eligible for the appointment of a surrogate parent and for whom no surrogate parent has been appointed.

(13) With respect to said class:

a) On information and belief, plaintiffs allege that the class presently numbers in excess of six hundred children and is so numerous that joinder of all members is impracticable;

b) There are substantial questions of law and fact common to the entire class;

c) The claims of the named children-plaintiffs are typical of the claims of the class;

d) The named plaintiffs in and through their counsel will fairly and adequately protect the interests of the class;

e) The prosecution of separate actions by members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would result in incompatible standards of conduct for the defendants;

f) The prosecution of separate actions by members of the class would create a risk of adjudications with respect to individual members of the class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests;

(18) The Department of Elementary and Secondary Education has submitted a plan to the Federal Government describing its implementation of the surrogate parent requirements, a copy of which is appended hereto as Exhibit B and hereby incorporated.

(19) The Department of Elementary and Secondary Education by its plan and by the Regents' regulations has assumed the primary responsibility for complying with laws mandating the appointment of surrogate parents.

(20) In the six years preceding the filing of this complaint, during which there has existed the legal mandate for appointment of surrogate parents, only a relatively small number of eligible children have had trained surrogates appointed for them or have even been identified as in need of a surrogate by the defendants Pontarelli and Board of Regents for Elementary and Secondary Education.

(21) Many of the members of the plaintiff class are committed to the care of the Department for Children and Their Families which Department stands in a guardianship and fiduciary relationship with said children.

(22) The Department for Children and Their Families is a recipient of federal funds and is therefore bound by the antidiscrimination provisions of §504 of the Rehabilitation Act of 1973, as amended.

(23) During the six years preceding the filing of this Complaint, the Department for Children and Their Families has failed to identify and refer to defendants Pontarelli and Board of Regents for Elementary and Secondary Education, all children within its care who require appointment of a surrogate parent.

g) The defendants have acted, or refused to act, on grounds generally applicable to the class, thereby making final injunctive relief and corresponding declaratory relief appropriate to the class as a whole;

h) Questions of law and facts common to the class predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy.

## VI. FACTUAL ALLEGATIONS

(14) The defendant Board of Regents for Elementary and Secondary Education maintains a Department of Elementary and Secondary Education.

(15) Under the Education for All Handicapped Children Act, 20 U.S.C. § 1401 *et seq.*, the Rhode Island Department of Elementary and Secondary Education and local education agencies receive federal funds for the provision of special education.

(16) Since the Department of Elementary and Secondary Education is a recipient of federal assistance for special education, it must guarantee that the special education requirements of the Education for All Handicapped Children Act, 20 U.S.C. §1401, *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. 794 *et seq.*, are met and must propound regulations and submit a plan to the Federal Government for implementation of these laws.

(17) The Board of Regents for Elementary and Secondary Education promulgated regulations requiring the appointment of surrogate parents in Rhode Island, a copy of which is appended hereto as Exhibit A and hereby incorporated.

(24) Due in part to the failure of defendant McManus and his designees within the Department for Children and Their Families alleged in paragraph 23, a substantial number of special needs children within the care of that Department have no designated surrogate parent.

(25) Defendant McManus and his designees within the Department for Children and Their Families have not and cannot legally function as surrogate parents for special needs children and have not exercised special educational due process provisions on behalf of committed children.

(26) Each of the defendants separately and jointly have discriminated against members of the plaintiff class.

(27) Plaintiff Curtis P. was identified as needing special education years ago by the Newport County Regional Special Education Program.

(28) Curtis P's mother is a resident of Portsmouth, Rhode Island, which town is served by the Newport County Regional Special Education Program.

(29) Prior to his admission to the Rhode Island Training School, October 26, 1981, Curtis P. was receiving special education services at School One in Providence in accordance with an individual education program developed and funded by the Newport County Regional Special Education Program.

(30) Upon his admission to the Training School Curtis P.'s involvement with School One was terminated by the Department for Children and Their Families and the Newport County Regional Special Education Program disclaimed all responsibility for the provision of special education services to Curtis P.

(31) Curtis P. is and has been since October 26, 1981, enrolled in an instructional program at the Youth Correctional Education Center (YCEC) on the grounds of the Training School, which is not an educational program accredited by defendants Pontarelli and Board of Regents for Elementary and Secondary Education.

(32) There is no individual education program written for Curtis P. by the YCEC and Curtis P. is not receiving appropriate special education. Moreover, he has no surrogate parent through whom he can exercise his procedural rights to obtain services under federal and state special education laws.

(33) School One remains an appropriate educational program for Curtis P. and administrators of School One are willing to continue to supply education services to Curtis P.

