# EXHIBIT 4

**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **SAM and TONY M., *et al.*,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **Class Action** |
| | ) | |
| **DONALD L. CARCIERI, in his official capacity as Governor of the State of Rhode Island, *et al.*,** | ) | **Civil Action No. 1:07-cv-00241-L-LDA** |
| | ) | |
| **Defendants.** | ) | |

**DECLARATION OF PATRICIA J. CORBETT**
**PURSUANT TO 28 U.S.C. § 1746**

I, PATRICIA J. CORBETT, do hereby declare under penalty of perjury that the foregoing is true and correct:

1. I am the Director of Child Welfare Services at Family Resources Community Action (FRCA) in Woonsocket, Rhode Island. FCRA is a private agency that contracts with the Rhode Island Department of Children, Youth and Families (DCYF) to provide myriad services on behalf of children involved with DCYF, including child welfare services such as recruitment and licensing of foster homes, kinship home studies, and supervision of children in foster care (including foster homes, treatment foster care, and a boys' shelter).

2. I have been the Director of Child Welfare Services at FRCA since January 2005. In this position, I directly supervise Masters-level clinicians and program managers, who supervise case managers. The clinicians and case managers work directly with the children and directly supervise children in placement. I supervise all clinicians in charge of our treatment foster care, shelter care, and kinship foster care programs. These clinicians regularly see the

children in their caseloads twice each month. As part of my duties and responsibilities, I regularly and routinely strategize with my staff – both clinicians and case managers – about how to make sure that they are able to provide the Family Court with information about the children in their caseload. I also review and participate in the writing of letters to the court about particular children.

3. I hold a Bachelor of Arts in Psychology, a Masters in Social Work, and I am a Licensed Independent Clinical Social Worker (LICSW).

4. My professional career has focused on child welfare since 1987. I worked at a residential facility for children in the child welfare system in Massachusetts from 1993 through 1998. Half of the children with whom I worked at that facility were children in the custody of Rhode Island DCYF. From 1998 through 2005, I was a clinician involved with treatment foster care in Rhode Island. During my career in child welfare, I have also worked at hospitals, community-based programs, shelters, and residential treatment centers, and have worked in programs concerning treatment foster care and kinship foster care, and have conducted home studies.

5. For the last five years, I have served on the Board of Directors of the Rhode Island Foster Parent Association and currently serve as Vice-President. I sit on the Woonsocket Task Force for Child Abuse and Neglect, as well as the Adoption and Foster Child Task Force, for which I chair the subcommittee for Treatment Foster Care.

6. As a clinician in treatment foster care from 1998 through 2005, I was the primary person from the Groden Center responsible to present information about the children in my caseload at the Rhode Island Family Court reviews and permanency hearings on behalf of individual children.

7. In my experience, the DCYF worker on a case may see a child once a month, but often a child may not be seen by a DCYF worker for as long as six to eight months.

8. In my experience, children in foster care custody frequently do not meet their guardians *ad litem* (GAL) or CASA attorneys. Often, the attorney will meet the child for the first time at the court hearing. However, most children below the age of 14 do not even attend court hearings, and do not meet their attorney. The CASA attorneys have hundreds of children in their caseload. Very rarely has a GAL or CASA attorney ever visited and met with a child in an agency where I have worked. In my 14 years of practice in this field, I know of only approximately one dozen instances in which a GAL or CASA met a child at his or her residence.

9. In my experiences, GALs and CASAs do not ask the contract agency workers – who have the most frequent contact with the child – their opinions about how the child is doing or what the child needs.

10. In my experience, the Family Court reviews of a child's case range in length from 5 to 20 minutes each.

11. My staff, who know of the day-to-day issues of the children on their caseloads better than the DCYF workers who do not see the child as frequently, are generally not notified of these Family Court reviews and are not entitled to automatically present testimony.

12. My staff frequently is not permitted to present information to the Family Court, although they attend Family Court proceedings for the children on their caseload. Often the court hears only from a DCYF worker who may or may not have seen the child recently, a DCYF lawyer who does not know the child, and a lawyer for the child who often has not met the child. I recommend that my staff write a letter for the Family Court to ensure that the information is given to the court even if they are not given the opportunity to speak at a hearing.

However, we are dependent upon the DCYF worker to deliver these letters to the judge, even where the letter reflects a dispute with DCYF.

13. In my professional experience, I have become very familiar with DCYF practices and procedures.

14. In my professional experience, I have identified systemic issues that impair DCYF and its staff from providing reasonable case practice to children in its care. For example, there is often no thought given to the transition of children from placement to placement, despite their trauma histories. Children and foster parents are not adequately prepared for their new placements, which leads to unnecessary disruptions and which further traumatizes the children. There are shortages of foster homes. Staff shortages of licensing workers and fire inspectors present long-term problems for which there is no plan to address. Referrals for needed services are unnecessarily time intensive, and follow-up is left to individual workers who are already burdened with high caseloads. Foster families, especially kinship foster families taking care of relatives in foster care, are not supported in the way that is necessary to understand the requirements for licensure, or how the system affects the children they are caring for.

15. The systemic issues that I have identified affect the way I train my workers, because they have to be trained to assume DCYF cannot do all it is required to do, and my agency must figure out a way to protect the child and provide the children with needed services without adequate action by DCYF.

16. In my opinion, the Family Court individual reviews do not afford the Family Court an opportunity to address systemic failings, and the Family Court is not equipped to remedy the serious systemic weaknesses that I have concluded exist in the Rhode Island child welfare system.

17. The Family Court provides an opportunity for some people to raise individual issues, but it cannot follow up with larger issues such as the lack of resources within DCYF.

Executed on January 23rd, 2008

PATRICIA J. CORBETT LICSW