# EXHIBIT 5

**United States District Court**
**for the**
**District of Rhode Island**

| | | |
|---|---|---|
| **SAM and TONY M., *et al.*,** | ) | **Class Action** |
| | ) | |
| **Plaintiffs,** | ) | **Civil Action No. 07-241-L-LDA** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DONALD L. CARCIERI, in his official capacity as Governor of the State of Rhode Island., *et al.*** | ) ) ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) ) ) ) | |

**Declaration of Jametta O. Alston,**
**Rhode Island Child Advocate**
**Pursuant to 28 U.S.C. § 1746(2)**

I, JAMETTA O. ALSTON, do hereby declare under penalty of perjury that the foregoing is true and correct:

1. I am a member in good standing of the Rhode Island State Bar and I am admitted to practice in this Court. I represent Plaintiffs in this matter along with co-local counsel, Rhode Island attorney John Dineen, co-counsel at Children's Rights and co-counsel from the law firm of Weil, Gotshal & Manges.

2. I am the Child Advocate of Rhode Island. The Rhode Island Office of the Child Advocate is an independent state agency charged with protecting and vindicating the rights of children in Rhode Island state custody. *See* R.I. Gen. Laws §§ 42-73-1 *et seq*. (2006). I was appointed by the Rhode Island Governor. (*Id.*) I currently supervise a staff of 4 individuals, only one of whom is an attorney. I was appointed in June 2005.

3. As the Child Advocate, I am statutorily mandated to "[t]ake all possible action including, but not limited to . . . formal legal action, to secure and ensure the legal, civil, and special rights of children" in foster care custody. R.I. Gen. Laws § 42-73-7. My mandatory statutory duties also include representing children who are in the custody of the Department of Children Youth and Families ("DCYF") due to voluntary placement by their parents. My office represents approximately 55 children in Family Court in that capacity as their guardian ad litem.

4. In my capacity as a representative of children in foster care, attorneys from the Office of the Child Advocate ("OCA") appear in Rhode Island Family Court approximately three times per week. I have regularly appeared before Family Court judges for my child clients' annual permanency reviews, and I have had occasion to observe many Family Court annual permanency reviews.

5. In my twenty-year experience as an attorney litigating in Rhode Island, I have had substantial experience appearing before the Rhode Island Family Court – as a private practitioner, as a Rhode Island Special Assistant Attorney General, and as the Cranston City Solicitor. I have represented parents, children involved in the juvenile justice system, and children in the foster care system in adoption, child custody and child welfare, termination of parental rights, and criminal defense proceedings in Family Court.

6. From my experience, I know that Family Court reviews address issues particular to individual children or sibling groups, and not issues relating more broadly to DCYF functioning. Most of the time, a child and his siblings are appointed a guardian ad litem from CASA (Court Appointed Special Advocate attorney) to represent him/them in the Family Court.

7. In my experience, during annual permanency hearings, the Family Court reviews the permanency plans that have been developed by DCYF. The plans are not prepared by the Family Court or in Family Court. These court reviews take anywhere from five to twenty minutes. Only occasionally will a natural parent or foster parent be asked to speak during a court review. The children are rarely brought to court despite the fact that they are the subject of the proceedings.

8. At the conclusion of each permanency review for a child in DCYF custody due to an allegation of abuse or neglect, the Family Court enters an order of permanency on behalf of the child. DCYF may have moved the child – often more than once – since the child's last permanency review. The Family Court does not enter an order ratifying these previous placement moves.

9. On a typical day, a Family Court docket before one judge will include

approximately sixty cases.

10. In my experience, in the context of abuse and neglect cases, Family Court judges have no opportunity to review many of the actions that DCYF takes on behalf of children in foster care on a daily basis. For example, when DCYF moves a child in DCYF custody from one placement to another, the Family Court is not involved. When DCYF requires a child in DCYF custody to change schools, the Family Court is not involved. When DCYF makes a decision to separate siblings, the Family Court is not involved. When DCYF does not transport a child to a visit with his parent or a visit with his sibling, the Family Court is not involved. When DCYF does not make required medical appointments for a child, the Family Court is not involved. When DCYF fails to detect a dangerous situation in which a child is subsequently abused in a foster care placement, the Family Court is not involved. These are but a few examples of day-to-day decisions for which DCYF is responsible on behalf of the 3,000 children in foster care and over which the Family Court provides no oversight.

11. In my years of appearing before Rhode Island Family Court judges, I have never observed the Family Court order DCYF to undertake any action that would address any systemic problems such as high caseworker caseloads, lack of adequate training, overuse of institutional placements, or the lack of enough foster homes.

12. In my judgment, the individual permanency reviews are not an adequate forum in which to adjudicate a lawsuit by children in foster care due to allegations of abuse or neglect that alleges DCYF system-wide deficiencies resulting in federal constitutional and statutory violations and that seeks to remedy those system-wide problems on behalf of those children.

Executed on: February 29, 2008

JAMETTA O. ALSTON (Bar No. 3909)
Child Advocate
Office of Child Advocate
John O. Pastore Complex
57 Howard Ave., 4th Floor
Cranston, RI 02920
(401) 462-4300