UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ANDREW C., by his next friend GREGORY ELLIOTT, for himself and those similarly situated, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> GINA M. RAIMONDO, in her official capacity as Governor of the State of Rhode Island, *et al.*, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Action No. 1:07-cv-00241-S-PAS |

**JOINT MOTION FOR FINAL APPROVAL OF SETTLEMENT
AGREEMENT AND NEGOTIATED ATTORNEYS' FEES AND COSTS**

After lengthy negotiations, with the invaluable assistance of a District Court appointed mediator, the parties reached a comprehensive settlement agreement to resolve this lawsuit (the "Settlement Agreement"). *See* Exhibit A. For purposes of this settlement, the parties have further agreed to define a class of "all children who are or will be in the legal custody of the Rhode Island Department of Children, Youth and Families ("DCYF") due to a report or suspicion of abuse or neglect" (the "Class"). Federal Rule of Civil Procedure 23(e) requires that "the court may approve [a class action settlement agreement] only after a hearing and on finding that it is fair, reasonable, and adequate."

Plaintiffs and State Defendants jointly move the Court to grant final approval of the Settlement Agreement and Attorneys' Fees and Costs. This Court previously entered an Order Granting Preliminary Approval of Settlement Agreement, Setting Hearing, and Directing Class Notice. Dkt 587. That order (a) provided preliminarily approval of the Settlement Agreement; (b) authorized the form and manner of a Notice of Proposed Class Action Settlement to be sent to

Class members; (c) set the deadline for written submissions by persons who are Class members, or legal representatives of Class members, who wish to be heard in favor of or in objection to the Settlement Agreement; and (d) set the date of May 9, 2018 for a fairness hearing in accordance with Rule 23(e). The Court further conditionally certified the Class for settlement purposes. This Court also entered an Order Approving Form and Manner of Notice of Negotiated Attorneys' Fees and Expenses to be considered at the fairness hearing. Dkt. 592.

## I. Procedure for Approving a Class Settlement Agreement

Prior to making a final decision on approval of a class settlement agreement, the court must conduct the following:

> [T]he judge is required to scrutinize the proposed settlement to ensure that it is fair to the persons whose interests the court is to protect. Those affected may be entitled to notice and an opportunity to be heard. This usually involves a two-stage procedure. First, the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing.

Manual for Complex Litigation (Fourth) § 13.14 (2004). "If a class has not yet been certified, typically the parties will simultaneously ask the court to 'conditionally' certify a settlement class" together with a motion for preliminary approval, as the parties have done here. Newberg on Class Actions § 13:10 (5th ed.).

Courts should grant approval if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible judicial] approval." Newberg on Class Actions § 13:10 (quoting Manual for Complex Litigation).

## II. The Court Should Grant Final Approval of the Settlement Agreement

The proposed Settlement Agreement meets the conditions for final approval under Rule 23(e).

### a. Procedural History

The parties have extensively litigated this case since ten Named Plaintiffs commenced the action, through their Next Friends, on June 28, 2007. Dkt. 1. Plaintiffs have alleged systemic deficiencies in Rhode Island's child welfare system and raised constitutional and alleged statutory claims on behalf of themselves and a putative Class. Dkt. 550. The State Defendants dispute Plaintiffs' allegations and assert that their child welfare system is constitutionally sound. Over the preceding eight years, this case traveled through multiple stages:

- The parties engaged in substantial document production and electronic discovery;
- The parties extensively briefed the issues in this case from several motions to dismiss, numerous discovery motions, and two full appeals to the First Circuit Court of Appeals and a petition for review, among other filings;
- The parties each retained experts who prepared a total of eighteen reports on numerous aspects of the Rhode Island child welfare system;
- The parties took a combined total of over forty fact and expert depositions;
- A 16-day trial was held on the claims of two individual Named Plaintiffs; and
- The First Circuit heard two appeals that were fully briefed and argued in 2010 and in 2014.

On remand from the second appeal, the case was reassigned to this Honorable Court.