(34) Personnel from the Training School have indicated to counsel for the plaintiffs that because of his social history and previous success at School One, it is feasible and desirable that Curtis P. attend School One while residing at the Training School.

(35) Curtis P. wishes to continue his education at School One while residing at the Training School.

(36) Appropriate officials of the Departments for Children and Their Families and of Elementary and Secondary Education are and have been aware of Curtis P.'s commitment to the State, his need for special education and his eligibility for a surrogate parent.

(37) Lisa B. is a quadriplegic child afflicted with cerebral palsy; she is severely mentally retarded. She requires special education services including, but not limited to, physical therapy, occupational therapy, and speech therapy.

(38) Lisa B. has been placed by the Department for Children and Their Families in a specialized foster home in Warwick, Rhode Island.

(39) Lisa B.'s mother resides in Pawtucket, Rhode Island and Lisa B. is presently attending a school located in Pawtucket. Due to problems in scheduling transportation, Lisa B. attends school for only three hours per day.

(40) A special education report completed on Lisa B. has indicated that individualized educational plans drafted for Lisa B. in the past have been deficient.

(41) Evaluations reveal that Meeting Street School could provide an appropriate educational program for Lisa B. and the Department for Children and Their Families has made a referral to Meeting Street School.

(42) Lisa B. remains in the custody of the Department for Children and Their Families and she has no surrogate parent through whom she can exercise her procedural rights to obtain services under federal and state special education laws.

(43) Appropriate officials of the Departments for Children and Their Families and of Elementary and Secondary Education are or should be aware of Lisa B.'s committment to the State, her need for special education and her eligibility for a surrogate parent.

(44) The situation of Curtis P. and Lisa B. and the other acts, omissions and conditions alleged in paragraphs 14 through 43 are indicative of a longstanding, systemic breakdown in the surrogate parent program which has resulted in defendants' knowing failure to identify all children for whom surrogates must be appointed and defendants' knowing failure to appoint and maintain qualified, active surrogates for children in the plaintiffs' class.

(45) In doing all of the acts herein alleged, all of the defendants were and are acting together under color of state law, custom and usage and by virtue of the authority vested in each of them by federal law and the laws of the state of Rhode Island in the official capacities alleged.

(46) At all times relevant, all of the defendants knew or should have known of the acts, omissions or conditions alleged herein.

(47) As a direct consequence of defendant's actions plaintiffs are threatened with and are suffering irreparable harm and there is no adequate remedy at law.

## VII. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

(48) The plaintiffs reallege and incorporate paragraphs 1 through 47 herein.

(49) The procedural protections under the aforementioned state and federal special education laws are available only to parents, guardians and surrogate parents acting on behalf of children.

(50) The defendants' actions have the cumulative effect of creating two groups of handicapped children: those whose parents are known and available and those who are wards of the state or whose parents are unknown or unavailable and who have no surrogate parents.

(51) Children in the second of the two groups in paragraph 50 cannot exercise the law's procedural safeguards.

(52) This classification is arbitrary, irrational and unrelated to the special education laws and unsupported by any reasonable justification.

(53) Defendants have, therefore, denied plaintiffs their rights to equal protection of the law guaranteed by the Fourteenth Amendment to the United States Constitution.

SECOND CAUSE OF ACTION

(54) Plaintiffs reallege and incorporate paragraphs 1 through 47 herein.

(55) Plaintiffs are denied by defendants the opportunity for notice, administrative hearings to determine the appropriateness of education decisions, and other procedural safeguards because defendants have not secured the appointment of surrogate parents for them.

(56) Defendants have, therefore, denied plaintiffs their rights in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

THIRD CAUSE OF ACTION

(57) Plaintiffs reallege and incorporate paragraphs 1 through 47 herein.

(58) The defendants' failure to appoint surrogate parents and omissions impeding the appointment of surrogate parents deprive plaintiffs of their rights in the special education decision making process in violation of 20 U.S.C. §1415 (b) (1) (B) and 34 C.F.R. §300.514.

FOURTH CAUSE OF ACTION

(59) Plaintiffs reallege and incorporate paragraphs 1 through 47 herein.

(60) The defendants' failure to appoint surrogate parents and omissions impeding the appointment of surrogate parents deprive plaintiffs of their rights in violation of 29 U.S.C. §§794 and 794a and 34 C.F.R. §104.36.

FIFTH CAUSE OF ACTION

(61) Plaintiffs reallege and incorporate paragraphs 1 through 47 herein.

(62) The defendants' failure to appoint surrogate parents and omissions impeding the appointment of surrogate parents deprive plaintiffs of their rights, privileges and immunities secured by the Constitution and laws of the United States, to the injury of plaintiffs, giving rise to a right to redress under 42 U.S.C. §1983.