At a court conference on May 27, 2015, this Court asked the parties to participate in further mediation efforts. The parties agreed and engaged in extensive mediation with District Court Judge John J. McConnell acting as mediator. Between January 7, 2016 and the January 2, 2018, the parties engaged in protracted arms-length negotiations regarding the substance and structure of the Settlement Agreement, under the active supervision of Judge McConnell. These negotiations

involved the exchange of many rounds of the parties' respective positions, statements, counter statements, and written proposals, as well as extensive in-person negotiations at the Federal Courthouse in Providence. The parties reached a settlement accord and executed the proposed Settlement Agreement.

### b. The Settlement Agreement

The Settlement Agreement provides relief to all members of the Class. Specifically, the agreement contains commitments that address the following areas of practice in the state's child welfare system: (1) Assessments; (2) Placement in Shelters and Assessment and Stabilization Centers; (3) Placement in Congregate Care; (4) Sibling Placement; (5) Case Management; (6) Caseworker-Child, Sibling, and Parent-Child Visitation; (7) Licensing; (8) Child Protective Services; (9) Foster Care Maintenance Payments; (10) Case Plans; (11) Maltreatment in Care; and (12) Foster Home Array. The agreement also sets forth benchmarks that must be met for and set forth how the respective commitment sections can exit court jurisdiction. Finally, it provides for an independent monitoring team composed of (1) the Rhode Island Office of the Child Advocate[1] as the monitor as defined in the Settlement Agreement for purposes of providing oversight of the commitments. and (2) a data validator who will act as an independent evaluator and final arbiter of the data that DCYF submits pursuant to the Settlement Agreement.

The parties also agree that this Court shall have continuing jurisdiction to enforce the terms of the Settlement Agreement.

### c. Final Approval is Warranted.

The District Court should finally approve the Settlement Agreement because it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e).

---

[1] The Office of the Child Advocate is a statutorily created "advocate [ that] acts independently of [DCYF] in the performance of his or her duties." R.I. Gen. Laws Ann. § 42-73-5.

The key inquiry in approving a settlement agreement is reasonableness. Courts have enumerated a "laundry list of factors" for approving a class action settlement agreement under Rule 23(e). *See Nat'l Ass'n of Chain Drug Stores* v. *New England Carpenters Health Benefits Fund,* 582 F.3d 30, 44 (1st Cir. 2009). "[U]sually, the ultimate decision by the judge involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement." *Id.* The procedural history of this litigation and the lengthy negotiations weigh heavily in this analysis. "If the parties negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable." *Bezdek* v. *Vibram USA, Inc.,* 809 F.3d 78, 82 (1st Cir. 2015) (quotation marks and citation omitted).

Determinations regarding the reasonableness of the Settlement Agreement should also be made in light of the "strong public policy in favor of settlements." *See P.R. Dairy Farmers Ass'n* v. *Pagan,* 748 F.3d 13, 20 (1st Cir. 2014) (quotation marks and citation omitted). The First Circuit has stressed the "great favor" that settlement agreements enjoy with the courts "as a preferred alternative to costly, time-consuming litigation." *Fidelity & Guar. Ins. Co.* v. *Star Equip. Corp.,* 541 F.3d 1, 5 (1st Cir. 2008) (quotation marks and citation omitted). This is particularly true for class action lawsuits. *See, e.g., In re Tyco Int'l, Ltd. Multidistrict Litig.,* 535 F. Supp. 2d 249,259 (D.N.H. 2007) (noting that "public policy generally favors settlement-particularly in class actions as massive as the case at bar").

This Court recently approved a settlement agreement in a case with a similar procedural history. *See Medoff* v. *CVS Caremark Corp.,* Civil No. 09-cv-554-JNL, 2016 WL 632238, at *5 (D.R.I. Feb. 17, 2016). In *Medoff,* the Court found that the presumption in favor of approval applied where the case had been subject to exhaustive litigation:

> This case has traversed some six years of litigation to reach this juncture, including two motions to dismiss, an appeal to the Court of Appeals, extensive fact discovery, resolution of several discovery disputes, and the beginning of expert reports and discovery. The settlement negotiations themselves took place over the course of several weeks and the settlement itself was finalized only after mediation facilitated by a former federal judge experienced in complex securities cases. Finally, counsel for all parties have zealously represented the interests of their clients. They are experienced attorneys and knowledgeable about the facts, claims, and defenses raised in this action and the court accordingly affords some weight to their representations that this settlement provides fair, reasonable, and adequate class relief.