SIXTH CAUSE OF ACTION

(63) Plaintiffs reallege and incorporate paragraphs 1 through 47 herein.

(64) The acts and conduct of the defendants constituted and furthered a conspiracy for the purpose of depriving the plaintiffs of the equal protection of the laws and of equal privileges and immunities under the laws, resulting in injury to the plaintiffs and a right to redress under 42 U.S.C. §1985 (3).

SEVENTH CAUSE OF ACTION

(65) Plaintiffs reallege and incorporate paragraphs 1 through 47 herein.

(66) The acts and conduct of defendants indicate that the defendants knew or should have known of the wrongs conspired to be done to the plaintiffs, and having the power to prevent or aid in the preventing of the commission of the same, neglected or refused to do so, resulting in a right to redress under 42 U.S.C. §1986.

EIGHTH CAUSE OF ACTION

(67) Plaintiffs reallege and incorporate paragraphs 1 through 47 herein.

(68) The defendants' failure to appoint surrogate parents and omissions impeding the appointment of surrogate parents deprive plaintiffs of their rights in the special education decision making process in violation of R.I.G.L.§16-24-1 et seq. and the Regulations promulgated thereunder, especially One, IX, 12 (attached as Exhibit C ).

NINTH CAUSE OF ACTION

(69) Plaintiffs reallege and incorporate paragraphs 1 through 47 herein.

(70) Plaintiff Curtis P. was allowed by defendants to be removed from an appropriate educational placement at School One and enrolled in an uncertified, inappropriate program without being afforded any procedural safeguards.

(71) Had defendants complied with their obligation to appoint a surrogate parent for Curtis P. that surrogate would have had to challenge said removal under the applicable federal and state special education laws.

(72) Curtis P. is and has been entitled under the circumstances to the protection of 20 U.S.C. §1415 (e) (3), 34 C.F.R. §300.513 and the corresponding state regulation, §One, IX, 11.0.

(73) Defendants have violated the laws stated in paragraph 72 by failing to maintain Curtis in the approved educational placement at School One pending resolution of his special education claims.

TENTH CAUSE OF ACTION

(74) Plaintiffs reallege and incorporate paragraphs 1 through 47 herein.

(75) Plaintiff Lisa B. has been allowed by defendants to attend school for only three hours per day due to problems in scheduling transportation for her from her foster home in Warwick to school in Pawtucket, Rhode Island.

(76) Federal and state special education laws mandate that Lisa B. receive a special education program appropriate to her needs and, in addition, state special education regulation §One, VI,2.0 (Exhibit D) requires that Lisa's school day consist of a minimum of five hours.

(77) In maintaining or permitting Lisa B. to be maintained in an educational program wherein she attends school for less than five hours per day, defendants have violated Lisa B.'s rights under federal and state law.

## VIII. PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court:

(1) Assume jurisdiction of this action;

(2) Certify this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

(3) Enter a declaratory judgment pursuant to 28 U.S.C. §2201 and 2202 in accordance with the claims herein that the defendants have violated the Fourteenth Amendment to the United States Constitution 42,U.S.C. §§1983,1985 and 1986, the Education for All Handicapped Children Act and its regulations, the Rehabilitation Act of 1973 and its regulations and R.I.G.L. §16-24-1, et seq., and its regulations.

(4) Grant preliminary and permanent injunctions enjoining the defendants from failing to appoint and from impeding the appointment of trained surrogate parents for each and every child who may require special education and whose parent or guardian is unknown or unavailable or who is a ward of the state.

(5) Order the defendants to notify each and every local and regional school district that they intend to seek appointment of a surrogate parent for each and every child who may require special education and whose parent or guardian is unknown or unavailable or who is a ward of the State, requesting that information regarding such children be presented to the defendant Pontarelli.

(6) Grant a temporary restraining order, preliminary injunction and permanent injunction directing the defendants to maintain Curtis P. in the School One special educational placement from which he was illegally removed, pending further proceedings, to secure a full time, appropriate education program for Lisa B., pending further proceedings, and to appoint surrogates for both children.