*Id.* (internal citation omitted). The similarity between the instant case, which has gone on longer and has had more extensive procedural steps involved, and the *Medoff* case are striking. For these same reasons, the Court should presume that the Settlement Agreement is reasonable and complies with Rule 23(e) for purposes of approval.

The procedural history of this litigation weighs heavily toward final approval. As noted above, the parties engaged in multiple rounds of discovery over the course of eight years, including dozens of depositions, voluminous document production including substantial electronic discovery, and the exchange of extensive expert reports. The parties also briefed multiple motions to dismiss and discovery motions, engaged in a 16-day trial on the claims of two Named Plaintiffs, and twice briefed and argued appeals before the First Circuit. The parties and their counsel were therefore "sufficiently well-informed to make a calculated judgment on the risks and benefits of settlement on behalf of the class." *See Medoff,* 2016 WL 632238, at *6.

Throughout this process, each side's counsel has "zealously represented the interests of their clients," also weighing in favor of approval. *See Medoff,* 2016 WL 632238, at *5; *cf Hochstadt* v. *Boston Sci. Corp.,* 708 F. Supp. 2d 95, 107-08 (D. Mass. 2010) (granting preliminary approval of a settlement where, among other things, the "proponents of the settlement are experienced in similar litigation"). Plaintiffs' counsel has ample experience in class action

litigation on behalf of children in foster care and settlement of the same. State Defendants are represented by lawyers who are highly skilled and experienced in complex litigation and appeals from the Rhode Island Office of the Attorney General.

The expense and complexity of the parties proceeding to trial also weigh heavily in favor of final approval. While the parties have already engaged in extensive litigation, the procedural posture of the case, should it not settle, would dictate that the parties would again proceed at the very least to another round of litigating a motion to dismiss, fact and expert discovery for purposes of class certification and then on the merits, and trial. "Settlement at this juncture eliminates those expenses and, perhaps more importantly, the uncertainties inherent in taking this case to trial." *See Medoff,* 2016 WL 632238, at *5.

The circumstances surrounding the negotiations of the Settlement Agreement also warrant a presumption in favor of approval. Over the course of two years, the parties engaged in arm's length, non-collusive negotiations over the substance and structure of this agreement. *See Trombley* v. *Bank of America Corp.,* Civil No. 08-cv-456-JD, 2011 WL 3273930, *5 (D.R.I. July 29, 2011) (approval is warranted where, among other things, "it is the result of serious, informed, and non-collusive negotiations" (quotation marks omitted)). As discussed, the parties engaged in lengthy negotiations over this period, and engaged in numerous in-person mediation sessions. Moreover, these negotiations were conducted under the active supervision of District Judge McConnell, whose involvement further demonstrates not only that the negotiations were non-collusive, but also that this process led to a fair and reasonable Settlement Agreement.

The Settlement Agreement satisfies the requirements of Rule 23(e). It is reasonable, fair, and it falls within the range of possible judicial approval. The Court should therefore grant final approval.

### d. Notice to Class Members

The federal rules provide that "The court must direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement agreement]." Fed. R. Civ. P. 23(e)(1). This Court previously approved a reasonable form of notice that defined the Class, described the essential terms of the Settlement Agreement, specified the procedure for those who wish to be heard in favor of or in opposition to the Settlement Agreement, identified the time and place of the fairness hearing, and provided the address and phone number of Class counsel. *See* Manual for Complex Litigation § 21.312. Defendants thereafter distributed the notice as approved by the Court and in accordance with the terms of the preliminary order of approval. The parties submit that all the requirements for Notice to Class Members under the Order Granting Preliminary Approval (Dkt. 587) along with the Notice to Class Members under the Order Approving Form and Manner of Notice of Negotiated Attorneys' Fees and Expenses (Dkt. 592) have been met.