EXHIBIT A

11.3 Notwithstanding the provisions of 11.1 and 11.2 above, the placement of a child during the pendency of proceedings may be changed when the Superintendent upon substantial evidence determines that the child will be an immediate danger to himself or to others

12.0 Surrogate parents

12.1 Each public agency shall insure that the rights of a child are protected when:

12.1.1 No parent can be identified;

12.1.2 The public agency, after a reasonable effort, cannot discover the whereabouts of a parent, or

12.1.3 The child is a ward of the State.

12.2 Duty of the public agency

12.2.1 The public agency must assign an individual to act as a surrogate for the parent

12.3 Criteria for selection of surrogate

12.3.1 The public agency shall insure that the person selected:

12.3.1.1 Has no interest that could conflict with the interest of the child;

12.3.1.2 Has knowledge and skills that insure adequate representation;

12.3.1.3 Is not an employee of the public agency involved in the education and care of the child.

12.4 Responsibilities

12.4.1 The Surrogate parent may represent the child in all matters relating to:

12.4.1.1 The identification, evaluation and educational placement of the child, and

12.4.1.2 The provision of free appropriate public education to the child.

X. Advisory Committees

1.0 State Advisory Committee

1.1 The Commissioner of Education shall appoint a State Advisory Committee on Special Education.

1.2 Membership. The State Advisory Committee shall be composed of individuals involved in or concerned with the education of handicapped children. Parents of handicapped children shall compose a majority of committee membership. Also included shall be handicapped individuals(s); teacher(s); state and local educational official(s) and administrator(s) of programs for handicapped children.

1.3 Functions and Responsibilities

1.3.1 The State Advisory Committee shall provide advice to the Commissioner and the Board of Regents and shall comment publicly on matters concerning:

1.3.1.1 Unmet needs within the state in the education of handicapped children.

1.3.1.2 Rules and Regulations proposed for issuance by the state regarding the education of handicapped children and the annual program plan developed under P.L. 94-142

1.3.1.3 Procedures for distribution of federal and state funds for programs for handicapped children.

1.3.1.4 Developing and reporting program data and evaluations required by the United States Office of Education.

1.4 Duties and Responsibilities of the State Education Agency

1.4.1 The State Education Agency shall provide assistance to the State Advisory Committee in:

2. Rhode Island Procedures

School departments and state agencies who have custody of children who may need special education are required to cooperate in identifying children needing surrogate parents.

School departments and state agencies should notify the Department of Education, in writing, when they cannot locate or identify parents of a child who may need special education. The Department of Education, in conjunction with the local education agency and/or state agency who has custody of the child, must arrange for the assignment of a qualified surrogate parent. The Department of Education has developed a training program for individuals who wish to become surrogate parents.

Persons serving as surrogate parents

cannot be an employee of a public educational agency involved in the education or care of the child;

can have no interest that conflicts with the interests of the child she/he represents; and,

must have knowledge and skills that insure adequate representation of the child.

E. Responsibilities

The Department of Education, Special Education Unit is responsible for insuring that the procedural safeguards developed in Rhode Island meet the federal requirements and are carried out. Through the complaint/compliance system, the Special Education Unit is also responsible for checking how school systems observe procedural safeguards. During monitoring activities, staff members sample and review individual case files to insure that the school system has carried out the procedures relating to written notice, parental consent, and independent evaluation.

Case 1:07-cv-00241-L-LDA Document 56-7 Filed 02/29/2008 Page 18 of 23

EXHIBIT B

Make an independent decision on completion of the review, but no later than 30 calendar days after the request for the review;

Give a copy of the written findings and the decision to the parties;

Any party aggrieved by the decision of the state reviewing officer has the right to bring civil action to a court of competent jurisdiction.

During the pendency of any administrative or judicial proceeding regarding a complaint, unless the public agency and the parents of the child agree otherwise, the child involved in the complaint must remain in his or her present educational placement.

If the complaint involves an application for initial admission to public school, the child, with the consent of the parents, must be placed in the public school program until the completion of all proceedings.

The placement of a child during the pendency of proceedings may be changed when the Superintendent upon substantial evidence determines that the child will be an immediate danger to himself or to others.

(IX., 9.0 - 11.0)

D. Surrogate Parents

1. Federal Requirements

A public agency must insure that the rights of a child who may be handicapped are protected when the agency cannot identify or locate the child's parents or when the child is a ward of the State. This means that the agency must have a method for determining whether a child needs a surrogate (substitute) parent and for assigning a surrogate parent to the child. The agencies must insure that any surrogate parent selected has no interest that conflicts with the interest of the child represented. The surrogate parent must have the knowledge and skill to represent the child properly and cannot be an employee of a public agency involved in the education or care of the child. The surrogate parent may represent the child in matters relating to the identification, evaluation, or educational placement of the child and to the provision of a free, appropriate public education to the child (121a.514).

5.0 School Social Worker - A school district having two-thousand, five-hundred pupils enrolled in the public schools shall employ one full-time school social worker or equivalent to each two-thousand, five-hundred pupils so enrolled. In cases where the enrolled populations of children falls between even multiples of two-thousand, five-hundred (e.g., 2550) the school district shall employ a school social worker on a part-time basis in accordance with the needs of the handicapped children to be served. Case loads of school social workers shall be assigned by the local responsible authority, in a prudent and equitable manner, based on the time required to properly service the severity of the needs of the handicapped children involved, as determined by the evaluation process.