In response to the Notice Granting Preliminarily Approval, the parties received comments from twenty-two (22) individuals or organizations. These comments fall into two categories: (a) 20 of the responses were submitted by individual biological parents, grandparents or others with relationships with a particular child in DCYF foster care and addressed their interactions and experiences with the child welfare system, and (b) 2 of the responses were submitted by non-profit organizations who work within the child welfare system. None of the comments placed focus on any specific provision of the Settlement Agreement or raised an objection to any aspect of the Settlement Agreement. There were no comments received in relation to the Notice of Negotiated Attorneys' Fees and Expenses.

### III. The Court Should Certify the Class for Settlement Purposes.

In the context of settlement, the Court must find that the proposed Class meets the prerequisites of Rule 23 (a)-namely, that (1) "the class is so numerous that joinder of all members is impracticable," (2) "there are questions of law or fact common to the class," (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class," and (4) "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). The class must also satisfy one of the requirements of Rule 23(b). Under Rule 23(b)(2) certification is proper because this case involves injunctive relief.

First, for purposes of this proposed motion, the parties submit that this proposed Class "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).[2] The First Circuit has found that a class of 40 is sufficient to meet the numerosity requirement. *See Garcia-Rubiera* v. *Calderon,* 570 F.3d 443, 460 (1st Cir. 2009) (citation omitted); *cf S.S. v. City a/Springfield,* 318 F.R.D. 210, 222-23 (D. Mass. 2016) (finding that proposed class of "[m]ore than two hundred" class members could "certainly have established numerosity"). There are approximately 1,800 children in the legal custody of DCYF due to a report or suspicion of abuse or neglect, easily satisfying the first prong of Rule 23(a).

Second, as asserted by Plaintiffs, there are multiple questions of fact and law common to all class members. Fed. R. Civ. P. 23(a)(2). In their Fourth Amended Complaint, Plaintiffs have alleged system-wide deficiencies in Rhode Island's child welfare system resulting from common policies, practices, and conditions within DCYF. *See generally* Dkt. 550. Plaintiffs further have alleged that these common policies, practices, and conditions subject them to common risks of

---

[2] In furtherance of the Settlement Agreement and solely for that purpose, although the State Defendants deny liability, they do not challenge the certification of a Plaintiffs' Class.

harm. Finally, Plaintiffs have alleged that these common risks are subject to abatement by a common injunctive remedy, as will be provided under the Settlement Agreement.

Third, as advanced by Plaintiffs, the claims of the Named Plaintiffs are typical of those of all children in the putative Class. Fed. R. Civ. P. 23(a)(3). Typicality is met where claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members, and ... are based on the same legal theory." *Garcia-Rubiera,* 570 F.3d at 460 (alteration in original) (internal quotation marks and citations omitted). The Named Plaintiffs' have plead their claims from the same alleged deficiencies in the state's child welfare system.

Fourth, the Named Plaintiffs "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy of representation is satisfied where "the interests of the representative party will not conflict with the interests of any of the class members" and where "counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." *Andrews* v. *Bechtel Power Corp.,* 780 F.2d 124, 130 (1st Cir. 1985) (citation omitted). Rule 23 does not require a "perfect symmetry of interest." *Matamoros* v. *Starbucks Corp.,* 699 F.3d 129, 138 (1st Cir. 2012) (quoting Newberg on Class Actions § 3.58 (5th ed.)). Further, Plaintiffs' counsel is qualified, experienced, and will continue to monitor this agreement. Plaintiffs' counsel includes attorneys with Children's Rights, a national non-profit with attorneys who have served as class counsel on much of the major child-welfare reform litigation; Rhode Island attorney John Dineen, who has previously litigated many constitutional claims, including on behalf of children in state foster care; and attorneys with Weil, Gothsal & Manges LLP, one of the leading private law firms in the country.