6.0 Physical and Occupational Therapists - The school committee of each school district shall employ one full-time physical and/or occupational therapist or equivalent for every thirty (30) mild to moderately handicapped children identified as being in need of physical and/or occupational therapy. School districts which have less than thirty (30) resident mild to moderately handicapped children in need of physical and/or occupational therapy may join with another school district(s) in providing a full-time physical and/or occupational therapist for every thirty (30) such children identified. Each school district shall also provide a physical and/or occupational therapist at least one full day per week for every six (6) resident severe, profound and/or multi-handicapped children identified as being in need of physical and/or occupational therapy. School districts which have less than six (6) such children may join with another school district(s) in providing a physical and/or occupational therapist at least one full day per week for every six (6) so identified children. In cases where the identified population of mild to moderately handicapped children in need of physical and/or occupational therapy should fall between multiples of thirty (e.g., 42) the school district shall employ a physical and/or occupational therapist on a part-time basis in accordance with the needs of such children as determined by the evaluation process. Case loads for physical and occupational therapists shall be assigned by the local responsible authority, in a prudent and equitable manner, based on the time required to properly service the severity of needs of the handicapped children involved, as determined by the evaluation process and the recommendation of the child's physician.

IX. Procedural Safeguards

1.0 Each public agency shall establish and implement procedural safeguards which meet the following requirements.

2.0 Definitions of "consent," "evaluation" and "personally identifiable."

2.1 Consent means that:

2.1.1 The parent has been fully informed in his or her native language of all the information relevant to the activity for which consent is sought;

2.1.2 The parent understands and agrees in writing to the carrying out of the activity for which his or her consent is sought, and the consent describes that activity and lists the records (if any) which will be released and to whom; and

2.1.3 The parent understands that the granting of consent is voluntary on the part of the parent and may be revoked at any time.

2.2 Evaluation means procedures used in accordance with Section One, V, 3.4.2; 3.4.3; and 3.5 to determine whether a child is handicapped and the nature and extent of the special education and related services that the child needs. The term means procedures used selectively with an individual child and does not include basic tests administered to or procedures used with all children in a school, grade, or class.

2.3 Personally identifiable means that information includes:

2.3.1 The name of the child, the child's parent, or other family member;

2.3.2 The address of the child;

2.3.3 A personal identifier, such as the child's social security number or student number; or

2.3.4 A list of personal characteristics or other information which would make it possible to identify the child with reasonable certainty.

3.0 Independent educational evaluation

EXHIBIT C



3.1 The parents of a handicapped child have the right to obtain an independent educational evaluation of the child subject to paragraphs 3.4 through 3.7 of this section.

3.2 Each public agency shall provide to parents, on request, information about where an independent educational evaluation may be obtained.

3.3 For the purpose of this section:

3.3.1 "Independent Educational Evaluation" means an evaluation conducted by a qualified examiner who is not employed by the public agency responsible for the education of the child in question.

3.3.2 "Public expense" means that the public agency either pays for the full cost of the evaluation or insures that the evaluation is otherwise provided at no cost to the parent. However, nothing in these regulations shall relieve an insurer or similar third party from an otherwise valid obligation to provide or to pay for services provided to a handicapped child.

3.4 A parent has the right to an independent educational evaluation at public expense if the parent disagrees with an evaluation obtained by the public agency. However, the public agency may initiate a hearing under 6.0 to show that its evaluation is appropriate. If the final decision is that the evaluation is appropriate, the parent still has the right to an independent educational evaluation, but not at public expense.

3.5 Parent initiated evaluations. If the parent obtains an independent educational evaluation at private expense, the results of the evaluation:

3.5.1 Must be considered by the public agency in any decision made with respect to the provision of a free appropriate public education to the child; and

3.5.2 May be presented as evidence at a hearing under this part regarding that child.

3.6 Requests for evaluations by hearing officers. If a hearing officer requests an independent educational evaluation as part of a hearing, the cost of the evaluation must be at public expense.

3.7 Agency Criteria. Whenever an independent evaluation is at public expense, the criteria under which the evaluation is obtained, including the location of the evaluation and the qualifications of the examiner, must be the same as the criteria which the public agency uses when it initiates an evaluation.

4.0 Prior notice; parent consent

4.1 Notice. Written notice which meets the requirements under 5.0 must be sent by certified mail* to the parents of a handicapped child at his or her last known address a reasonable time before the agency:

4.1.1 Proposes to initiate or change the identification, evaluation, or educational placement of the child or the provision of a free appropriate public education to the child; or

4.1.2 Refuses to initiate or change the identification, evaluation or educational placement of the child or the provision of a free appropriate public education to the child.