Finally, for purposes of this settlement certification is satisfied under Fed. R. Civ. P. 23(b)(2). The First Circuit has noted that (b)(2) certification is "uniquely suited to civil rights

10

actions." *Yaffee* v. *Powers,* *454* F.2d 1362, 1366 (lst Cir. 1972). Indeed, "[i]f the Rule 23(a) prerequisites have been met and injunctive or declaratory relief has been requested, the action usually should be allowed to proceed under subdivision (b)(2)." *Bond* v. *Fleet Bank (RI), NA.,* No. Civ.A. 01-177 L., 2002 WL 31500393, at *9 (D.R.I. Oct. 10, 2002) (quoting *Bertozzi* v. *King Louie Int'l Inc.,* 420 F. Supp. 1166, 1180-81 (D.R.I. 1976)). Plaintiffs in this case sought class-wide injunctive relief.

The parties respectfully request that the Court certify the Class for settlement purposes, with the Class defined as all children who are or will be in the legal custody of DCYF due to a report or suspicion of abuse or neglect. The parties also request that this Court approve the attorneys' fees and costs.

### IV. Conclusion

The Settlement Agreement is reasonable, devoid of obvious deficiencies, and falls within the range of possible approval. The parties therefore respectfully request that the Court grant final approval of the Class Action Settlement Agreement and certify the Class for settlement purposes.

| | |
|---|---|
| Respectfully submitted | Respectfully submitted |
| Plaintiffs, | Defendants, |
| /s/ Sara M. Bartosz | /s/ Neil F.X. Kelly |
| _____ | _____ |
| Sara M. Bartosz, *pro hac vice* | Neil F.X. Kelly (4515) |
| Elizabeth Pitman, *pro hac vice* | Brenda D. Baum (5184) |
| Children's Rights | Assistant Attorneys General |
| 88 Pine Street, Suite 800 New York, | 150 South Main Street |
| New York 10005 | Providence, RI 02903l |
| (212) 683-2210 | (401) 274-4400, Ext. 2284, 2294 |
| (212) 683-4015 (Fax) | |
| sbartosz@childrensrights.org | (401) 222-2995 (Fax) |
| jrosenthal@childrensrights.org | nkelly@riag.ri.gov |
| egretter@childrensrights.org | BBaum@riag.ri.gov |

John W. Dineen (Bar No. 2346)
305 South Main Street
Providence, RI 02903
(401) 223-2397
(401) 223-2399 (Fax)
jwdineen1@yahoo.com

Jared Bobrow (Bar No. 133712 (CA);
admitted pro hac vice)
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000
(650) 802-3100 (Fax)
jared.bobrow@weil.com

Dated: May 4, 2018

## CERTIFICATE OF SERVICE

I hereby certify that I have caused the foregoing motion to be sent on May 4, 2018 to the attorneys of record listed below:

Brenda D. Baum, Esq.
Assistant Attorney General
R.I. Department of the Attorney General
150 South Main Street
Providence, RI 02903-2907
Phone: (401) 274-4400 x 2294
Facsimile: (401) 222-3016
Email: bbaum@riag.ri.gov

John W. Dineen (Bar No. 2346)
305 South Main Street
Providence, RI 02903
(401) 223-2397
(401) 223-2399 (Fax)
jwdineen1@yahoo.com

Neil F.X. Kelly, Esq.
Assistant Attorney General
R.I. Department of the Attorney General
150 South Main Street
Providence, RI 02903-2907
Phone: (401) 274-4400
Facsimile: (401) 222-2995
Email: nkelly@riag.ri.gov

Jared Bobrow (Bar No. 133712 (CA); admitted pro hac vice)
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000
(650) 802-3100 (Fax)
jared.bobrow@weil.com

/s/ *Sara M. Bartosz*
Sara M. Bartosz
CHILDREN'S RIGHTS
88 Pine Street, 8th Floor
New York, NY 10005
Phone: (212) 683-2210
Facsimile: (212) 683-4015
Email: sbartosz@childrensrights.org