4.2 Consent. Parental consent must be obtained before:

4.2.1 Conducting a preplacement evaluation; and

4.2.2 Initial placement of a handicapped child in a program providing special education and related services.

4.2.2.1 Except for preplacement evaluation and initial placement, consent may not be required as a condition of any benefit to the parent or child.

4.3 Procedures where parent refuses consent

*In certain circumstances, it may be preferable to hand the written notice to the parent during a parent conference. If this is done, evidence of the receipt of the notice by the parent must be recorded and kept on file.

4.3.1 The public agency may use the hearing procedures in 6.0 to determine if the child may be evaluated or initially provided special education and related services without parental consent.

4.3.1.1 If the hearing officer upholds the agency, the agency may evaluate or initially provide special education and related services to the child without the parent's consent subject to the parent's rights under 7.0.

5.0 Content of notice

5.1 The notice under 4.0 must include:

5.1.1 A full explanation of all of the procedural safeguards available to the parents under section 615 of P.L. 94-142.

5.1.2 A description of the action proposed or refused by the agency, an explanation of why the agency proposes or refuses to take the action, and a description of any options the agency considered and the reasons why those options were rejected.

5.1.3 A description of each evaluation procedure, test, record, or report the agency uses as a basis for the proposal or refusal.

5.1.4 A description of any other factors which are relevant to the agency's proposal or refusal.

5.1.5 A form to be signed and returned by the parent giving consent or objecting to the proposed action of the public agency or requesting a conference with the Special Education Director to discuss the proposed action only when consent is required.

5.1.6 Specific information - name, address and telephone number - concerning the person in the public agency who will assist the parents in availing themselves of all safeguards. This information shall be written, unless it is clearly not feasible to do so, in the parents spoken language.

5.1.7 A statement that the parents will be afforded, in accordance with the procedures in Section Two, I, 3.1 - 3.11, an opportunity to inspect and review all education records with respect to the identification, evaluation, and educational placement of the child and the provision of a free appropriate public education to the child.

5.2 The notice must be:

5.2.1 Written in language understandable to the general public, and

5.2.2 Provided in the native language of the parent or other mode of communication used by the parent, unless it is clearly not feasible to do so.

5.3 If the native language or other mode of communication of the parent is not a written language, the State or local educational agency shall take steps to insure:

5.3.1 That the notice is translated orally or by other means to the parent in his or her native language or other mode of communication;

5.3.2 That the parent understands the content of the notice; and

5.3.3 That there is written evidence that the requirements in paragraph 5.3.1 and 5.3.2 of this section have been met.

6.0 Impartial due process hearing

6.1 A parent or public educational agency may initiate a hearing on any of the matters described in 4.1.1 or 4.1.2.

6.1.1 A hearing shall be held by an impartial hearing officer who shall render a decision no later than 45 calendar days after the request for such hearing. The hearing officer shall not be an employee of the school district or a member of the school committee or a person involved in the education or care of the child or a person who has any personal or professional interest which would conflict with his or her objectivity in the hearing. All school districts shall complete and preserve a list of the persons who serve as hearing officers. The list must include a statement of the qualifications of these persons.



6.1.1.1 Hearings initiated by the parent. Such hearing shall be initiated by filing (with the Superintendent) a written complaint. Within 10 days, a hearing officer shall be designated who shall then conduct a hearing as described in 6.1.1.

6.1.1.2 Hearings initiated by the agency. Such hearing shall be initiated by the Superintendent of Schools by written notice to the School Committee with a copy being mailed to the parent. Within 10 days, a hearing officer shall be designated who shall then conduct a hearing as described in 6.1.1.

6.1.2 The public agency shall inform the parent of any free or low cost legal and other relevant service available in the area.

7.0 Hearing rights. Any party to a hearing has the right to:

7.1 Be accompanied and advised by counsel and by individuals with special knowledge or training with respect to the problems of handicapped children;

7.2 Present evidence and confront, cross-examine and compel the attendance of witnesses;

7.3 Prohibit the introduction of any evidence at the hearing that has not been disclosed to that party at least five days before the hearing;

7.4 Obtain a written or electronic verbatim record of the hearing;

7.5 Obtain written findings of fact and decisions. (The public agency shall transmit these findings and decisions, after deleting any personally identifiable information, to the State Advisory Council.)

7.6 Parents involved in hearings have a right to:

7.6.1 Have the child who is the subject of the hearing present;

7.6.2 Open the hearing to the public.

8.0 Hearing decision; appeal. A decision made in a hearing conducted under 6.0 is final unless a party to the hearing appeals under sections 9.0 or 10.0.

9.0 Administrative appeal; impartial review.

9.1 Any party aggrieved by the decision given under 6.0 may appeal to the Commissioner of Education. The Commissioner or his designee shall conduct an impartial review of the hearing. The official conducting the review shall:

9.1.1 Examine the entire hearing record;

9.1.2 Insure that the procedures at the hearing were consistent with the requirements of due process;

9.1.3 Seek additional evidence if necessary. If a hearing is held to receive additional evidence, the rights in 7.0 apply;

9.1.4 Afford the parties an opportunity for oral or written argument, or both, at the discretion of the reviewing official;

9.1.5 Make an independent decision on completion of the review, but no later than 30 calendar days after the request for the review;

9.1.6 Give a copy of the written findings and the decision to the parties;

9.2 The decision made by the reviewing official is final unless a party brings civil action under 10.0.

10.0 Civil Action

Any party aggrieved by the decision of the reviewing officer under 9.2 has the right to bring civil action to a court of competent jurisdiction.

11.0 Child's status during proceedings

11.1 During the pendency of any administrative or judicial proceeding regarding a complaint, unless the public agency and the parents of the child agree otherwise, the child involved in the complaint must remain in his or her present educational placement.

11.2 If the complaint involves an application for initial admission to public school, the child, with the consent of the parents, must be placed in the public school program until the completion of all proceedings.

11.3 Notwithstanding the provisions of 11.1 and 11.2 above, the placement of a child during the pendency of proceedings may be changed when the Superintendent upon substantial evidence determines that the child will be an immediate danger to himself or to others.

12.0 Surrogate parents

12.1 Each public agency shall insure that the rights of a child are protected when:

12.1.1 No parent can be identified;

12.1.2 The public agency, after a reasonable effort, cannot discover the whereabouts of a parent; or

12.1.3 The child is a ward of the State.

12.2 Duty of the public agency

12.2.1 The public agency must assign an individual to act as a surrogate for the parent.

12.3 Criteria for selection of surrogate

12.3.1 The public agency shall insure that the person selected:

12.3.1.1 Has no interest that could conflict with the interest of the child;

12.3.1.2 Has knowledge and skills that insure adequate representation;

12.3.1.3 Is not an employee of the public agency involved in the education and care of the child.

12.4 Responsibilities

12.4.1 The Surrogate parent may represent the child in all matters relating to:

12.4.1.1 The identification, evaluation and educational placement of the child; and

12.4.1.2 The provision of free appropriate public education to the child.

X. Advisory Committees

1.0 State Advisory Committee

1.1 The Commissioner of Education shall appoint a State Advisory Committee on Special Education.

1.2 Membership. The State Advisory Committee shall be composed of individuals involved in or concerned with the education of handicapped children. Parents of handicapped children shall compose a majority of committee membership. Also included shall be handicapped individuals(s); teacher(s); state and local educational official(s) and administrator(s) of programs for handicapped children.

1.3 Functions and Responsibilities

1.3.1 The State Advisory Committee shall provide advice to the Commissioner and the Board of Regents and shall comment publicly on matters concerning:

1.3.1.1 Unmet needs within the state in the education of handicapped children.

1.3.1.2 Rules and Regulations proposed for issuance by the state regarding the education of handicapped children and the annual program plan developed under P.L. 94-142.

1.3.1.3 Procedures for distribution of federal and state funds for programs for handicapped children.

1.3.1.4 Developing and reporting program data and evaluations required by the United States Office of Education.

1.4 Duties and Responsibilities of the State Education Agency

1.4.1 The State Education Agency shall provide assistance to the State Advisory Committee in:



1.4.1.1 Developing the Committee's organizational structure and by-laws which shall become effective upon approval by the Commissioner.

1.4.1.2 Developing procedures for the Committee to carry out its functions and responsibilities.

1.4.1.3 Providing technical and consultative services.

1.4.1.4 Making available appropriate records and data as permitted by law.

1.4.1.5 Providing in-service training for Committee membership as required to carry out its functions.

1.5 Procedures for the Conduct of Meetings

1.5.1 The advisory committee shall meet as often as necessary to conduct its business, but at least 4 times annually.

1.5.2 By July 1 of each year, the Advisory Committee shall submit an annual report of Committee activities and suggestions to the Commissioner of Education. The Commissioner of Education shall respond in writing within thirty (30) calendar days of receiving said report. This report shall be made available to the public in a manner consistent with other public reporting requirements under Public Law 94-142.

1.5.3 Official minutes shall be kept on all committee meetings and shall be made available to the public on request.

1.5.4 All advisory committee meetings and agenda items must be publicly announced prior to any meetings and such meetings shall be open to the public.

1.5.5 Interpreters and other necessary services shall be provided at committee meetings for committee members or participants.

1.5.6 The advisory committee shall serve without compensation, but must be reimbursed by the State Education Agency for reasonable and necessary expenses for attending meetings and performing duties.

2.0 Local Advisory Committees

2.1 Each Local Educational Agency (LEA) shall appoint an Advisory Committee on Special Education.[1] However, if two or more LEA's provide service to a majority (51% or over) of their handicapped students in regional special education programs, then those LEA's may join to appoint a Regional Advisory Committee on Special Education in lieu of Local Advisory Committees provided, however, that such regional committee(s) shall reflect an equal distribution of representatives from each of the LEA's which comprise such regional programs and those representatives shall function collectively as a subcommittee in serving any program for handicapped children operated by their respective communities that is not a part of the regional special education program.

2.2 Membership. Each Local and/or Regional Advisory Committee shall be composed of individuals involved in or concerned with the education of handicapped children. Parents of handicapped children shall compose a majority of the committee membership, and at least 50% of this majority shall be selected by the parents of handicapped children. Also included shall be handicapped individuals(s); teacher(s) of handicapped; local administrator(s) of public school programs for handicapped; regular classroom teacher(s) and/or other school administrator(s). Additional membership shall be at the discretion of the LEA.

2.3 Functions and Responsibilities

[1]Communities which have Advisory Committees established prior to the adoption of these regulations will be considered to be in compliance provided that:

1. The majority of the members are parents of handicapped children.
2. The functions and responsibilities include those listed in 2.3 of this section of these regulations.
3. The assistance provided by the LEA to the Committee includes those services listed in 2.4 of this section of these regulations.

EXHIBIT D

1.1 The school year for severely and profoundly retarded and multi-handicapped children (C.A. 3 through 21) shall consist of a minimum of 230 days per year.

2.0 School Day

2.1 The school day for special education classes shall be the same as that for the regular education programs in the public schools in the school district in which the classes are located (i.e., 5 hours for elementary schools and 5 1/2 hours for secondary schools, exclusive of lunch and recess).

2.2 The school day for classes for mildly to moderately handicapped preschool age children shall consist of a minimum of a two and one-half hour session for five days per week exclusive of travel and lunch time unless otherwise directed by the evaluation process. The school day for such classes shall be extended to a maximum of a five-hour session when indicated as appropriate by the evaluation process.

2.3 The school day for severely and profoundly retarded and multi-handicapped preschool age children shall consist of a minimum of a five-hour session for five days per week exclusive of travel and lunch time unless otherwise directed by the evaluation process

VII Transportation

1.0 Responsibility - All handicapped children who need special transportation as a related service and as determined by the evaluation process and described in the I.E.P. shall be provided such service. It shall include free transportation to and from home (door to door, if necessary) to the educational program in which he/she is enrolled. It shall also include free transportation to and from clinical, diagnostic and therapeutic facilities when the clinical, diagnostic and therapeutic services are necessary either to complete the child's evaluation or to provide the services required by his/her I.E.P.

2.0 Transportation Needs of Handicapped Children

2.1 Handicapped children needing transportation as a "related service" are those children whose mental, emotional or physical handicaps are such that they need this related service to assist them to benefit from special education, that is, they need special transportation to get them to the special education program in order to benefit from it. The determination as to whether their handicapping condition requires this service (special transportation) is made through the evaluative process; the requirement that the service be provided is contained in the child's individual education plan. When such transportation is provided, it must meet the requirements of the Registry of Motor Vehicles for the transportation of school children and the following regulations of the Board of Regents for the Transportation of Handicapped Children.

2.1.1 Seat belts or harnesses shall be used to secure the children while the vehicle is in motion.

2.1.2 A minimum of one aide assigned to each bus. Such aide, in addition to providing general care and supervision of all handicapped children on such bus, shall also provide assistance (from street level entrance of dwelling) to such children lacking the mobility to leave the home and board transportation vehicles, and shall further assist such children in debarking the vehicle and entering the school. When children are transported to clinical, diagnostic, or therapeutic facilities, determination of whether a bus aide is necessary shall be based on a judgment of the LEA multi-disciplinary team.

2.1.3 Hydraulic lifts or other appropriate special devices shall be provided on special selected buses to accommodate children with unique problems, whose lack of mobility to enter or exit vehicles would pose potential harm to themselves or those trying to help them.

2.1.4 School districts shall provide in-service training for administrative personnel, drivers and aides affiliated with special transportation services in order that they may effectively deal with handicapped children and understand the problems faced by the parents of such children

2.1.5 In order to insure the safety and well being of all handicapped children on any given vehicle the transportation of children with known disruptive behavior problems shall be done in a selective manner and